IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Z.P., ET AL., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO. 7:24-CV-00151-ACA |
| ERROL GREGORY BRYANT, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINITFFS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Z.P., A.W., and M.L., filed a complaint against Defendant Errol Gregory Bryant, to seek justice for the harmful, non-consensual sharing of intimate visual depictions of Plaintiffs. With each nonconsensual disclosure, Defendant revealed the most private parts of Plaintiffs' bodies and lives. This content was recorded under Plaintiffs' misguided trust in Defendant that the visual depictions would not be disclosed or distributed to anyone outside of their purportedly exclusive relationships.

Plaintiffs now seek redress and accountability for these nonconsensual disclosures and, as such, have asserted the following claims against Defendant: 1) Nonconsensual Disclosure of Intimate Images; 2) Intentional Infliction of Emotional Distress (IIED) (Alabama Tort of Outrage); 3) Violation of Privacy; and 4) Injury Amounting to a Felony.[1] Defendant asserts the Complaint should be dismissed because it is deficient as a shotgun pleading, Plaintiffs' claims for IIED are not

---

[1] Plaintiffs concede the ambiguity of Ala. Code §6-5-370 as it relates to Count IV (Injury Amounting to a Felony) and do not address it further in this brief.

viable, and the statute of limitations has expired as to Z.P.'s claims for IIED and Violation of Privacy. However, the Complaint was properly pleaded, Plaintiffs have stated conceivable claims for IIED, and the statute of limitations has not expired for Z.P.'s claims. Thus, Defendant's Motion to Dismiss should be denied.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is "plausible on its face," when it contains enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "[A] court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case." *Doe v. McCoy*, No. 1:23-cv-3169-MLB, 2024 U.S. Dist. LEXIS 33901, at *4 (N.D. Ga. Feb. 28, 2024) (citing *Twombly*, 550 U.S. at 556).

## ARGUMENT

I.    **Plaintiffs' Complaint was Properly Pleaded.**

A. Plaintiffs' Complaint does not constitute a shotgun pleading under Fed. R. Civ. P. 8(a).

Defendant alleges that Plaintiff's Complaint constitutes a shotgun pleading in two ways. First, Defendant alleges that it "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Harrison v. Gentry*, No. 5:21-CV-01038-LCB, 2022 WL 568333, at *1 (N.D. Ala. Feb. 24, 2022) (emphasis added) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). This is simply not true. In

*Harrison*, every count in the complaint "adopt[ed] the previous count's allegations" and the first count began by "adopt[ing] all subsequent counts … word for word." *Id.* at *2. This resulted in the plaintiff alleging "'[t]hat the Defendant violated the Plaintiff's constitutional right to Due Process, Equal Protections; and, to be free from cruel and unusual punishment' . . . to support her claim that [the defendant] violated the federal statute against human trafficking.") *Id.*; *see also PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 (11th Cir. 2010) (finding a shotgun pleading where "Count I incorporates paragraphs one through seventy-three, and each of the nine succeeding counts incorporates all preceding counts, such that Count X amounts to an amalgamation of all counts of the complaint").

In this case, the counts in Plaintiffs' complaint reallege and incorporate by reference only the previous *factual* allegations;[2] they do not adopt the previous allegations contained in subsequent or successive counts. Although arising out of common facts, each of the four counts remain separate from each other. None of the counts amount to an "amalgamation of all counts of the complaint," as would be found in a typical shotgun pleading.

Second, Defendant alleges that Plaintiffs' Complaint constitutes a shotgun pleading because it contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. "While the Eleventh Circuit has held that incorporating all the factual allegations into each claim constitutes shotgun pleading, it has done so when it is nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief." *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1233

---

[2] Pls.' Compl. 16 ¶ 71; 17 ¶¶ 77, 82; 18 ¶ 87 ("Plaintiffs reallege and incorporate by reference all previous *factual* allegations." (emphasis added)).

(N.D. Fla. 2019) (holding that the amended complaint, which "incorporate[d] all the general allegations into each of the three causes of action," was not a shotgun pleading under *Weiland*.)

Under Fed. R. Civ. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Courts in the Eleventh Circuit have held that where a complaint repeats the same counts for multiple plaintiffs, the complaint violates Rule 8(a) unless the plaintiffs' claims are distinguishable from one another because of a factual or legal particularity. *See Taylor v. Trapeze Mgmt., LLC*, No. 0:17-CV-62262-KMM, 2018 WL 9708619, at *9 (S.D. Fla. Mar. 26, 2018) (requiring plaintiffs to amend the complaint, which repeated the same eight counts for each of the fourteen plaintiffs, to present in a single count the same claim for each plaintiff); *Edmondson v. Caliente Resorts, LLC*, No. 8:15-CV-2672-T-23TBM, 2016 WL 1756070, at *5 (M.D. Fla. May 3, 2016) (requiring plaintiffs to amend the complaint, which repeated the same nine counts for each of the sixteen plaintiffs, to present in a single count the same claim for each plaintiff); *Gibson v. White's Place, LLC*, No. 3:16-CV-392-J-32JBT, 2017 WL 4169690, at *4 (M.D. Fla. Sept. 20, 2017) (requiring plaintiffs to amend the complaint, which repeated the same seven counts for each of the fifteen plaintiffs, "so that each claim is represented in a single count on behalf of all Plaintiffs"). In cases where the plaintiffs are represented by the same counsel, "no apparent need exists for each plaintiff to repeat [each] count." *See Edmondson*, 2016 WL 1756070, at *5.

Here, the facts pertaining to each Plaintiff are alleged separately, providing the Defendant with notice of which factual allegations give rise to each Plaintiff's claims for relief. The facts alleged for each of the three Plaintiffs are relevant to each of their four claims. Thus, it is necessary that each claim incorporate all of the factual allegations for each respective Plaintiff. Not doing so

would exclude necessary facts from the Plaintiffs' claims for relief. Additionally, the Plaintiffs share counsel in this case, so repeating each count three times would be unnecessary, redundant, and a violation of Rule 8(a) of the Federal Rules of Civil Procedure.

B. <u>Even if the Complaint constituted a shotgun pleading, dismissal would not be appropriate.</u>

If a district court determines that a complaint is a shotgun pleading to which the defendant could not reasonably be expected to respond, the court should point out the defects in the complaint and order the plaintiff to amend the complaint. *Jackson v. Bank of Am.*, N.A., 898 F.3d 1348, 1358-59 (11th Cir. 2018). "In dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court must give the plaintiff 'one chance to remedy such deficiencies.'" *Id.* at 1358 (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). "A chance to amend a complaint does not need to come in the form of a dismissal without prejudice or the striking of a portion of the complaint's allegations. It can also be accomplished by ordering the party to file a more definite statement." *Id.* "What matters is function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them. If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case …." *Id.*

Because Plaintiffs have not been notified of any defects in the complaint and afforded an opportunity to fix them, this Court should not dismiss this case even if it finds the complaint to be a shotgun pleading.

**II.** **Plaintiffs have stated plausible and conceivable claims for intentional infliction of emotional distress (IIED) (i.e., tort of outrage).**

A. Alabama Law has not confined the claim for intentional infliction of emotional distress (IIED) (i.e., tort of outrage) to set categories of activity.

Defendant alleges that Plaintiffs' claims for intentional infliction of emotional distress (IIED) (i.e., tort of outrage) should dismissed by the court because Defendant's conduct does not fall into one of the following three categories: (1) wrongful conduct in the family burial context; (2) barbaric methods employed to coerce an insurance settlement; (3) egregious sexual harassment. (Def.'s Br. Supp. Def.'s Mot. Dismiss Pls.' Compl. 7-8). However, Alabama law does not confine the tort of outrage to any category of conduct, and the Supreme Court of Alabama has found that an assertion suggesting the claim is limited to those three categories is "an incorrect statement of the law." *See Wilson v. Univ. Ala. Health Serv. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017). Instead, an IIED claim should survive beyond the motion to dismiss stage when it is conceivable that a party would be able to show that the claim's elements[3] are met. *Rice v. United Ins. Co.*, 465 So. 2d 1100, 1102 (Ala. 1984) (finding a conceivable claim for IIED existed against plaintiff's supervisor based on plaintiff's allegations that the supervisor, upon learning of plaintiff's pregnancy, engaged in a pattern of activity involving multiple people that the supervisor was likely to have known would cause serious emotional distress).

---

[3] The four elements for a tort of outrage claim are "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) … the distress was severe." *Chaney v. Ala. West-AL, LLC*, 22 So. 3d 488, 498 (Ala. Civ. App. 2008) (quoting *Harris v. McDavid*, 553 So. 2d 567, 569-70).

B.  Defendant's conduct with respect to Plaintiffs was both outrageous and extreme.

Defendant also alleges that his nonconsensual disclosures of Plaintiffs' bodies and private, sexual encounters does not amount to extreme and outrageous as to justify Plaintiff's IIED claims. (Def.'s Mot. Dismiss 2 ¶ 3). In addressing an IIED claim, Alabama case law has recognized conduct as extreme and outrageous when it involved knowingly taking advantage of a party's emotional vulnerability. *See O'Rear v. B.H.*, 69 So. 3d 106, 119 (Ala. 2011), *abrogated on other grounds, Ex parte Vanderwall*, 201 So. 3d 525 (Ala. 2015). In *O'Rear*, the plaintiff was a patient to the defendant-doctor. *O'Rear*, 69 So. 3d at 110. The plaintiff's mother informed the defendant that the plaintiff was in distress because of his mother and stepfather's recent divorce. *Id.* Shortly after learning this, the plaintiff and defendant began engaging in sexual acts. *Id.* In the following years, the defendant traded these sexual acts for addictive prescription drugs. *Id.* This pattern continued even when the defendant became aware that the plaintiff had developed a drug dependence. *Id.* at 119. The Court held that the defendant's behavior was both extreme and outrageous. *Id.* The Court reasoned that the defendant, through his actions, "profoundly impaired [plaintiff's] ability to live a normal life." *Id.* The Court relied on the trial court's summation of facts, which highlighted the defendant's awareness of plaintiff's emotional vulnerability and the defendant's misuse of this vulnerability for personal gratification. *Id.*

Similarly, Alabama courts have recognized a viable IIED claim when a party's conduct invoked fear, negative emotions, and distrust. *See Harrelson v. R.J.*, 882 So. 2d 317 (Ala. 2003). In *Harrelson*, a 15-year-old girl was sexually assaulted by her friend's stepfather while spending the night at the friend's house. *Id.* at 319-320. The girl's mother, as mother and next friend of her daughter, brought, among other claims, an IIED claim (i.e., tort of outrage) against the friend's

stepfather. *Id.* at 321.  At trial, the girl's mother testified that, because of the assault, the girl (her daughter) is "much more emotional," cries more often than prior to the assault, is traumatized by the assault, and is more fearful. *Id.* at 322. The girl also testified to having nightmares since the assault, and some of her journal entries outlining the emotional impact of the assault were submitted into evidence. *Id.* at 323. The Court held that the girl's mother successfully proved a claim for tort of outrage claim. *Id.* The Court reasoned that the mother's testimony, the journal entries, and the girl's own testimony worked in tandem to prove the girl "experienced severe emotional distress." *Id.*

Defendant's actions of recording and disclosing intensely intimate photos and videos of Plaintiffs create conceivable IIED claims. The disclosure of one's genitals and private, sexual engagements without consent is not a mere insult, indignity, threat, annoyance, petty oppression, or other triviality. To deal daily with the fear and trauma of your naked body being revealed to strangers or current romantic partners is not a "trivial emotional distress[] that [is] common to each person in his every day life." (Def.'s Br. Supp. Def.'s Mot. Dismiss Pls.' Compl. 7). Instead, this activity rises to the rare level of egregiousness that an IIED claim calls for.

Defendant's conduct is similar to the defendant's conduct in *O'Rear* in that Defendant strategically entered into misguided trusting relationships with Plaintiffs and used this trust to harm Plaintiffs. As to Plaintiff M.L., Defendant is even more similar with the Defendant in *O'Rear* as Defendant was aware of Plaintiff's history with harmful relationships and took her vulnerability as an opportunity to gain trust. A similar level of trust was placed in Defendant by Plaintiffs Z.P. and A.W, who placed their confidences in Defendant on the false promise that their relationships with Defendant were wholly private. Plaintiffs entered each intimate moment with Defendant with

8

the promise from Defendant that these recorded moments would not be accessible to others. Yet, the exact opposite became true as the most private parts of their lives and bodies were disclosed to others.

Plaintiffs are also like the plaintiff in *Harrelson*. Defendant's nonconsensual disclosure has created a myriad of severe, negative emotions that Plaintiffs are forced to endure daily. Plaintiffs have had to turn to outside sources such as therapy and medication to cope with the distress these discoveries have created in their lives. Along with this, the continuous effort from Plaintiffs to obtain justice in this matter has exacerbated this trauma.

The Court should deny Defendant's motion to dismiss Count IV with respect to all Plaintiffs. Alabama law does not restrict IIED claims to any categories of conduct. Further, Defendant's nonconsensual distribution of private content conceivably amounts to extreme and outrageous conduct.

III.     **The Statute of Limitations has not Ran for Plaintiff Z.P.'s with Respect to Counts II-IV.**

   A.   Plaintiff Z.P.'s claims have not expired because the continuing violation doctrine tolls the statute of limitations.

Defendant alleges that Plaintiff Z.P.'s state claims have expired because "the statute of limitations for all State claims tolled [sic] months prior to the filing of this lawsuit." (Def.'s Br. Supp. Def.'s Mot. Dismiss Pls.' Compl. 10). However, "[t]he continuing violation doctrine[, also referred to as the continuing harm doctrine,] is an exception to the statute of limitations bar." *Mitchell v. Elmore Country Dep't Hum. Res.*, No. 2:22-CV-22-MHT-KFP, 2022 WL 17982131, at *3 (M.D. Ala. Aug. 22, 2022), *report and recommendation adopted sub nom. Mitchell v. Elmore Cnty. Dep't of Hum. Res.*, No. 2:22-CV22-MHT, 2022 WL 17978903 (M.D. Ala. Dec. 28, 2022). Under

this doctrine, "when a defendant commits a continuing tort, the statute of limitations is tolled until the defendant ceases the tortious conduct." *Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1232 (N.D. Ala. 2016). The Alabama Supreme Court "has used the term 'continuous tort' to describe a defendant's repeated tortious conduct which has repeatedly and continuously injured a plaintiff." *Ex parte Abbott Laboratories*, 342 So. 3d 186, 195–96 (Ala. 2021) (quoting *Moon v. Harco Drugs*, Inc., 435 So. 2d 218, 220-21 (Ala. 1983)). "[T]he continuing harm doctrine tolls the statute of limitations regardless of a potential plaintiff's discovery of the wrong." *Litz v. Maryland Dep't of Env't*, 76 A.3d 1076, 1090 n.9 (Md. 2013).

Plaintiffs' Complaint explains Defendant's repeated scheme of posting sexually explicit images of Plaintiffs online without their knowledge or consent. Specifically, the Complaint alleges that "Bryant would share the intimate images he had created on various social media and websites without the knowledge or consent of the women depicted." (Pls.' Compl. 2 ¶ 1). It further alleges that "[b]etween 2021 and 2023, Bryant disclosed intimate visual depictions of Plaintiffs via the internet without Plaintiffs' consent or knowledge." (Pls.' Compl. 2 ¶ 2). Bryant posted videos of the Plaintiffs' on multiple websites, "such as Reddit, OnlyFans, and TezFiles." (Pls.' Compl. 2 ¶ 2). As stated in the Complaint, "Bryant eventually deleted the videos of Z.P. from OnlyFans." (Pls.' Compl. 2 ¶ 2). However, it has been clearly alleged that Defendant posted on multiple websites, not just OnlyFans, and there has been no indication that Defendant deleted the videos from other websites. In October 2021, "the Clinic sent Bryant a cease & desist letter demanding that he delete any remaining intimate visual depictions of Z.P." (Pls.' Compl. 8 ¶ 30). Plaintiff Z.P. did not indicate in the Complaint that Defendant complied with the cease & desist letter, and there is reason to believe he did not.

The Complaint does allege, however, that "In June 2023, Officer J. Lovejoy with the Tuscaloosa Police Department ("TPD") opened a criminal investigation into Bryant's misconduct." (Pls.' Compl. 12 ¶ 52). "During the investigation, Officer Lovejoy compiled an evidence file containing intimate visual depictions of Z.P. … from the various pornography and social media websites Bryant used in his scheme." (Pls.' Compl. 12 ¶ 53). These intimate videos were obtained in or after June 2023, just seven months prior to the filing of this lawsuit. Further, while Officer Lovejoy has shared information with Plaintiffs regarding the findings of his investigation, he is unable to provide Plaintiffs with his records until he receives a subpoena ordering such. Thus, Plaintiffs need the opportunity to commence discovery in this case in order to pinpoint the exact dates of Defendant's posts and the deletion of such posts.

Plaintiff Z.P. adequately alleged that Defendant's scheme of posting intimate videos of her on various websites was ongoing until at least 2023. Each time Defendant posted an intimate depiction of Plaintiff Z.P. online constituted repeated tortious conduct. Even if the Court assumes that Defendant stopped posting intimate depictions of Plaintiff Z.P. in 2023, the statute of limitations would have tolled until 2023, which is well within two years of the February 8, 2024 filing date.

## CONCLUSION

Defendant's Motion to Dismiss must be denied. First, the Plaintiffs' Complaint is not a shotgun pleading. Second, Alabama law does not call for a claim of infliction of emotional distress to fall into any set category of activity. Further, Defendant's conduct is extreme and outrageous as to give rise to an IIED claim. Third, the statute of limitations has not run with Respect to Plaintiff Z.P. for Counts II-IV.

Respectfully submitted,

/s/ Laina M. Henry
_____
Law Student Intern

s/ Laura Alice Hillhouse
_____
Law Student Intern

/s/ Yuri R. Linetsky
_____
ASB-3088-B20W

/s/ Ricky T. Chambless
_____
ASB-5879-S77R

CIVIL LAW CLINIC
THE UNIVERSITY OF ALABAMA SCHOOL OF LAW
Box 870392
Tuscaloosa, Alabama 35487-0392
Telephone:  205.348.4960
Facsimile:  205.348.6851
Email: laina.henry@law.ua.edu
        lauraalice.hillhouse@law.ua.edu
        ylinetsky@law.ua.edu
        rchambless@law.ua.edu

Law Student Interns and Attorneys for
Plaintiffs Z.P., A.W., & M.L.


## CERTIFICATE OF SERVICE

A copy of this document has been served, on the date of filing, by operation of the CM/ECF system to Jason L. Wollitz, attorney for Defendant Errol Gregory Bryant.


/s/ Yuri R. Linetsky
_____