IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Z.P., ET AL., | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 7:24-cv-00151-ACA |
| ERROL GREGORY BRYANT, | ) |
| Defendant. | ) |

**AMENDED COMPLAINT**

Plaintiffs Z.P., A.W., G.C., and M.L bring this action against Defendant Errol Gregory Bryant for damages sustained as a result of Bryant's nonconsensual disclosure of intimate visual depictions of Plaintiffs and allege as follows:

**NATURE OF THE ACTION**

1. Z.P., A.W., G.C., and M.L. are four young Tuscaloosa women with a painful shared experience. Z.P., A.W., G.C., and M.L. were strangers until they became linked by their status as four of countless victims of a scheme to exploit them orchestrated by Bryant. The first step in the scheme was to begin dating a woman—many of them significantly younger than Bryant—and create intimate images with that woman, assuring her he would keep the images private. Next, Bryant would either agree to make the relationship exclusive while continuing to date several other women or fail to disclose that he was involved in purportedly exclusive relationships with other women—more victims. Finally, Bryant would share the intimate images he had created on various social media and pornography websites without the knowledge or

consent of the women depicted. But Bryant's tried and true methods began to fail when Z.P. discovered his scheme in 2021 and made it her mission to alert every other woman Bryant had victimized. Fortunately, Z.P.'s efforts to warn other victims reached A.W., G.C., and M.L., and the four now join as co-plaintiffs to seek a remedy for Bryant's misconduct.

2. This is an action arising in part under 15 U.S.C. § 6851, a statute which provides a civil remedy for victims of nonconsensual disclosure of intimate images. Between 2021 and 2023, Bryant disclosed intimate visual depictions of Plaintiffs via the internet without Plaintiffs' consent or knowledge. Bryant knew or recklessly disregarded that he did not have Plaintiffs' consent to share these images, yet he posted them to various social media and pornography websites such as Reddit, OnlyFans, and TezFiles. Bryant's conduct satisfies the elements of 15 U.S.C. § 6851(b)(1)(A), allowing Plaintiffs to bring civil causes of action against Bryant.

3. Plaintiffs seek liquidated damages in the amount of $150,000 per nonconsensual disclosure, attorney's fees, and costs associated with this action pursuant to 15 U.S.C. § 6851(3)(A)(i). Plaintiffs also request injunctive relief pursuant to 15 U.S.C. § 6851(3)(A)(ii).

4. Plaintiffs also seek relief under the state tort law theories of intentional infliction of emotional distress and violation of privacy, both of which are recognized in Alabama case law. Bryant's conduct—the same conduct that provides a civil cause of action under federal law—satisfies the elements of both torts. Plaintiffs are therefore entitled to recover under state law as well as federal.

5. Plaintiffs seek damages for emotional distress and violation of privacy in an amount to be determined by the Court.

6. If the Court finds that Plaintiffs have no adequate remedy at law, Plaintiffs Z.P., A.W., and G.C. alternatively seek relief under the equitable remedy of unjust enrichment, which is recognized under Alabama law.

## THE PARTIES

7. Plaintiff Z.P. is an individual, over the age of 19, residing in Tuscaloosa County, Alabama and is a citizen of the state of Alabama. Z.P. seeks to proceed pseudonymously for the reasons set forth in her Motion to Proceed Pseudonymously.

8. Plaintiff A.W. is an individual, over the age of 19, residing in Tuscaloosa County, Alabama and a citizen of the state of Alabama. A.W. seeks to proceed pseudonymously for the reasons set forth in her Motion to Proceed Pseudonymously.

9. Plaintiff M.L. is an individual, over the age of 19, residing in Tuscaloosa County, Alabama and a citizen of the state of Alabama. M.L. seeks to proceed pseudonymously for the reasons set forth in her Motion to Proceed Pseudonymously.

10. Plaintiff G.C. is an individual, over the age of 19, residing in Tuscaloosa County, Alabama and a citizen of the state of Alabama. G.C. seeks to proceed pseudonymously for the reasons set forth in her contemporaneously filed Motion to Proceed Pseudonymously.

11. Defendant Errol Gregory Bryant is an individual, over the age of 19, residing in Tuscaloosa County, Alabama and a citizen of the state of Alabama. Bryant's last known address is 2515 6th Court Tuscaloosa, AL 35401.

## JURISDICTION & VENUE

12. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, because Plaintiffs' federal claims arise under 15 U.S.C. § 6851, a law of the United States.

13. This Court has supplemental jurisdiction over Plaintiffs' state law claims because the state law claims "are so related" to Plaintiffs' federal claims "that they form part of the same case or controversy" as required by 28 U.S.C. § 1367(a).

14. This Court has personal jurisdiction over Bryant because he is domiciled in the state of Alabama.

15. Venue in this Judicial District and Division is proper pursuant to 28 U.S.C. § 1391(b)(1) because Bryant resides in Tuscaloosa County, Alabama, a county within the Western Division of the Northern District of Alabama.

## FACTS

### Facts as to Plaintiff Z.P.

16. In or around June 2021, Z.P. and Bryant met on a dating website. At this time, Z.P. was 23 years old and Bryant was 33 years old. Z.P. and Bryant began dating each other, and on or around July 22, 2021, Z.P. and Bryant agreed to make their relationship exclusive.

17. Sometime between Z.P. and Bryant's first meeting and their decision to begin an exclusive relationship, Bryant told Z.P. that he wanted to record himself and Z.P. having sex. Believing that no one but Bryant or she would ever see it, Z.P. consented to the creation of this recording and other intimate visual depictions throughout her relationship with Bryant. Z.P. and

Bryant had verbal discussions establishing that neither of them would share the created images without the other's consent.

18.     On July 22, 2021, Z.P. consented to Bryant sharing an intimate image of Bryant and herself on the dating website on which they met. Z.P. viewed this post as a confirmation of her and Bryant's relationship and as a way to inform the website's other users that Bryant was in a relationship.

19.     Other than the instance described in the allegation above, Z.P. never gave Bryant consent to share these images with others or distribute them on the internet. In fact, she couldn't have, because Bryant never asked for consent. Instead, he created intimate visual depictions of Z.P. with the assurance that they would remain private unless otherwise discussed, then shared them on multiple publicly accessible websites under the screen name "alabamabull."

20.     These intimate visual depictions depict Z.P.'s uncovered pubic area, genitals, and anus and depict Z.P. engaging in "sexually explicit conduct" as defined by 18 U.S.C. § 2256(2)(A)-(B). Bryant also attached captions—one of which is particularly explicit and disturbing—to his posts of the intimate visual depictions of Z.P.

21.     On July 28, 2021, Bryant posted a video on OnlyFans depicting Z.P.'s uncovered pubic area and anus while Z.P. was engaged in sexually explicit conduct. Bryant captioned the video "Finally found the lost footage."

22.     On August 11, 2021, Bryant posted a video on OnlyFans depicting Z.P.'s uncovered genitals and anus while Z.P. was engaged in sexually explicit conduct. Bryant captioned the video "Sometimes all they wanna [sic] do is swallow dick and I can't tell them no. I

told her to keep that ass in the air so I could record how phat [sic] and wet her pussy was while she gagged."

23. On or around September 8, 2021, a friend of Z.P. informed her that they had recognized Z.P.'s body in a sexually explicit video Bryant had posted to OnlyFans. That same day or shortly thereafter, Z.P. discovered the second intimate visual depiction of herself on OnlyFans. She also discovered intimate visual depictions of several other women on websites such as OnlyFans, Reddit, X (formerly "Twitter"), Fansly, and ManyVids.

24. Shortly after discovering the videos of herself on Bryant's OnlyFans page, Z.P. contacted Bryant and asked Bryant to delete the videos from the website. However, Bryant did not comply immediately, and later that day, after receiving a link from a friend informing Z.P. that the videos were still on OnlyFans—Z.P. texted Bryant again to demand he remove the videos.

25. Bryant eventually deleted the videos of Z.P. from OnlyFans, but Z.P. found videos of another woman on Bryant's OnlyFans one or two days later.

26. Z.P. contacted the woman through social media to inform her about the videos, and the woman told Z.P. that she had also not consented to the disclosure of her intimate visual depictions.

27. After Bryant noticed that Z.P. and the other depicted woman had become "friends" on social media, he deleted his entire OnlyFans page.

28. On September 11, 2021, Z.P. told Bryant to leave her and the other woman alone and not to contact her again.

29. After learning that Bryant—with whom Z.P. believed she was in an exclusive romantic relationship—had been unfaithful and distributed intimate depictions of her without her consent, Z.P. promptly ended the relationship.

30. On September 14, 2021, Z.P. met with the Domestic Violence Clinic ("the Clinic") at the University of Alabama School of Law to inquire about legal remedies for Bryant's misconduct. Z.P. told the Clinic that she feared Bryant would use violence to retaliate against her for exposing his misconduct and had borrowed a friend's dog in an attempt to feel safe in her home.

31. Z.P. was concerned not only for her personal safety, but concerned that Bryant was continuing or would continue his pattern of behavior with other women. On October 11, 2021, the Clinic sent Bryant a cease & desist letter demanding that he delete any remaining intimate visual depictions of Z.P. and return Z.P.'s personal property, which he had retained after Z.P. terminated the relationship.

32. After being victimized in her relationship with Bryant, Z.P. joined a dating protection group on Facebook.com[1] ("the Facebook group"). The Facebook group describes itself as "a place where women can warn other women about liars, cheaters, abusers, or anyone who exhibits any type of toxic or dangerous behavior," a tool "to check to see if anyone has posted any warnings about someone that you're considering dating," and a forum "used to inquire about someone you're dating or may potentially date to see if anyone has had any experiences with that person."

---

[1] Are We Dating The Same Guy? | Birmingham / Montgomery / Alabama, *About*, Facebook, https://www.facebook.com/groups/1162533747874549/?mibextid=oMANbw.

7

33. In or around February 2023, Z.P. came across a post in the Facebook group in which a woman shared a picture of Bryant and asked if any members had information about him.

34. Seeking to protect other women from Bryant and his scheme, Z.P. posted multiple comments explaining that Bryant had cheated on her and shared intimate visual depictions of her without her consent.

35. In response to her comments, several women contacted Z.P. through Facebook Messenger and expressed concern that Bryant may have posted intimate visual depictions of them as well.

36. Z.P. sent these women links to the various social media and pornography websites Bryant used to distribute intimate visual depictions of his sexual partners. Multiple women identified themselves in these depictions, including Plaintiff A.W.

37. Z.P. has suffered extreme emotional distress as a result of Bryant's misconduct. Z.P. sees a therapist to help her cope with the trauma Bryant caused. In addition to the emotional distress resulting from Bryant's nonconsensual disclosure of intimate videos of Z.P., Z.P. has suffered additional stress from being forced to relive her trauma in her attempts to seek justice.

### Facts as to Plaintiff A.W.

38. In or around April 2021, Plaintiff A.W. met and began dating Bryant. A.W. was 24 years old and Bryant was 33 years old. Bryant continued dating A.W. after agreeing to make his relationship with Plaintiff Z.P. exclusive and did not inform A.W. about his relationship with Z.P.

39. In September or October 2021, A.W. and Bryant agreed to make their relationship exclusive. Their relationship continued until A.W. terminated it in April 2023.

40. In or around June 2021, Bryant began recording himself and A.W. during sexual intercourse. Like Z.P., A.W. believed—based on assurances from Bryant—that these intimate visual depictions would only be viewed by herself and Bryant and did not consent to their disclosure or distribution on the internet.

41. However, lack of consent did not prevent Bryant from disclosing at least six intimate visual depictions of A.W. on websites such as OnlyFans, TezFiles, and Reddit.

42. These intimate visual depictions depicted A.W.'s uncovered pubic area, genitals, and anus and depicted A.W. engaging in sexually explicit conduct as defined by 18 U.S.C. § 2256(2)(A)-(B). Like the depictions of Z.P., the depictions of A.W. were accompanied by various explicit, disturbing captions.

43. On December 29, 2021, Bryant posted a video on TezFiles depicting A.W.'s uncovered anus while A.W. was engaged in sexually explicit conduct. The video was captioned "I almost didn't last."

44. On January 24, 2022, Bryant posted a video on TezFiles depicting A.W.'s uncovered anus while A.W. was engaged in sexually explicit conduct. The video was captioned "My favorite position."

45. On February 2, 2022, Bryant posted a video on OnlyFans depicting A.W.'s uncovered genitals and anus while A.W. was engaged in sexually explicit conduct. The video was falsely captioned "She asked for me to get y'all's opinions."

46. On June 13, 2022, Bryant posted a video on TezFiles depicting A.W.'s uncovered anus while A.W. was engaged in sexually explicit conduct. The video was captioned "My damn light went out."

47. On September 20, 2022, Bryant posted an image on Reddit depicting A.W.'s uncovered anus while A.W. was engaged in sexually explicit conduct. The video was captioned "the only way I f*ck her."

48. On September 20, 2022, Bryant posted an image on Reddit depicting A.W.'s uncovered anus while A.W. was engaged in sexually explicit conduct. The video was captioned "begged me not to pull out."

49. In May or June 2023, A.W. learned of Bryant's misconduct during his relationship with Z.P. when she saw Z.P.'s comments about Bryant in the Facebook group.

50. Fearful that Bryant had repeated his behavior, A.W. contacted Z.P. through Facebook Messenger for more information. Z.P. sent A.W. links to the websites on which Bryant had distributed intimate visual depictions of Z.P. and other women.

51. To her horror, A.W. recognized herself in six different videos, all of which Bryant had posted without her knowledge or consent.

52. A.W. has suffered immense emotional distress as a result of Bryant's misconduct. A.W. sees a psychiatrist to help her cope with her trauma, and her psychiatrist increased the dosage of A.W.'s psychiatric medication after A.W. learned that Bryant had posted intimate videos of her online. A.W. has suffered additional stress from being forced to relive her trauma in an attempt to seek justice.

**Facts Common to Plaintiffs Z.P. and A.W.**

53.     In June 2023, Investigator J. Lovejoy with the Tuscaloosa Police Department ("TPD") opened a criminal investigation into Bryant's misconduct. Z.P. and A.W. were both in contact with Inv. Lovejoy during the investigation.

54.     During the investigation, Inv. Lovejoy compiled an evidence file containing intimate visual depictions of Z.P., A.W., and multiple other women from the various pornography and social media websites Bryant used in his scheme. Z.P. identified herself in two videos, A.W. identified herself in six.

55.     Inv. Lovejoy obtained information indicating that Bryant financially profited from the disclosure of intimate depictions.

56.     In or around September 2023, TPD informed Z.P. that the District Attorney's office would likely decline to prosecute Bryant. In October 2023, the Chief Assistant District Attorney formally confirmed to the Plaintiffs that the District Attorney's office had declined to prosecute Bryant at that time.

57.     According to the Chief A.D.A., the relevant criminal statute—Ala. Code § 13A-6-240—required an offender act with an "intent to coerce, harass, or intimidate the person depicted." Because there was no evidence that Bryant acted with such an intent, the District Attorney's office could not prosecute him.

58.     However, effective September 1, 2023, § 13A-6-240 no longer contains the aforementioned intent requirement.

59. Although the District Attorney's office has declined to prosecute Bryant at this time, Inv. Lovejoy has confirmed that the Tuscaloosa Police Department will continue to retain the evidence collected during the investigation.

### Facts as to Plaintiff G.C.

60. In or around October 2022, Plaintiff G.C. met and began a relationship with Bryant. G.C. was 25 years old, and Bryant was 34 years old.

61. Bryant continued his relationship with G.C. after agreeing with G.C. that their relationship was exclusive. G.C. and Bryant's relationship continued until August 2023.

62. During G.C. and Bryant's relationship, Bryant made comments to G.C. regarding an ex-girlfriend, who G.C. later believed to be Z.P. In this commentary, Bryant implied that an ex-girlfriend was employing a plot against him with alleged falsehoods but did not discuss any disclosure or distribution of intimate visual depictions.

63. Trusting Bryant, G.C. shared with him her personal history of sexual trauma resulting from previous relationships.

64. Throughout G.C. and Bryant's nearly one-year relationship, Bryant recorded multiple sexual interactions between him and G.C. G.C. never consented to the recordings. Similarly, G.C. neither had knowledge of nor consented to the distribution and disclosure of the recordings on the internet.

65. Lack of consent did not prevent Bryant from disclosing at least five intimate visual depictions of G.C. on websites such as ManyVids.

66. These intimate visual depictions displayed G.C. engaging in sexually explicit conduct as defined by 18 U.S.C. § 2256(2)(A)-(B).

67. In August 2023, Z.R. reached out to G.C. after identifying her on Fetlife. Z.R. explained Bryant's pattern of behavior against other women and informed her of the file Inv. Lovejoy had begun which contained videos of other victims.

68. Fearful that Bryant had repeated his behavior, G.C. contacted Inv. Lovejoy on August 21, 2023 to request to review the file. G.C. reviewed the file at the Tuscaloosa Police Department the next day on August 22, 2023.

69. In reviewing the file, G.C., to her horror, recognized herself in at least five different videos, all of which Bryant had posted without her knowledge or consent.

70. G.C. has suffered immense emotional distress as a result of Bryant's misconduct. As a result of Bryant's actions, G.C. had to increase her therapy visits for repeated trauma therapy since learning of Bryant's nonconsensual disclosures. The exacerbated sexual trauma G.C. has experienced as a result of Bryant's actions sometimes causes G.C. to cancel appointments with her client.

**Facts as to Plaintiff M.L.**

71. Between March and May 2022, Plaintiff M.L. met and began dating Bryant. M.L. was 31 years old and Bryant was 34 years old. Bryant and M.L.'s relationship continued until M.L. terminated it in March 2023. Bryant did not inform M.L. that he was purporting to be in an exclusive relationship with A.W. over the course of his relationship with M.L.

72. During the course of their relationship, Bryant recorded himself and A.W. during sexual intercourse. Like Z.P. and A.W., M.L. believed—based on an agreement with Bryant—that these intimate visual depictions would only be viewed by herself and Bryant and did not consent to their disclosure or distribution on the internet.

73. In March 2023, M.L. terminated her relationship with Bryant to begin an exclusive relationship with her current boyfriend.

74. Despite his agreement with M.L. not to share intimate visual depictions without consent, in October 2023, Bryant sent three videos of himself and M.L. engaging in sexually explicit conduct to M.L.'s current boyfriend via Snapchat.

75. In January 2024, M.L. learned of Bryant's misconduct with Z.P., A.W., and other women when she saw one of Z.P.'s warning posts about Bryant in the Facebook group.

76. Upon information and belief, Bryant also disclosed intimate visual depictions of M.L. on other publicly accessible websites.

77. M.L. contacted Z.P. through Facebook Messenger and informed Z.P. that Bryant had sent videos of himself and M.L. through Snapchat. Z.P. suggested M.L. contact Inv. Lovejoy.

78. Shortly after contacting Z.P., M.L. called Inv. Lovejoy and reported Bryant's nonconsensual disclosure of intimate images through Snapchat.

79. M.L. has suffered immense emotional distress as a result of Bryant's misconduct. During the course of their relationship, M.L. confided in Bryant about her history of anxiety and abusive relationships. Knowing this, Bryant still disclosed deeply intimate depictions of M.L. in an attempt to intimidate or retaliate against M.L. or her current boyfriend. M.L. has had to

significantly increase use of her prescription anxiety medication since learning of Bryant's nonconsensual disclosure of her intimate images. M.L. has suffered additional stress from being forced to relive her trauma in an attempt to seek justice.

### Facts as to Defendant

80. After Inv. Lovejoy's investigation into Bryant's online nonconsensual disclosure of intimate imagery, many of the posts and profiles Bryant used in his scheme were deleted.

81. However, after Inv. Lovejoy's investigation, Bryant created a new Reddit profile to resume sharing intimate visual depictions. Around this time, Bryant also advertised via a FetLife post that he had "[c]ontent available for sale."

82. Since Z.P. exposed Bryant's scheme in the Facebook group, Bryant has created several different profiles on websites such as Reddit and FetLife to continue sharing intimate visual depictions. When one of these accounts is recognized as Bryant's, Bryant either deletes the profile or the website itself takes the profile down, at which point Bryant creates a new account, and the cycle continues.

83. Bryant financially profited from the depictions of Plaintiffs Z.P., A.W., and G.C. by sharing them on websites where pornographic content is monetized.

84. As of the date of this Complaint's filing, Bryant is still sharing intimate visual depictions of various women via the Internet.

### CLAIMS FOR RELIEF

### Count I – Nonconsensual Disclosure of Intimate Images

85. Plaintiffs reallege and incorporate by reference all previous factual allegations.

86. Between 2021 and 2023, Bryant shared various "intimate visual depiction[s]" of Plaintiffs—as defined by 15 U.S.C. § 6851(a)(5)—using a "means or facility of interstate . . . commerce," the Internet. 15 U.S.C. § 6851(b)(1)(A).

87. Bryant shared these intimate visual depictions without Plaintiffs' consent.

88. When Bryant shared these intimate visual depictions, Bryant knew that Plaintiffs had not consented—or at least recklessly disregarded whether Plaintiffs had consented—to their disclosure.

89. As a result of Bryant's misconduct, Plaintiffs are entitled to recover liquidated damages in the amount of $150,000 per nonconsensual disclosure—at least $300,000 as to Plaintiff Z.P., at least $900,000 as to Plaintiff A.W, and at least $450,000 as to Plaintiff M.L.—pursuant to 15 U.S.C. § 6851(3)(A)(i). Plaintiffs are also entitled to recover attorney's fees and other costs associated with this action pursuant to 15 U.S.C. § 6851(3)(A)(i).

90. Plaintiffs also request that the Court enter "permanent injunction[s] ordering Bryant to cease display or disclosure of the visual depiction[s]" of Plaintiffs pursuant to 15 U.S.C. § 6851(3)(A)(ii).

### Count II – Intentional Infliction of Emotional Distress
### (Alabama Tort of Outrage)

91. Plaintiffs reallege and incorporate by reference all previous factual allegations.

92. Bryant knew or should have known that sharing intimate visual depictions of Plaintiffs on the Internet without Plaintiffs' consent would cause the Plaintiffs emotional distress.

93. Bryant's conduct in sharing such intimate images is extreme and outrageous.

94. Bryant's conduct has caused the Plaintiffs severe emotional distress.

95. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

### Count III – Violation of Privacy

96. The Plaintiffs reallege and incorporate by reference all previous factual allegations.

97. By posting various intimate visual depictions of Plaintiffs to publicly accessible websites, Bryant publicized deeply private elements of Plaintiffs' personal lives.

98. Bryant's conduct—publicizing images of a person's naked body without consent—would be extremely offensive to any reasonable person.

99. The deeply private images Bryant publicized are not a matter of public concern.

100. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

### Count IV – Unjust Enrichment (as to Plaintiffs Z.P., A.W., and G.C.)

101. Plaintiffs Z.P., A.W., and G.C. reallege and incorporate by reference all previous factual allegations pertaining to themselves and Bryant.

102. Bryant knowingly accepted and retained the benefit of financial gain when he posted various intimate visual depictions of Plaintiffs Z.P., A.W., and G.C. to various publicly accessible websites where such content would be purchased by the public.

103. By posting such content for financial gain without the consent of Plaintiffs Z.P., A.W., and G.C., Bryant abused his confidential relationships with Plaintiffs Z.P., A.W., and G.C.

104. Plaintiffs Z.P., A.W., and G.C. have a reasonable expectation of compensation for use of their images on publicly accessible websites for financial gain.

105. Bryant was unjustly enriched by profiting from the sale of images that were distributed without Plaintiffs' consent, thereby holding money that, in equity and good conscience, belongs to Plaintiffs.

106. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs request that this Court enter a judgment against Bryant, granting Plaintiffs the following relief:

1. The award of the requested equitable relief and liquidated damages for Count I in the amount of $300,000 for Plaintiff Z.P., $900,000 for Plaintiff A.W., $750,000 for G.C., and $450,000 for M.L.;

2. The award of the damages in an amount to be proven at trial for Counts II through III;

3. In the alternative, the award of the damages in an amount to be proven at trial for Count IV for Plaintiffs Z.P., A.W., and G.C..

4. The award of costs of the suit and attorney's fees; and

5. Such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues that are so triable.

Respectfully submitted,

/s/ Laina M. Henry
Law Student Intern

/s/ Laura Alice Hillhouse
Law Student Intern

/s/ Yuri R. Linetsky
ASB-3088-B20W

/s/ Ricky T. Chambless
ASB-5879-S77R

CIVIL LAW CLINIC
THE UNIVERSITY OF ALABAMA SCHOOL OF LAW
Box 870392
Tuscaloosa, Alabama  35487-0392
Telephone:  205.348.4960
Facsimile:  205.348.6851
Email:  laina.henry@law.ua.edu
   lauraalice.hillhouse@law.ua.edu
   ylinetsky@law.ua.edu
   rchambless@law.ua.edu

Law Student Interns and Attorneys for
Plaintiffs Z.P., A.W., & M.L.

## CERTIFICATE OF SERVICE

A copy of this document has been served, on the date of filing, by operation of the CM/ECF system to Jason L. Wollitz, attorney for Defendant Errol Gregory Bryant.

/s/ Yuri R. Linetsky