# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **Z.P., A.W., G.C., M.L.,** ) | |
| ) | |
| **Plaintiffs/Counter-Defendants,**) | |
| ) | |
| **vs.** ) | **Case No.:  7:24-CV-00151-ACA** |
| ) | |
| **ERROL GREGORY BRYANT,** ) | |
| ) | |
| **Defendant/Counter-Plaintiff.** ) | |
| ) | |

---

## DEFENDANT/COUNTER-PLAINTIFF'S RESPONSE IN OPPOSITION TO PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

---

**COMES NOW**, Defendant/Counter-Plaintiff, **Errol Gregory Bryant**, by and through the undersigned counsel of record, and submits this Response in Opposition to Plaintiffs/Counter-Defendants' Motion to Dismiss Defendant/Counter-Plaintiff's Counterclaim, stating as follows:

## I.    INTRODUCTION

Plaintiffs/Counter-Defendants' Motion to Dismiss Defendant/Counter-Plaintiff's counterclaim under Fed. R. Civ. P. 12(b)(6) is without merit and should be denied. Defendant/Counter-Plaintiff's counterclaims are sufficiently pleaded to meet the notice-pleading standard required by the Federal Rules of Civil Procedure. Defendant/Counter-Plaintiff's    claims    are    not    legally    insufficient    as

Plaintiffs/Counter-Defendants contend and the allegations, when taken as true, sufficiently state claims upon which relief can be granted.

## II.     STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A counterclaim is "plausible on its face," when it contains enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.   PLAINTIFFS/COUNTER-DEFENDANTS' ARGUMENT THAT THE COUNTERCLAIM VIOLATES RULES 8(a)(2) AND 10 FAILS BECAUSE DEFENDANT/COUNTER-PLAINTIFF ALLEGES FACTS THAT PLAUSIBLY SUPPORT HIS CLAIMS

Plaintiffs/Counter-Defendants' contention is that Defendant/Counter-Plaintiff's counterclaim does not comply with Federal Rule of Civil Procedure 8(a)(2).[1] It misses the mark.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that is "plausible on its face"—one that "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the allegations. *Twombly*, 550 U.S. at 555-56. Dismissal under Rule 8(a)(2) is appropriate only "where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) (internal quotation marks and citation omitted); see also, *Scheuer v. Rhodes*, 416 U. S. 232 (1974) ("The issue is not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").

---

[1] Doc. 52 at 2.

Additionally, Federal Rule of Civil Procedure 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense." Rules 8(a)(2) and 10(b) allow the court to determine "which facts support which claims." *Weiland*, 792 F.3d at 1320 (internal quotation marks omitted). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz* v. *Sorema N. A.*, 534 U. S. 506, (2002). Plaintiffs/Counter-Defendants appear to have ignored the difference between what is required to state a claim and what is required to prevail on the merits.

Plaintiffs/Counter-Defendants erroneously argue that Defendant/Counter-Plaintiff's Counterclaim should be dismissed as "shotgun pleadings."[2] However, the key feature of shotgun pleadings is that they fail to give Defendants "adequate notice" of the claims being brought against them and the supporting factual allegations for each claim. *Weiland*, 792 F.3d at 1323. That is not the case here. While the Eleventh Circuit has held that incorporating all the factual allegations into each claim constitutes a shotgun pleading, it has done so when it is nearly *impossible* for Defendants and the Court to determine with any certainty which factual allegations

---

[2] Doc. 52 at 4.

give rise to which claims for relief. *See Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018)(emphasis added). That is not the case here.

Here, contrary to Plaintiffs/Counter-Defendants' assertion that the counterclaim fails to distinguish which Plaintiff/Counter-Defendant is responsible for each act,[3] Defendant/Counter-Plaintiff's factual allegations are clearly tied to each of their claims. Moreover, the allegations sufficiently articulate how Plaintiffs/Counter-Defendants conspired to defame and injure Defendant/Counter-Plaintiff's reputation. Defendant/Counter-Plaintiff's counterclaim provides adequate notice of the factual basis supporting each cause of action, and each claim is separated into distinct sections corresponding with each element of Defendant/Counter-Plaintiff's claims. These divisions provide this Court and Plaintiffs/Counter-Defendants with a sufficient roadmap to determine which factual allegations give rise to which claims for relief.

Furthermore, given Plaintiffs/Counter-Defendants' anonymity in both this litigation and many of their defamatory communications,[4] Defendant/Counter-Plaintiff has provided as much factual information as he has in raising "a reasonable expectation that discovery will reveal evidence" of the allegations, which is all that is required. *Twombly*, 550 U.S. at 555-56.

---

[3] Doc. 52 at 4.
[4] "I'm sorry to approach you like this, I am using **my burner**. [Defendant/Counter-Plaintiff] has victimized countless women in Bham and Tuscaloosa areas." BRYANT 000146 (emphasis added).

While Plaintiffs/Counter-Defendants argue that Defendant/Counter-Plaintiff incorporated prior allegations into each claim, such incorporation provides clarity and context rather than confusion. It can certainly not be said that it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" such that dismissal is appropriate.[5] *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (internal quotation marks and citation omitted). As in *Weiland,* "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Id.* Therefore, while the practice of including all factual allegations in each count is frowned upon, it does not require dismissal, especially when it is possible to discern which factual allegations give rise to each claim for relief.

When viewed in the light most favorable to Defendant/Counter-Plaintiff, especially at the pleadings stage, the facts pled by Defendant/Counter-Plaintiff could absolutely lead a fact finder to conclude that Plaintiffs/Counter-Defendants participated in and are liable for the injurious conduct alleged in the counterclaim. A Plaintiff is not required to provide "detailed factual allegations" to satisfy the Rule 8(a)(2) standard, *Twombly*, 550 U.S. at 555, as long as he "pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for

---

[5] Doc. 52 at 2, 3.

the misconduct alleged," *Iqbal*, 556 U.S. at 678. Defendant/Counter-Plaintiff has done so here.

In sum, Plaintiffs/Counter-Defendants offer no legal support for their argument that Rule 8 and 10 mandate dismissal of Defendant/Counter-Plaintiff's sufficiently pleaded counterclaim. Thus, Plaintiffs/Counter-Defendants' Motion to Dismiss is due to be denied.

To the extent this Court finds that the counterclaim constitutes a shotgun pleading, dismissal would still not be appropriate. If a district court determines that a complaint is a shotgun pleading, to which the Defendant could not reasonably be expected to respond, the court should point out the defects in the complaint and order the Plaintiff to amend the complaint. *Jackson v. Bank of Am.*, N.A., 898 F.3d 1348, 1358-59 (11th Cir. 2018). "In dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court must give the Plaintiff 'one chance to remedy such deficiencies.'" *Id.* at 1358 (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). "A chance to amend a complaint does not need to come in the form of a dismissal without prejudice or the striking of a portion of the complaint's allegations. It can also be accomplished by ordering the party to file a more definite statement." *Id.* "What matters is function, not form: the key is whether the Plaintiff had fair notice of the defects and a meaningful chance to fix them. If

that chance is afforded and the Plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case ….." *Id.*

Because Defendant/Counter-Plaintiff has not been notified of any defects in the counterclaim or afforded an opportunity to cure them, the counterclaim should not be dismissed and Plaintiffs/Counter-Defendants' Motion to Dismiss is due to be denied.

## IV. PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS IS UNFOUNDED BECAUSE DEFENDANT/COUNTER-PLAINTIFF HAS STATED CLAIMS FOR RELIEF

### a. Count I – Libel (Defamation)

Defendant/Counter-Plaintiff has sufficiently pleaded a claim for libel by alleging that Plaintiffs/Counter-Defendants maliciously made false, defamatory statements about him, which were published to third parties, and caused reputational harm.[6] Under Alabama law, defamation requires (1) a "false and defamatory" statement about the Plaintiff, (2) an "unprivileged communication" of the statement to a third party, (3) "fault amounting at least to negligence on the part of the Defendant," and (4) either "actionality of the statement irrespective of special harm" or "the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989). Common-law malice may be shown by proving "'the recklessness of the publication

---

[6] Doc. 52 at 6.

and prior information regarding its falsity.'" *Wiggins v. Mallard*, 905 So. 2d 776, 782 (Ala. 2004).

The counterclaim contains specific allegations regarding the statements made by Plaintiffs/Counter-Defendants, including the nature of the false claims, their publication on social media with malice, and the resulting damage to Defendant/Counter-Plaintiff's reputation and livelihood. Plaintiffs/Counter-Defendants' assertion that Defendant/Counter-Plaintiff has not identified which statements refer to him is incorrect. The counterclaim alleges that Plaintiffs/Counter-Defendants' statements were directed at Defendant/Counter-Plaintiff and that they were understood by their audience as such. While Plaintiffs/Counter-Defendants "ultimately bear[ ] the burden of showing that the defamatory words [were] true," Defendant/Counter-Plaintiff "[bears] the initial burden of showing a false communication." *Crutcher v. Wendy's of North Ala., Inc.*, 857 So. 2d 82, 95 (Ala. 2003).

Here, Plaintiffs/Counter-Defendants knowingly publicized false statements to third parties about Defendant/Counter-Plaintiff using social media and electronic communications. According to Ala. Code 1975 § 6-5-180, "…every accusation importing the commission of a crime punishable by indictment must be held presumptively to mean what the language used ordinarily imports." The counterclaim plausibly alleges that Plaintiffs/Counter-Defendants publicized the

existence of defamatory statements of Defendant/Counter-Plaintiff to third parties through the internet with the awareness that their factual support was wanting, at best, and completely fabricated, at worst. Defendant/Counter-Plaintiff has presented sufficient facts to support his claims and is confident discovery will provide further details and specifications. Accordingly, at this pleading stage, Defendant/Counter-Plaintiff has plausibly alleged that a "false communication" occurred, and Plaintiffs/Counter-Defendants have not met their burden of showing the communications were truthful.

Defendant/Counter-Plaintiff further alleges that the statements were defamatory, in that, they suggested criminal wrongdoing; were made with at least negligence (actual or common-law malice); and caused damage in the form of emotional distress/anxiety, reputational harm and embarrassment, and economic harm.[7] Plaintiffs/Counter-Defendants make no arguments to rebut these contentions. "Generally, any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel [if it] ... charges an offense punishable by indictment or ... tends to bring an individual into public hatred, contempt or ridicule or charges an act odious and disgraceful in society." *Drill Parts & Serv. Co.,* 619 So. 2d 1280 (Ala. 1993) (quoting *McGraw v. Thomason*, 93 So. 2d 741, 744 (Ala. 1957)). !Moreover, falsely imputing the commission of a felony—here, criminal

---

[7] Doc. 48 at 24 ¶42.

conduct/charges,[8] abuse,[9] and rape[10]—*constitutes defamation per se*, entitling

Defendant/Counter-Plaintiff to presumed damages. *See Drill Parts & Serv. Co.,* 619

So. 2d 1280 (Ala. 1993) (citing *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085,

1091 (Ala. 1988)) (emphasis added).

For example,[11]

> … he is for a fact getting arrested. And multiple felony charges …By the way of evidence confirmed …multiple felony charges…more than half a dozen charges.
>
> He is a rapist. DO NOT DATE HIM. Do not befriend him. The DA has declined to prosecute as of today, but that does not mean what he has done isn't criminal.
>
> It would be several felonies already.
>
> He is INCREDIBLY sexually and emotionally abusive and a pathological liar.
>
> Yes-he has sex crimed ppl.
>
> He is unfortunately a classic abuser and narcissist, pathological liar.

"When a defamatory publication is actionable per se, *the law infers injury to reputation as a natural consequence* of the defamation and, as a result, the Plaintiff

---

[8] Doc. 48 at 20 ¶19,20, 23; Doc. 48 at 21 ¶26, 27.
[9] Doc. 48 at 19 ¶16; Doc. 48 at 21 ¶27, 29.
[10] Doc. 48 at 20 ¶20.
[11] The following quotes can be found in Defendant/Counter-Plaintiff's production to Plaintiffs/Counter-Defendants of over 200 documents of internet posts and electronic communications, which specifically refer to Defendant/Counter-Plaintiff, authored by and among Plaintiffs/Counter-Defendants.

is entitled to presumed damages. Thus, [Plaintiff does not have to prove] 'actual harm to reputation or any other damage' in order to recover nominal or compensatory damages." *Id.* at 1092 (quoting W. Prosser and W. Keeton, *The Law of Torts,* § 112 (5th ed. 1984))(emphasis added).[12]

Thus, Defendant/Counter-Plaintiff's libel/defamation claim against Plaintiffs/Counter-Defendants is not due to be dismissed.

### b. Count II – Abuse of Process

"The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998). "It is the use of the process for something other tha[n] its intended result, for example, to extort payment for a debt, that results in liability for abuse of process." *Shoney's, Inc. v. Barnett*, 773 So. 2d 1015, 1024 (Ala. Civ. App. 1999). Plaintiffs/Counter-Defendants have already memorialized one of their ulterior motives of financial gain in a number of communications. For example, as set out in the counterclaim,[13]

> …more direct reparations. It will mainly be financial, at least at first.

"'[T]he [ulterior motive] must culminate in an actual abuse of the process by *perverting it to a use to obtain a result which the process was not intended by law*

---

[12] In fact, Defendant/Counter-Plaintiff was not charged criminally for any action as stated by Plaintiffs/Counter-Defendants nor was he even questioned by authorities.

[13] Doc. 48 at 20 ¶21.

*to effect ....*' " *Dempsey v. Denman*, 442 So. 2d 63, 65 (Ala. 1983) (quoting 72 C.J.S.

Process § 120, pp. 1190-91 (1951) ) (emphasis added). For example,[14]

> I wanna kill him!!!
>
> I want him put away …
>
> …as long as it's over with him in jail or permanently learning his lesson I'll be satisfied….

The Alabama Supreme Court defined abuse of process in *Dickerson   v.*

*Schwabacher,* 177 Ala. 371, 375–76, 58 So. 986, 988 (1912):

> .... if process, either civil or criminal, is willfully made use of for a purpose not justified by law, this is abuse for which an [abuse of process] action will lie.'"(quoting *Brown v. Master,* 104 Ala. 451, 462–63, 16 So. 443, 446–47 (1894)).

*Id.*  After *Dickerson,* the Alabama Supreme Court stated, in *Clikos v. Long,* 231 Ala.

424, 428, 165 So. 394, 397 (1936), that an abuse of process action consisted of two

elements: "'First the existence of an ulterior purpose, and, second, an act in the use

of process not proper in the regular prosecution of the proceedings.'" (Quoting T.

Cooley, *Cooley on Torts* § 131, at 437 (4th ed. 1932)).

The Court in *Warwick Development Co. v. GV Corp.,* 469 So.2d 1270, 1274

(Ala.1985) indicated that Defendant was liable for abuse of process, even though he

had probable cause for initiating the process, because the "abuse of process rests on

---

[14] Doc. 48 at 21 ¶25, 28; Doc. 48 at 20 ¶23

the wrongful use of the process after it has been issued." Further, the Court in *Warwick* held that "[a]n abuse of process action 'presupposes an originally valid and regular process, duly and properly issued, and the validity of the process is not a defense to an action for its abuse.'" *Id.* at 1274.

"'To be remedial, the abuse of process must have been *willful* and for an unlawful purpose.'" *Clikos,* 231 Ala. at 428, 165 So. at 398 (emphasis added) (quoting 50 C.J. *Process* § 378, at 616 (1930)); *see* 72 C.J.S. *Process* § 109 (1987). The Court in *Drill Parts & Serv. Co.,* 619 So. 2d 1280 (Ala. 1993) held that "Because the element of malice requires the Plaintiff to show willful conduct on the defendant's part, to establish malice[15] in this case, the Plaintiffs must show that the Defendants willfully caused a criminal search warrant to issue for the wrongful purpose of obtaining discovery for a civil action against the Plaintiffs." Similarly, in the instant case, Plaintiffs/Counter-Defendants initiated the judicial process when they provided information to Tuscaloosa Police Department (TPD) which caused an investigation and the issuance of search warrants,[16] the results of which Plaintiffs/Counter-Defendants later subpoenaed in the instant case.

---

[15] "There need be no personal ill will, hate, desire for revenge, or other base and malignant passion. Whatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if it be at the same time wrong and unlawful within the knowledge of the actor, is in legal contemplation maliciously done." *Delchamps, Inc. v. Bryant,* 738 So. 2d 824, 833 (Ala. 1999).

[16] Signed by the magistrate on June, 21, 2023.

Thereafter, Plaintiffs/Counter-Defendants began spoliating evidence during the investigation and likely during the instant litigation.

Of note, charges were not brought because, although Plaintiffs/Counter-Defendants alleged they were able to identify *themselves* in the videos that the police obtained by warrant from Onlyfans and manyvids, TPD's investigation ultimately concluded, "**They were *not clearly identifiable* in the video[s], nor were their names used on the websites that hosted the consent [sic].... Since the women in the videos are *not clearly identifiable*, charges cannot be brought against Bryant for distribution of a private image.**" (emphasis added).[17]

Defendant/Counter-Plaintiff argues that Plaintiffs/Counter-Defendants maliciously caused the investigations to commence and search warrants to issue for an ulterior purpose—namely, to harass and harm Defendant/Counter-Plaintiff rather than seek legitimate redress in filing this litigation and to spoliate evidence while obtaining evidence from TPD for the instant litigation.[18]

Defendant/Counter-Plaintiff further alleges that Plaintiffs/Counter-Defendants engaged in improper acts beyond mere filing, including disseminating false statements about the lawsuit, *during* the lawsuit, to third parties to damage his reputation. These allegations plausibly demonstrate an abuse of process.

---

[17] See TPD Incident report #: 230613068, Supplemental Narrative.
[18] "So I'm gonna delete my comments and lay low." BRYANT 000027. There are other examples of spoliation of evidence by Plaintiffs/Counter-Defendants that are included in Defendant/Counter-Plaintiff's production.

Thus, Plaintiffs/Counter-Defendants' Motion to Dismiss is without merit and due to be denied.

### c.  Count III – Outrage/Intentional Infliction of Emotional Distress

The tort of outrage (IIED) is reserved for extreme and outrageous conduct that exceeds all bounds of decency. Under Alabama law, to prevail on such a claim, Plaintiff must establish intentional or reckless conduct that was "extreme and outrageous" and "caused emotional distress so severe that no reasonable person could be expected to endure it." *Wilson v. Univ. of Ala. Health Servs. Found., P.C., 266 So. 3d 674, 676 (Ala. 2017)*. "The conduct complained of must be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 676–77 (quotation marks omitted*)*.

Plaintiffs/Counter-Defendants argue that their actions do not meet this standard, but Defendant/Counter-Plaintiff has alleged conduct that goes beyond mere insults or offensive statements. Plaintiffs/Counter-Defendants orchestrated a targeted harassment campaign against Defendant/Counter-Plaintiff, making false and defamatory statements, seeking to ostracize him from his community, labeling him a felon, and intentionally causing severe emotional distress. Such conduct, when viewed in the light most favorable to Defendant/Counter-Plaintiff, supports a claim for intentional infliction of emotional distress.

16

As in this case, an IIED claim should survive beyond the motion to dismiss stage when it is conceivable that a party would be able to show that the claim's elements[19] are met. *Rice v. United Ins. Co.*, 465 So. 2d 1100, 1102 (Ala. 1984) (finding a conceivable claim for IIED existed against Plaintiff's supervisor based on Plaintiff's allegations that the supervisor, upon learning of Plaintiff's pregnancy, engaged in a pattern of activity involving multiple people that the supervisor was likely to have known would cause serious emotional distress).

Likewise, Alabama courts have recognized conduct as extreme and outrageous when it involved knowingly taking advantage of a party's emotional vulnerability, as in the case at bar. *See O'Rear v. B.H.*, 69 So. 3d 106, 119 (Ala. 2011), *abrogated on other grounds, Ex parte Vanderwall*, 201 So. 3d 525 (Ala. 2015). In *O'Rear*, the Court relied on the trial court's summation of facts, which highlighted Defendant's awareness of Plaintiff's emotional vulnerability and Defendant's misuse of this vulnerability for personal gratification through a pattern of activity likely to cause emotional distress. *Id.* In holding that Defendant's behavior was both extreme and outrageous, the Court reasoned that Defendant, through his actions, "profoundly impaired [Plaintiff's] ability to live a normal life", as in the instant case. *Id.* Similarly, Alabama courts have recognized a viable IIED claim

---

[19] The four elements for a tort of outrage claim are "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) … the distress was severe." *Chaney v. Ala. West-AL, LLC*, 22 So. 3d 488, 498 (Ala. Civ. App. 2008) (quoting *Harris v. McDavid*, 553 So. 2d 567, 569-70).

when a party's conduct invoked fear, negative emotions, and distrust. *See Harrelson v. R.J.*, 882 So. 2d 317 (Ala. 2003). There is no question that Plaintiffs/Counter-Defendants' defamatory statements have invoked fear, negative emotional turmoil, and distrust—profoundly impairing, and continuing to impair, Defendant/Counter-Plaintiff's ability to lead a normal life. The Court should have little difficulty finding that the allegations in the counterclaim would, if proved true, satisfy the requirements of Alabama law.

Therefore, Plaintiffs/Counter-Defendants' Motion to dismiss is baseless and should be denied.

### d. Count V – Civil Conspiracy

In order to constitute a conspiracy, "Plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." *First Bank of Childersburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996) Plaintiffs/Counter-Defendants' argument that Defendant/Counter-Plaintiff failed to allege a meeting of the minds, or an underlying wrongful act is misplaced. Doc. 52 at 10, 11. Citing no authority, Plaintiffs/Counter-Defendants also contend statements "by one or more Plaintiffs" cannot amount to libel, one of the underlying wrongful acts here. These arguments are without merit.

Defendant/Counter-Plaintiff has specifically alleged that Plaintiffs/Counter-Defendants conspired to defame and harm him through a coordinated campaign,

using social media and other means to spread false information. Plaintiffs/Counter-Defendants even have a text message group to effectuate the conspiracy. Indeed, discovery is necessary to determine the extent of the conspiracy.



[20]

Moreover, a counterclaim "should not be dismissed for failure to state claim unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dempsey v. Denman*, 442 So. 2d 63, 65 (Ala. 1983). Defendant/Counter-Plaintiff has satisfied this standard.

In the instant case, when viewed in the light most favorable to Defendant/Counter-Plaintiff, especially at the pleadings stage, the facts pleaded by Defendant/Counter-Plaintiff could lead a factfinder to conclude that Plaintiffs/Counter-Defendants participated in and are liable for a civil conspiracy. Thus, Defendant/Counter-Plaintiff has met the notice pleading requirements, and the Motion to Dismiss is due to be denied.

---

[20] BRYANT 000030

### e.  Count VI – Spoliation

Defendant/Counter-Plaintiff acknowledges that Alabama does not recognize spoliation as an independent cause of action and voluntarily withdraws this count. However, Defendant/Counter-Plaintiff reserves the right to seek appropriate remedies related to Plaintiffs/Counter-Defendants' destruction and alteration of evidence relevant to this case.

## V.    CONCLUSION

Plaintiffs/Counter-Defendant have failed to establish that dismissal is warranted. Therefore, Plaintiffs/Counter-Defendants' Motion to Dismiss is due to be denied. Defendant/Counter-Plaintiff has adequately pled each of his counterclaims and should be allowed to proceed with discovery to further substantiate his claims.

**WHEREFORE, PREMISES CONSIDERED**, and for good cause shown, Defendant/Counter-Plaintiff respectfully requests that this Honorable Court enter an Order denying Plaintiffs/Counter-Defendants' Motion to Dismiss.

Dated: April 3, 2025

<div style="margin-left:40%">

Respectfully submitted,

*/s/J. Thomas Burgess* _____
J. Thomas Burgess (ASB#: 0554-S78J)
Scott A. Holmes (ASB#: 8908-S78H)
Erin M. Agricola (ASB#: 4496-I30A)
*Attorneys for Defendant/Counter-Plaintiff,*
*Errol Gregory Bryant*

</div>

20

**OF COUNSEL:**
**BURGESS HOLMES LLC**
3618 Clairmont Avenue
Birmingham, Alabama 35222
Telephone: (205) 870-8611
Fax: (205) 870-8688
tburgess@burgessholmes.com
sholmes@burgessholmes.com
eagricola@burgessholmes.com

*/s/Jason L. Wollitz*_____
Jason L. Wollitz
1823 Third Avenue North
Bessemer, Alabama 35020
(205) 541-6033
*Attorney for Defendant/Counter-Plaintiff,*
*Errol Gregory Bryant*

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing on all attorneys of record, via the CM/ECF electronic filing system on April 3, 2025:

Yuri R. Linetsky (ASB#: 3088-B20W)
Ricky T. Chambless, Law Student Intern (ASB#: 5879-S77R)
Laina M. Henry, Law Student Intern
Laura Alice Hillhouse, Law Student Intern
The University of Alabama School of Law
Civil Law Clinic
Box 870392
Tuscaloosa, Alabama 35487-0392
Telephone: 205.348.4960
Facsimile: 205.348.6851
Email: ylinetsky@law.ua.edu
　　　rchambless@law.ua.edu
　　　laina.henry@law.ua.edu
　　　lauraalice.hillhouse@law.ua.edu
*Attorney and Law Student Interns for Plaintiffs/Counter-Defendants*

*/s/J. Thomas Burgess, Jr.*
OF COUNSEL

21