IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| Z.P., et al., | ] |
| Plaintiffs, | ] |
| v. | ] 7:24-cv-151-ACA |
| ERROL GREGORY BRYANT, | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

Plaintiffs-Counterclaim Defendants Z.P., A.W., G.C., and M.L., filed suit against Defendant-Counterclaim Plaintiff Errol Gregory Bryant, alleging that he disclosed intimate visual depictions of them without their consent or knowledge. (Doc. 38). Mr. Bryant counterclaims, alleging that he and each of the plaintiffs consensually recorded sexually explicit videos, but after several of the plaintiffs learned of his relationships with other women, they began a campaign to ruin his reputation by sending text messages and posting on websites about him. (Doc. 48 at 17–23 ¶¶ 1–35). He asserts claims of libel ("Counterclaim One"), abuse of process ("Counterclaim Two"), intentional infliction of emotional distress ("Counterclaim Three"), false light invasion of privacy ("Counterclaim Four"), civil conspiracy ("Counterclaim Five"), and spoliation ("Counterclaim Six"). (Doc. 48 at 23–28 ¶¶ 36–67).

Plaintiffs move to dismiss on the grounds that the counterclaim is a shotgun pleading and, if it is not, Counterclaims One, Two, Three, Five, and Six fail to state a claim. (Doc. 52). The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion to dismiss. Because Counterclaim One states a claim, the court **WILL DENY** the motion to dismiss that claim. The court finds that Counterclaim Two, Counterclaim Three, and the part of Counterclaim Five that depends on Counterclaim Two fail to state a claim, so the court **WILL GRANT** the motion to dismiss those claims **WITHOUT PREJUDICE**. And the court **WILL GRANT** the motion to dismiss Counterclaim Six **WITH PREJUDICE** and without further discussion because Mr. Bryant withdraws that claim in his briefing. (Doc. 54 at 20). However, because the counterclaim is a shotgun pleading, the court is unable to rule on whether the part of Counterclaim Five that relies on Counterclaim One states a claim. The court therefore **WILL ORDER** Mr. Bryant to replead his counterclaim **on or before May 27, 2025**.

I.     BACKGROUND

In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the counterclaim and construe them in the light most favorable to the counterclaim-plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). However, the court cannot consider allegations outside the counterclaim.

Fed. R. Civ. P. 12(d). Accordingly, the court has disregarded allegations Mr. Bryant made in his brief if those allegations do not also appear in the counterclaim. (*See, e.g.*, doc. 54 at 11, 15, 19).

In 2021, Mr. Bryant began dating Z.P. and A.W. and in 2022, he began dating M.L. and G.C. (Doc. 48 at 17 ¶ 1, 17 ¶ 5, 18 ¶¶ 10–11). When Z.P. and A.W. found out that Mr. Bryant was dating other women, they became angry. (*Id.* at 17 ¶ 6, 17 ¶ 9).

At some point, "[o]ne or more of the Plaintiffs[ ]" sent text messages to someone calling Mr. Bryant an abuser. (*Id.* at 18 ¶ 13). "One or more of the Plaintiffs[ ]" also sent people messages referencing an investigation, saying that Mr. Bryant "has you mind f\*\*\*ked," alleging he has an addiction, and asserting that he would be arrested on multiple unspecified felony charges. (*Id.* at 18 ¶ 14, 20 ¶ 19). "One or more of the Plaintiffs[ ]" posted on a large Facebook group called *Are We Dating the Same Guy? Birmingham/Montgomery/Alabama* that Mr. Bryant is, among other things, sexually and emotionally abusive, a pathological liar, a rapist, and a sex criminal. (Doc. 48 at 19 ¶ 16, 20 ¶ 20, 21 ¶ 26). "One or more of the Plaintiffs[ ]" posted on another social network website that Mr. Bryant is a criminal, abusive, a narcissist, a "sick individual," a "disgusting individual," a "drama ridden perv," and "a loser." (*Id.* at 21 ¶ 27, 21 ¶ 29, 22 ¶¶ 31–32, 22 ¶ 34; *see id.* at 17 n.1). Finally, "[o]ne or more of the Plaintiffs[ ]" also sent text messages to third parties

suggesting that she would be satisfied if Mr. Bryant were sent to jail "or permanently learn[ed] his lesson," attempting to induce them to join the lawsuit for financial "reparations," and stating that once the lawsuit was filed, she would "delete [her] comments and lay low." (*Id.* at 20 ¶¶ 21–23).

Mr. Bryant was never arrested or charged with any crime. (*Id.* at 24 ¶ 41). Plaintiffs ultimately filed suit against Mr. Bryant, alleging that he shared intimate images of them without their consent. (Doc. 38 ¶¶ 1, 17–23, 40–48, 51, 64–65, 69, 74, 76).

## II. DISCUSSION

Plaintiffs seeks dismissal of the counterclaim as a shotgun pleading or, alternatively, dismissal of Counterclaims One, Two, Three, and Five for failure to state a claim. (Doc. 52 at 1). The court will begin with whether any of the counts state a claim before turning to whether the counterclaim is a shotgun pleading.

### 1. Failure to State a Claim

To survive a Rule 12(b)(6) motion, a party must "plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

### *i.   Counterclaim One (Libel)*

In Counterclaim One, Mr. Bryant alleges that Plaintiffs libeled him by publishing false statements about him being investigated criminally and arrested, facing felony charges, being a rapist and abusive, and committing sex crimes and assault. (Doc. 48 ¶¶ 37–41).

In Alabama, a party asserting a claim for libel must establish that (1) the defendant made a "false and defamatory statement concerning the plaintiff"; (2) the defendant communicated that statement to a third party in an unprivileged way; (3) the defendant was at least negligent in making the statement; and (4) the libel was either actionable per se (without having to prove special harm) or actionable per quod (with special harm). *Flickinger v. King*, 385 So. 3d 504, 512 (Ala. 2023); *Bell v. Smith*, 281 So. 3d 1247, 1253 (Ala. 2019). A written statement is actionable per se when "the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime." *Gary v. Crouch*, 867 So. 2d 310, 316 (Ala. 2003).

Plaintiffs contend that Counterclaim One fails to state a claim because (1) Mr. Bryant does not expressly allege that any of the defamatory statements were about him; and (2) Mr. Bryant does not allege the existence of any statements showing special harm. (Doc. 52 at 6–7). The court disagrees with both contentions. First, although Mr. Bryant does not expressly allege that any of the contested

5

statements are about him, the court is required to construe the counterclaim in the light most favorable to him. *See Butler*, 685 F.3d at 1265; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Taken in that light, it is clear that all of the statements he describes are about him. (*See* doc. 48 at 18–20 ¶¶ 14–20, 21 ¶¶ 26–29, 22 ¶¶ 31–33). Second, many of the statements exposed him to public contempt or accused him of criminal activity (*see id.* at 18–19 ¶¶ 13–16, 20 ¶ 20, 21 ¶¶ 26–27, 21 ¶ 29, 22 ¶ 31, 22 ¶ 33), obviating the need for a showing of special harm, *Gary*, 867 So. 2d at 316. Because both of Plaintiffs' arguments fail, the court **WILL DENY** the motion to dismiss Counterclaim One for failure to state a claim.

### ii.    Counterclaim Two (Abuse of Process)

In Counterclaim Two, Mr. Bryant alleges that Plaintiffs engaged in abuse of process by falsely claiming he was abusive, using legal process to obtain monetary compensation, stating that they would delete their comments after filing a lawsuit, and indicating that they filed the lawsuit to harass, intimidate, and create the appearance of wrongdoing. (Doc. 48 at 24–25 ¶¶ 44–45).

An Alabama claim for abuse of process requires a showing of "(1) the existence of an ulterior purpose; (2) the wrongful use of process; and (3) malice." *Seibert v. Stricklen*, __ So. 3d __, 2024 WL 1814532, at *4 (Ala. Apr. 26, 2024) (quotation marks omitted). The second element relates to wrongful actions taken

"*after the issuance of process.*" *Id.* at __, 2024 WL 1814532, at *4 (quotation marks omitted; emphasis in original).

Plaintiffs contend that Counterclaim Two fails to state a claim because Mr. Bryant does not allege that they acted improperly after filing the civil complaint. (Doc. 52 at 7–8). The court agrees. All of Mr. Bryant's allegations relate to Plaintiffs' conduct before they filed this lawsuit. (*See* doc. 48 at 17–23 ¶¶ 1–35). Pre-lawsuit conduct cannot support a claim of abuse of process. *See Seibert*, __ So. 3d at __, 2024 WL 1814532, at *4.

Mr. Bryant argues that Plaintiffs provided information to the Tuscaloosa Police Department that caused an investigation and issuance of search warrants. (Doc. 54 at 14–15). However, the counterclaim contains no allegations about an investigation or issuance of search warrants. (*See* doc. 48 at 17–23 ¶¶ 1–35). And this court cannot consider allegations made in the brief if they do not appear in the pleading. *See* Fed. R. Civ. P. 12(d).

Mr. Bryant also argues that Plaintiffs spoliated evidence during the investigation "and likely during the instant litigation." (Doc. 54 at 15). But again, any conduct from before the filing of the civil lawsuit is irrelevant to this claim. *See Seibert*, __ So. 3d at __, 2024 WL 1814532, at *4. And the only allegation that could be construed to relate to spoliation of evidence during this litigation is that "[o]ne or more of the Plaintiffs[ ] sent text messages to third parties stating that once the civil

7

lawsuit was filed, she was going to 'delete [her] comments and lay low.'" (Doc. 48 at 20 ¶ 22) (quotation marks added). By its terms, that statement was made before the individual filed the lawsuit and indicated something that she might eventually do. (*See id.*). Mr. Bryant does not allege that the individual actually deleted any comments. (*See id.* at 17–23 ¶¶ 1–35). This allegation does not provide "more than a sheer possibility that a [party] has acted unlawfully" and therefore does not satisfy the plausibility standard required under the Federal Rules. *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022). Accordingly, the court **WILL GRANT** the motion to dismiss and **WILL DISMISS** Counterclaim Two **WITHOUT PREJUDICE** for failure to state a claim.

        *iii.*    *Counterclaim Three (Intentional Infliction of Emotional Distress)*

In Counterclaim Three, Mr. Bryant alleges that Plaintiffs intentionally inflicted emotional distress by expressing a desire for him to be harmed, conducting a campaign to harass him, trying to destroy his personal relationships, and attempting to isolate him. (Doc. 48 at 25 ¶ 48).

Under Alabama law, a claim of intentional infliction of emotional distress requires a showing that intentional or reckless conduct was "so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society" and that the conduct "caused emotional distress so severe that no reasonable person could be expected to endure it." *Wilson v. Univ. of*

8

*Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 676–77 (Ala. 2017). Plaintiffs contend that Counterclaim Three does not state a claim because (1) their conduct was not sufficiently extreme and outrageous and (2) Mr. Bryant's allegation about his mental distress is conclusory. (Doc. 52 at 8–10).

The court is not persuaded that, taken as true, Plaintiffs' conduct in repeatedly and publicly accusing Mr. Bryant of being a rapist would not rise to the level of extreme conduct sufficient to support a claim of intentional infliction of emotional distress. *See Wilson*, 266 So. 3d at 676–77. However, the court need not answer that question definitively because, even assuming their conduct does rise to that level, Mr. Bryant alleged no specific facts indicating that he suffered mental distress "so severe that no reasonable person could be expected to endure it." *Wilson*, 266 So. 3d at 676; *see also Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012) (quotation marks omitted); *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 45 (Ala. 1990) (reversing a jury verdict because the plaintiff "failed to demonstrate that [the defendant]'s actions caused him to suffer emotional distress of a degree more severe than a reasonable person could be expected to endure"); (*see* doc. 48 at 17–23 ¶¶ 1–35). Instead, he provides only the conclusory allegation that Plaintiffs' conduct caused him "to suffer severe emotional distress including anxiety, damage to personal relationships, and fear for his reputation." (Doc. 48 at 26 ¶ 51). This court

cannot consider conclusory allegations. *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022).

The counterclaim fails to plead any non-conclusory facts supporting an element of Mr. Bryant's intentional infliction of emotional distress claim. The court therefore **WILL GRANT** the motion to dismiss and **WILL DISMISS** Counterclaim Three **WITHOUT PREJUDICE** for failure to state a claim.

> iv.   *Counterclaim Five (Civil Conspiracy)*

In Counterclaim Five, Mr. Bryant alleges that Plaintiffs conspired to publish false statements about him, send defamatory messages to third parties, and initiate legal proceedings for improper purposes. (Doc. 48 at 27 ¶¶ 58–60). Although the claim is not entirely clear, the court construes it to be a claim that Plaintiffs conspired to libel him and abuse process. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

In Alabama, a claim of civil conspiracy requires proof of "concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000). "[L]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993); *see also Freeman v. Holyfield*, 179 So. 3d 101, 106 (Ala. 2015) ("Conspiracy is not an independent

cause of action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action.") (quotation marks omitted).

Plaintiffs contend that Counterclaim Five does not state a claim because Mr. Bryant has not alleged facts showing (1) an underlying wrong, (2) damages, or (3) concerted action. (Doc. 52 at 10–12).

The court begins with whether Counterclaim Five sets out a valid underlying wrong. The claim seems to be predicated on Counterclaim One (libel) and Counterclaim Two (abuse of process). (*See* doc. 48 at 27 ¶¶ 58–60). The court has determined that Counterclaim One states a claim, but Counterclaim Two does not. Accordingly, to the extent the conspiracy claim rests on a claim of abuse of process, the conspiracy claim fails as a matter of law and the court **WILL GRANT** the motion to dismiss and **WILL DISMISS** Counterclaim Five **WITHOUT PREJUDICE**. But because the court has determined that Counterclaim One states a libel claim, the court will not dismiss Counterclaim Five to the extent it rests on a claim of libel.

The court turns next to the argument about damages. Plaintiffs contend that Counterclaim Five fails because Mr. Bryant has not alleged the damages he suffered. (Doc. 52 at 11–12). But evidence of damages is not an element of a claim of conspiracy. *See Luck*, 763 So. 2d at 247 (holding that a claim of conspiracy requires evidence of concerted action and an underlying wrong). The cases on which

11

Plaintiffs rely do not hold that damages are an element of a conspiracy claim. (*See* doc. 52 at 11–12) (citing *Humphrey v. Terry*, 89 So. 607, 608 (Ala. 1921); *Louisville & N.R. Co. v. Nat'l Park Bank of N.Y.*, 65 So. 1003, 1004 (Ala. 1914)). Instead, they stand for the same proposition discussed above: that a conspiracy claim depends on the existence of an underlying wrong. *See Humphrey*, 89 So. at 608; *Louisville & N.R. Co.*, 65 So. at 1004. The court therefore will not dismiss Counterclaim Five for failure to adequately plead damages.

Plaintiffs' final argument is that Mr. Bryant has not pleaded concerted action by them. (Doc. 52 at 11). The court is unable to rule on that argument because of the shotgun nature of the counterclaim. Mr. Bryant has, effectively, pleaded that every plaintiff sent every text message, direct message, and website post. (Doc. 48 at 18–23 ¶¶ 13–35). Given the realities of how text messaging and website posting work, this is not a plausible claim. *See Ashcroft*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (cleaned up). Moreover, as the court will explain below, Mr. Bryant's reason for failing to identify which plaintiffs took which actions is not

persuasive. Accordingly, the court **WILL ORDER** Mr. Bryant to replead his counterclaim.

### 2. Shotgun Pleading

Plaintiffs contend that the court should dismiss the counterclaim as a shotgun pleading because each count incorporates by reference all preceding paragraphs and Mr. Bryant does not specify which plaintiffs are responsible for which acts. (Doc. 52 at 2–5).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." And Federal Rule of Civil Procedure 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." The Eleventh Circuit has explained that pleadings "that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

A shotgun pleading is one that makes it "impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020); *see also Weiland*, 792 F.3d at 1325 (explaining that dismissal of a complaint as a

shotgun pleading "is appropriate where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief") (quotation marks and alteration omitted). The Eleventh Circuit has identified hallmarks of shotgun pleadings, *see Weiland*, 792 F.3d at 1321–23, but has also explained that "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *id.* at 1323.

One of the hallmarks of a shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Even omitting the claims that this court has determined must be dismissed, the three remaining claims incorporate by reference all preceding paragraphs. (*See* doc. 48 at 23 ¶ 36, 26 ¶ 52, 27 ¶ 57). Although Mr. Bryant argues that his incorporation of all preceding paragraphs into each count "provides clarity and context rather than confusion," he does not explain how the incorporation does so when many of the factual allegations are relevant only to some claims. (*See* doc. 54 at 6). For example, Mr. Bryant sets out a plethora of statements. (Doc. 48 at 18–23 ¶¶ 13–35). He does not delineate between which are allegedly libelous, which invaded his privacy, and which show the existence of a

conspiracy, instead leaving it to Plaintiffs and the court to determine the relevance of each statement. (*See id.* at 23–27 ¶¶ 36–61).

Another hallmark of a shotgun pleading is "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323. Aside from Mr. Bryant's allegations about the relationships he had with each of the plaintiffs, he does not identify any acts or omissions attributable to any particular plaintiff. (*See* doc. 48 at 17–23 ¶¶ 1–35). Instead, he alleges that each statement was made by "[o]ne or more of the Plaintiffs[ ]." (*Id.* at 18–23 ¶¶ 13–35). In response to Plaintiffs' argument that this makes "it impossible for Plaintiffs to know which allegation pertains to which Plaintiff" (doc. 52 at 4), Mr. Bryant contends that he cannot identify which plaintiffs made which statements because of their "anonymity in both this litigation and many of their defamatory communications." (Doc. 54 at 5). This contention is not persuasive.

First, although Plaintiffs are proceeding anonymously in this litigation, Mr. Bryant knows who they are; both he and Plaintiffs agree that he had relationships with each of them. (*See* doc. 38 ¶¶ 16, 38, 60; doc. 55 ¶¶ 16, 38, 60, *see also* doc. 48 at 17 ¶ 1, 17 ¶ 5, 18 ¶¶ 10–11). Second, although Mr. Bryant alleges that the "defamatory communications" were made anonymously, some of them are text messages that must be tied to a phone number. (*See* doc. 48 at 18 ¶ 13, 20–21

15

¶¶ 21–25, 21 ¶ 28, 22–23 ¶¶ 34–35). Others are posts to websites like Facebook that require a name—even if it not the poster's real name. (*See id.* at 18–19 ¶¶ 15–16, 19 ¶ 18, 20 ¶ 20, 21 ¶ 26). At a minimum, Mr. Bryant can provide the phone numbers associated with text messages or the names associated with website posts or direct messages.

These flaws in the pleading have already substantially burdened the court in evaluating Plaintiffs' motion to dismiss. Most significantly, the court is unable to determine whether Mr. Bryant states a claim for civil conspiracy because the court cannot tell from the counterclaim which plaintiff sent which messages. However, the court disagrees with Plaintiffs that dismissal is the appropriate remedy for the shotgun pleading. (*See* doc. 52 at 2–5). Instead, "[w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).

Accordingly, the court **WILL DENY** the motion to dismiss the counterclaim as a shotgun pleading but **WILL ORDER** Mr. Bryant to replead it in conformity with the Federal Rules of Civil Procedure. *See, e.g.*, *Weiland*, 792 F.3d at 1320.

## III. CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** Plaintiffs' motion to dismiss the counterclaim. The court **WILL DENY** the motion with respect to Counterclaim One. The court **WILL GRANT** the motion and **WILL DISMISS WITHOUT PREJUDICE** Counterclaim Two, Counterclaim Three, and the part of Counterclaim Five that depends on Counterclaim Two. The court **WILL DISMISS** Counterclaim Six **WITH PREJUDICE**. The court **WILL ORDER** Mr. Bryant to replead his complaint, **on or before May 27, 2025**, to correct the shotgun pleading deficiencies identified above.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this May 13, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE