IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Z.P., et. al., ) | |
| ) | |
| Plaintiffs. ) | |
| ) | |
| vs. ) | |
| ) CASE NO. 7:24-CV-00151-ACA | |
| ERROL GREGORY BRYANT, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS/COUNTER-DEFENDANTS' ANSWER TO DEFENDANT'S AMENDED COUNTERCLAIM – COUNT I (LIBEL)**

Plaintiffs/Counter-Defendants Z.P., A.W., M.L., and G.C., submit this Answer in response to Count I (Libel) of Defendant's Amended Counterclaim. Plaintiffs/Counter-Defendants expressly preserve all defenses and objections to Counts II through V, which remain the subject of their pending motion to dismiss.

**ANSWERS TO FACTUAL ALLEGATIONS**

I.  **Plaintiff's Factual Allegations Regarding Z.P.**

1. Plaintiff/Counter-Defendant Z.P. admits that she met Defendant/Counter-Plaintiff via FetLife and that they began a sexual relationship in or around June 2021. Z.P. denies that the relationship was limited to sex, and avers

that she and Defendant communicated extensively via FaceTime, phone calls, and text messages prior to meeting and throughout the relationship.

2. Deny. The relationship was not "primarily sexual." Z.P. avers that the parties went on multiple dates (including outings to WingStop, Mugshots, and Kobe with Defendant's son), discussed future plans such as travel and bowling, and interacted in ways consistent with dating beyond sexual encounters. Z.P. also denies that any intimate recordings were made on her phone.

3. Deny. Z.P. denies posting any intimate videos of herself with Defendant/Counter-Plaintiff on FetLife and denies ever having videos on her account. Z.P. states she is only aware of one photograph and disputes the characterization of the site interface, which she did not use as a paid member and therefore lacked access to many of its features.

4. Deny. Z.P. denies consenting to Defendant/Counter-Plaintiff posting any videos, denies being "tagged" in any such content, and denies that she "liked" or otherwise approved such posts.

5. Deny.

6. Deny.

7. Deny.

8. Z.P. admits she made certain statements about Defendant to others, but denies that they were false or malicious. To the extent this paragraph characterizes her intent or the veracity of her allegations, it is Denied.

9. Deny. Z.P. sent a single message to the mother of Defendant's child for purposes of service of process. She denies stalking or harassing Defendant or his family.

10. Deny.

11. Z.P. admits that she sent some of the quoted messages to Nicki Myer. Z.P. lacks sufficient knowledge to admit or deny the accuracy of the quotation attributed to Nicki Myer and therefore denies that portion.

12. Deny.

13. Deny.

14. Deny.

15. Deny.

16. Deny. Z.P. denies that Defendant has suffered the level of harm alleged. On information and belief, Defendant has continued to travel, post sexually explicit content to online platforms such as FetLife, and maintain an active social presence throughout the pendency of this litigation.

## II. Plaintiff's Factual Allegations Regarding A.W.

17. Admit.

18. Deny.

19. Deny.

20. Deny.

21. Deny.

22. Deny.

23. Deny.

24. Deny.

25. Deny.

26. Deny.

27. Deny.

28. Deny.

29. Deny.

## III. Plaintiff's Factual Allegations Regarding M.L.

30. Admit.

31. Admit.

32. Deny. M.L. states that Defendant was the sole party who recorded any videos, and the recordings were done exclusively on his device, not hers.

33. M.L. lacks sufficient knowledge to admit or deny the allegations in Paragraph 33 and therefore denies the same.

34. Admit.

35. Deny. M.L. avers that Erik (her then-partner) did not have access to her phone.

36. Deny.

37. Deny.

38. Deny. M.L. states that she and Z.P. agreed to pursue civil litigation; there was no plan to harass or defame Defendant.

39. Deny.

40. M.L. lacks sufficient information to admit or deny the allegations in Paragraph 40 and therefore denies the same.

41. M.L. lacks sufficient information to admit or deny the allegations in Paragraph 41 and therefore denies the same.

42. M.L. lacks sufficient information to admit or deny the allegations in Paragraph 42 and therefore denies the same.

## IV. Plaintiff's Factual Allegations Regarding G.C.

43.     G.C. admits that she met Defendant on FetLife in or around October 2022 and that they engaged in a non-exclusive sexual relationship. G.C. lacks sufficient knowledge to admit or deny the characterization regarding "multiple married men" and therefore denies that portion of the allegation.

44.     G.C. admits that sexually explicit content involving her and Defendant was recorded and that she consented to the content being posted on FetLife. G.C. denies consenting to posting on any other sites or platforms, particularly where the content may have been monetized.

45.     Deny.

46.     Deny. G.C. does not recall making the alleged statement and cannot verify its authenticity or context.

47.     Deny.

48.     Deny.

49.     Deny.

50.     Deny.

## **ANSWERS TO FACTS SPECIFIC TO ONE OR MORE PLAINTIFFS/COUNTER-DEFENDANTS/COUNTER-DEFENDANTS**

51. Deny.

52. Deny.

53. Admit that the Tuscaloosa Police Department issued warrants to certain social media platforms. Plaintiffs deny any reckless, negligent, willful, malicious, or wanton conduct.

54. Deny. Plaintiffs

55. Plaintiffs deny acting in concert or maliciously posting anonymous defamatory statements about Defendant. Plaintiff Z.P. admits to making certain statements in the Facebook group referenced, as alleged in the original Complaint, but denies that the statements were false or defamatory.

56. Admit in part. Plaintiffs admit the District Attorney declined to prosecute. Plaintiffs deny that they misidentified themselves.

57. Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations and therefore deny the same.

58. Deny. Plaintiffs deny awareness of Defendant's alleged hacking or DMCA filing and deny acting recklessly, negligently, willfully, maliciously, or wantonly.

59. Admit in part. Plaintiffs admit a group message existed, but deny that it was created for a scheme. Plaintiffs affirm it was used to stay in contact regarding allegations of sexual misconduct.

60. Admit.

61. Deny. Plaintiffs deny that any Plaintiff created or used a "burner" account in the manner alleged. Plaintiffs further deny acting in concert or posting anonymous content alongside identifiable comments. The scenario described is factually inaccurate and technologically implausible.

62. Deny. Plaintiffs deny the existence of any coordinated scheme to harass or defame Defendant. While Plaintiffs acknowledge that certain individuals used identifiable screen names (such as "testdrive," "youdidnt," and "Gigi") in online platforms, the quoted language and references to a "sniff out" effort are taken out of context. The discussion occurred in reference to suspicious activity on the Feeld app, where Defendant appeared to be using another person's photos and information. Plaintiffs deny any intent to falsely accuse or harass Defendant.

63. Deny. Plaintiffs deny acting in concert or undertaking any coordinated effort against Defendant. To the extent any Plaintiff posted individually about their own experiences, such posts reflected personal opinion or first-hand information and were not part of any collective plan to defame, harass, or intimidate Defendant.

64. Deny. Plaintiffs deny that this litigation was filed for monetary gain and deny that the subpoena was intended to bolster false allegations, as the allegations are not false.

65. Deny.

66. Deny.

67. Deny.

68. Deny. Plaintiffs deny that they, or anyone acting in concert with them, anonymously harassed third parties in an effort to coerce participation in the Tuscaloosa Police Department investigation or the instant lawsuit. Plaintiffs specifically deny making or authorizing the statements quoted in Paragraph 68. On information and belief, these statements were not authored by any Plaintiff, and the Counterclaim misattributes them. Plaintiffs further deny engaging in any conduct amounting to harassment.

69. Admit in part. One Plaintiff made statements to third parties describing Defendant as emotionally and sexually abusive, based on her personal experience. Plaintiffs deny acting in concert and assert that the statements made were truthful and not defamatory.

70. Admit in part. One Plaintiff made several of the statements referenced in Paragraph 70, including that Defendant "would be" arrested, which was based on

9

information provided by the investigating officer. Plaintiffs deny that any of the statements made were false or defamatory, and deny acting in concert or with intent to libel Defendant.

71. Deny. Plaintiffs deny acting in concert or with the intent to libel Defendant. One Plaintiff acknowledges posting Defendant's photograph in connection with statements based on her personal experiences, but denies that the statements were false or defamatory. Furthermore, had there been intent to defame, the posts could have been made on broader and more public platforms. For example, said Plaintiff's Instagram account has a reach exceeding that of the group referenced in the Counterclaim.

72. Deny. Plaintiffs assert Defendant continues to produce and share adult content and maintains an active presence in relevant communities.

73. Deny. Plaintiffs deny that any of their actions caused Defendant to suffer emotional distress. Any distress he alleges stems from his own conduct and the natural consequences of being held accountable through legal process, not from any false or defamatory acts by Plaintiffs.

74. Deny. Plaintiffs deny that any alleged misconduct disrupted Defendant's daily life or relationships. To the extent Defendant has withdrawn from

social interaction or experienced any lifestyle changes, such issues are personal in nature and unrelated to Plaintiffs' actions or statements.

75. Deny. Plaintiffs deny responsibility for any of the alleged physical or emotional symptoms described by Defendant. Plaintiffs further deny that they engaged in any conduct that could reasonably cause such harm, and assert that Defendant has presented no medical or factual basis to link those conditions to any act by any Plaintiff.

## ANSWERS TO COUNT 1 – LIBEL

76. Deny.

77. Deny.

78. Deny.

79. Deny.

80. Deny.

81. Deny in part. Plaintiffs admit that an investigation was initiated by the Tuscaloosa Police Department but deny that the absence of charges renders their statements false. The investigation did not proceed to criminal prosecution due to evidentiary limitations, not because the allegations lacked merit. Plaintiffs further deny that any statements made in reference to the investigation were defamatory.

82. Deny.

## **AFFIRMATIVE AND OTHER DEFENSES**

83. Truth and Substantial Truth: Any statements made by Plaintiffs were true or substantially true.

84. Opinion and Rhetorical Hyperbole: The alleged defamatory statements, if made, were statements of opinion or rhetorical hyperbole and are not actionable as libel.

85. Failure to State a Claim: Defendant fails to identify any specific false and defamatory statements with sufficient particularity.

86. Litigation Privilege: Any communications made by Plaintiffs in the course of this litigation are privileged and cannot form the basis of a defamation claim.

87. Lack of Defamatory Meaning: The alleged statements, even if made, do not carry a defamatory meaning when viewed in context by a reasonable person and are therefore not actionable as libel under Alabama law.

88. No Actual Malice: To the extent Defendant is considered a limited-purpose public figure, Plaintiffs deny that any statements were made with knowledge of their falsity or with reckless disregard for the truth.

89. Qualified Privilege: Any statements made by Plaintiffs were made under circumstances giving rise to a qualified privilege, including statements made in good faith for purposes of warning others or in connection with the pursuit or defense of legal claims.

90. Failure to Mitigate Damages: Defendant failed to mitigate any alleged harm. Despite claiming reputational and emotional injury, he has continued to actively engage in the adult content community, publish explicit material, and promote his own image and content.

91. Intervening and Self-Inflicted Harm: Any harm suffered by Defendant was caused by his own actions or by intervening causes unrelated to any conduct by Plaintiffs.

92. Commercial Benefit from Alleged Conduct: Defendant has derived financial and reputational benefit from the same explicit content and statements that form the basis of his defamation claims. As such, any alleged damages are negated or offset by the commercial value he extracted from the controversy.

Respectfully submitted,

/s/ Yuri R. Linetsky
ASB-3088-B20W

/s/ Ricky T. Chambless
ASB-5879-S77R

CIVIL LAW CLINIC
THE UNIVERSITY OF ALABAMA
SCHOOL OF LAW
Box 870392
Tuscaloosa, Alabama 35487-0392
Telephone: 205.348.4960
Facsimile: 205.348.6851
Email: ylinetsky@law.ua.edu
        rchambless@law.ua.edu

Attorneys for Plaintiffs/Counter-Defendants
Z.P., A.W., G.C., & M.L.

## CERTIFICATE OF SERVICE

A copy of this document has been served, on the date of filing, by operation of the CM/ECF system to all attorneys for Defendant Errol Gregory Bryant.

/s/ Yuri R. Linetsky