FILED

2025 Dec-22  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **Z.P., A.W., G.C., M.L.,** | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 7:24-CV-00151-ACA** |
| | ) | |
| **ERROL GREGORY BRYANT,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |
| | ) | |

---

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANT/COUNTER-PLAINTIFF'S MOTION TO VACATE
## THE COURT'S ORDERS GRANTING PLAINTIFFS/COUNTER-DEFENDANTS'
## MOTIONS TO PROCEED PSEUDONONYMOUSLY

---

## <u>TABLE OF CONTENTS</u>

I.    LEGAL ARGUMENT ................................................................................... 1

  a.    The Anonymity Provisions of 15 U.S.C. § 6851(b)(3)(B) Are
        Discretionary. ................................................................................... 1

  b.    The Law Does Not Permit Plaintiffs To Silence The Echo of the
        Bell They Themselves Sounded. ....................................................... 1

  c.    Preventing Disclosure Of Plaintiffs' Identities Is Not The Basis
        Of This Lawsuit. ............................................................................... 6

  d.    Plaintiffs' Allegations Do Not Fall Within Any "Exceptional
        Circumstances" Which Warrant Anonymity. ..................................... 8

        1.    *This Case Does Not Fall Within Matters of a Highly
              Sensitive/Personal Nature or Utmost Intimacy.* ..................... 9

        2.    *Plaintiffs Have Not Alleged Any Fear of Physical Harm.* ...... 12

  e.    Plaintiffs Have Not Provided Any Evidence Which Would
        Outweigh Judicial Openness. ........................................................... 12

        1.    *Plaintiffs Do Not Claim Fear of Severe Harm In Their
              Motions.* ................................................................................. 13

        2.    *Plaintiffs' Claims of Reputational and Professional Harm
              Are Speculative and Unreasonable.* ...................................... 15

  f.    Even If Plaintiffs Have A Need For Anonymity, It Is
        Outweighed By Fundamental Unfairness/Substantial Prejudice
        to Bryant And The Public's Interest In Knowing Plaintiffs'
        Identities. ......................................................................................... 16

II.   CONCLUSION ..................................................................................... 23

## I.    LEGAL ARGUMENT

### a.    The Anonymity Provisions of 15 U.S.C. § 6851(b)(3)(B) Are Discretionary.

Citing the statute's "preservation of anonymity,"[1] Plaintiffs assert that § 6851(b)(3)(B) compels anonymity, claiming it demonstrates a congressional intent and "the necessity of"[2] anonymity. It does not. While the statute *allows* anonymity, at the Court's discretion, ("the Court may"),[3]—which serves as confirmation that pseudonymity is not guaranteed and no right to file an action anonymously is created—it does not function as a blanket mandate, nor does it circumvent prior, long-standing precedent outlining the tests for granting pseudonymity. Congress could have expressly created a right to file pseudonymously under this statute but did not. And a close review of the Congressional record does not appear to set out any special classification under this statute which would serve to shield litigants from the narrowly defined, rare circumstances under which pseudonymity is justified.

This case does not warrant pseudonymity. That 15 U.S.C. § 6851 provides that the Court "may" grant injunctive relief in the form of a pseudonym does not alter this analysis.

### b.    The Law Does Not Permit Plaintiffs To Silence The Echo of the Bell They Themselves Sounded.

Plaintiffs' own conduct is fundamentally at odds with and fatally undermines any claimed need for secrecy. As exhibited in their own Amended Complaint,[4] Plaintiffs have voluntarily

---

[1] Doc. 2 at p.4; Doc. 39 at p. 4.

[2] *Id.*

[3] *Id.*

[4] "…made it her mission to alert every other woman Bryant had victimized." Doc. 38 at ¶ 1; "Seeking to protect other women from Bryant and his scheme, Z.P. posted multiple comments explaining that Bryant had cheated on her and shared intimate visual depictions of her without her consent." Doc. 38 at ¶34; "Z.P. sent these women links to the various social media and pornography websites Bryant used to distribute intimate visual depictions of his sexual partners." Doc. 38 at ¶36; "In May or June 2023, A.W. learned of Bryant's misconduct during his relationship with Z.P. when she saw Z.P.'s comments about Bryant in the Facebook group." Doc. 38 at ¶49; "…A.W. contacted Z.P. through Facebook Messenger for more information. Z.P. sent A.W. links to the websites on which Bryant had distributed intimate visual depictions of Z.P. and other women." Doc. 38 at ¶50; "… Z.R[sic]. reached out to G.C. after identifying her on Fetlife. Z.R.[sic] explained Bryant's pattern of behavior against other women and informed her of the file Inv. Lovejoy had begun which contained videos of other victims." Doc. 38 at ¶67; "In January 2024, M.L. learned of Bryant's misconduct with Z.P., A.W., and other women when she saw one of Z.P.'s warning posts about Bryant in the Facebook group." Doc. 38 at ¶75; M.L. contacted Z.P. through Facebook Messenger and informed Z.P. that Bryant had sent videos of himself and M.L. through Snapchat. Z.P. suggested M.L. contact Inv. Lovejoy." Doc. 38 at

publicized the underlying events and their involvement through their own social-media postings and commentary in the community, thereby placing their identity, the underlying intimate depictions, and the allegations squarely into the public domain. The recognized circumstances permitting anonymity are not intended to protect such inequity or shield what is already public. For example, in denying Plaintiff's motion for anonymity, the Court in *Doe v. N. Carolina Cent. Univ.*, No. 1:98CV01095, 1999 WL 1939248, (M.D.N.C. Apr. 15, 1999), found that Plaintiff's media publication of the names of and allegations against Defendants exacerbated the unfairness wrought by anonymity. *Id. see also, Doe v. FBI*, 218 F.R.D. 256 (D. Colo. 2003) (denying anonymity when the identifying information had already been widely spread on the Internet). Prior disclosure to the public of a Plaintiff's identity effectively nullifies the shield of privacy provided by proceeding anonymously. *See, e.g., Shakur*, 164 F.R.D. 359; *Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, 1997 WL 171011 (S.D.N.Y. Apr. 10, 1997).

Here also, the equities do not support anonymity. Having elected to speak publicly about the very matter they sought to shield, Plaintiffs cannot credibly claim that disclosure in this proceeding will expose them to new harm. By their own voluntary actions, Plaintiffs have thwarted any presumption of anonymity. As discussed above, the law does not permit selective secrecy when both the law and Plaintiffs' own actions favor openness. *see, Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) (discussing the factors affecting the weight of the privacy interest involved which includes the question of whether the Plaintiffs identity has, thus far, been kept

---

¶77; "Since Z.P. exposed Bryant's scheme in the Facebook group…" Doc. 38 at ¶82; "Plaintiff Z.P. admits to making certain statements in the Facebook group referenced, as alleged in the original Complaint…." Doc. 67 at ¶55; "Plaintiff acknowledges posting Defendant's photograph in connection with statements based on her personal experiences…." Doc. 67 at ¶71; "Plaintiffs Z.P. and A.W. admit making posts about their own personal experiences with Defendant on public forums …Plaintiff Z.P. admits posting Defendant public Fetlife profile picture and first name only to a public Facebook forum…Plaintiffs Z.P. and A.W. admit making posts about Defendant in public forums…Plaintiffs admit that public forums were used as a means of connecting with each other to discover their similar experiences with Defendant…" Doc. 79 at ¶ 25; "Plaintiffs Z.P. and A.W. admit posting on public forums about Defendant, but such posts were limited only to their own personal experiences with Defendant… Plaintiff Z.P. admits posting Defendant's public Fetlife profile picture and first name only to a public Facebook forum…" Doc. 79 at ¶ 33; *see generally* Doc. 61.

confidential.) (citing *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006)); *see also, Doe v. Trs. of Bos. Univ.,* No. CV 24-10619-FDS, 2024 WL 4700161, at *6 (D. Mass. Nov. 6, 2024) ("pseudonymity will never be justified when the public disclosure that the party seeks to forestall is already a fact."); *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011). Permitting pseudonymity in this context subverts the law's transparency goals and prejudices Bryant's ability to defend against Plaintiffs' claims and litigate his own counterclaims. *see e.g., Doe v. Townes*, No. 19CV8034ALCOTW, 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020) (finding Defendant's knowledge of Plaintiff's identity was not a dispositive factor and that "allowing Plaintiff to proceed anonymously would hamper Defendant's ability to litigate" his counterclaims against Plaintiff for defamation and libel.); *Doe v. Doe*, 649 F. Supp. 3d 136, 142 (E.D.N.C.), *aff'd*, 85 F.4th 206 (4th Cir. 2023) citing *Roe v. Does 1-11*, No. 20-CV-3788-MKB, 2020 WL 6152174, at *6 (E.D.N.Y. Oct 14, 2020) (unpublished) ("The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a Plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault.").

Noting Plaintiff's public accusations naming Defendant, as well as Plaintiff's prior statements to the media regarding the allegations, the Court in *Doe v. Indiana Black Expo, Inc*., 923 F. Supp. 137, 142 (S.D. Ind. 1996) stated, "If the Court allowed Plaintiff to proceed [anonymously, Defendant] would be required to defend itself publicly while Plaintiff could make her accusations from behind a cloak of anonymity." *Id.* The Court found it was "not appropriate for Plaintiff to use her privacy interests as a shelter from which she can safely hurl these accusations without subjecting herself to public scrutiny..." *Id. See, e.g.*, *Shakur*, 164 F.R.D. at 361; *Lindsey v. Dayton-Hudson Corp.* (10th Cir. 1979).

As explained in *Roe v. Bernabei & Wachtel PLLC,* 85 F. Supp. 3d 89 (D.D.C. 2015), where the Plaintiff's name already was publicly associated with the underlying misconduct, the Court denied Plaintiff's motion to proceed under a pseudonym and found that the case was not one of the "rare dispensation[s]" of anonymity. *Id.* Stated more broadly, the law of pseudonymous litigation observes that "[p]roceeding under a pseudonym is the exception, not the rule," and that granting such relief requires specific justification. *Id. see also Strike 3 Holdings, LLC v. Doe*, No. CV 25-3733 (JKS) (MAH), 2025 WL 2080948 (D.N.J. 2025) (examining the extent to which Plaintiff's anonymity has been maintained, a factor which does not support anonymity where the identity of the party seeking confidentiality has not been kept confidential and concluding that this factor weighs in favor of parties who make substantial efforts to maintain anonymity and limit the disclosure of sensitive information to few other people.).

In a strikingly similar case to the instant matter, *Doe v. Weston & Sampson Eng'rs, Inc.*, 743 F. Supp. 3d 751, 763 (D.S.C. 2024), wherein Plaintiff commented on a post in the Facebook group, "Are We Dating the Same Guy?" ("AWDTSG")—a group of approximately 16,700 members, as well as in another regional group of over 40,000 members,[5] the Court found that "Plaintiff herself 'ha[d] not acted to preserve her privacy' because she used her own name and photograph on social media in claiming that [Defendant] sexually assaulted her, thus unmasking her own identity in a public forum."[6] The Court added, "Indeed, social media sites are now regarded as spaces for public discourse, and information posted publicly to social media sites

---

[5] *See, also,* Doc. 61 at ¶ 51, fn. 6. "In fact, according to the Are We Dating The Same Guy? Website, "AWDTSG … is a global safety support community for women, with over 6 million members across 200+ cities … across the USA, Canada, and … over 7 million women worldwide." https://arewedatingthesameguy.com/resources/.

[6] *See, e.g., Margolies v. Rudolph, No.* 21-cv-2447-SJB, 2022 WL 2062460, at *7 (E.D.N.Y. June 6, 2022) (concluding that a private Facebook group with over 14,000 members "has the character of 'a place open to the public,' because it has no meaningful barriers to entry—to join one need only agree to the rules of the group—and its members appear to be free to speak online about any subject openly").

cannot reasonably be expected to be considered private."[7] Moreover, the Court explained that "the very fact that [Defendant] was able to obtain screenshots of Plaintiff's posts demonstrates that information shared within the groups is not truly 'private.'" *Id.*[8] The *Weston* Court went on to note,

> To be sure, victims of sexual assault can benefit from support groups designed to assist in recovery from the trauma they experienced. That said, a Facebook group designed to share "tea" and "red flags" pertaining to potential dating partners is not the same as a support group for survivors of sexual assault. *Plaintiff's lack of discretion in publishing information under her own name about her sexual assault to a large group of individuals in a group that promotes sharing "tea" and "red flags" on potential dating partners without the ability to limit the republication of such information to individuals outside the group belies her argument that she should be permitted to proceed in this action anonymously to protect her privacy.* The Court does not doubt that Plaintiff sincerely wishes to maintain her privacy in this matter, given the seriousness and sensitive nature of her allegations. **However, her conduct outside of this litigation regarding her own publication of this sensitive information is dispositive as to whether she can demonstrate the "exceptional circumstances" needed to overcome the presumption that parties be named in litigation.**

*Id.* at fn. 11. (emphasis added). That Plaintiff presented "no cogent argument for how or why permitting her to proceed anonymously [would] protect her from the risk of retaliation," that the action was not against the government, and that Plaintiff was not a minor, led to the Court's finding that "Plaintiff should not be permitted to make allegations and accusations using her name against [Defendant] in a public forum while at the same time being allowed to proceed in a court action against him seeking damages[9] while hiding behind the protections of anonymity." And most instructive, the Court commented, "[Defendant's] concerns may not have been sufficient to overcome Plaintiff's request for anonymity had she not herself undermined her request to maintain

---

[7] citing, *Packingham v. North Carolina,* 582 U.S. 98, 118, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017) (Alito, J., concurring) (footnote omitted). (…the Supreme Court has suggested that " 'social media' sites are the 21st century equivalent of public streets and parks*." see, e.g., Davison v. Randall,* 912 F.3d 666, 682 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (explaining governmental social media sites "bear the hallmarks of a public forum" by constituting a space for unfettered "public discourse").

[8] See also, *Davis v. HDR Inc.,* 652 F. Supp. 3d 1087, 1097 (D. Ariz. 2023) ("Plaintiff has failed to plausibly allege that her electronic communications posted into the private Facebook groups were not readily accessible by the general public."), *appeal dismissed,* No. 23-15233, 2023 WL 5367499 (9th Cir. May 10, 2023)

[9] Doc. 38 at pp. 18.

her privacy." *Id.* Applying these precedents here reinforces Bryant's Motion that the orders granting Plaintiffs' anonymity be vacated.

### c. Preventing Disclosure Of Plaintiffs' Identities Is Not The Basis Of This Lawsuit.

This is not a case where "the injury litigated against would be incurred as a result of the disclosure of the Plaintiff's identity," at least to such an extent that an exception is warranted. *M.M. v. Zavaras*, 139 F.3d 798 (10th Cir. 1998) (This exception generally applies when "[p]reventing disclosure of [Plaintiff's] identity is . . . the *basis* of [the] lawsuit."); *Raiser v. Church of Jesus Christ of Latter-Day Saints,* 182 F.App'x 810 (10th Cir. 2006). Such suits typically involve a cause of action in which litigants attempt to remove their names from public databases or registries. (*see, e.g., Doe v. Harris* 640 F.3d 972, (9th Cir. 2011) (holding that, in a lawsuit challenging Plaintiff's inclusion on sex offender registry, pseudonymity was justified because "drawing public attention to his status as a sex offender is precisely the consequence that he seeks to avoid by bringing this suit"); *Doe v. Bonta*, No. 22-CV-10-LAB (DEB)) 2022 WL 184652, (S.D.Cal. 2022) (holding that, in a lawsuit alleging that a statute's disclosure requirements for firearms purchases and license records were unlawful, "[p]rotection of the Plaintiffs' identities is at the core of this case," and thus, warranted pseudonymity.) And indeed, Courts reject this "injury litigated against" rationale in libel cases where "[p]reventing disclosure of [Plaintiff's] identity is not the basis of [the] lawsuit," but Plaintiff instead "seeks monetary compensation[10] for a disclosure that has already occurred." *Luo v. Wang,* 71 F.4th 1289 (10th Cir. 2023). Thus, where an alleged injury arising from the disclosure of intimate images has already occurred—as it has here—the case for pseudonymity diminishes.

---

[10] Doc. 38 at pp. 18.

In denying Plaintiff's motion to proceed under a pseudonym, the Court in *Doe v. Maloit*, No. 24-CV-02383-PAB-KAS, 2025 WL 358134 (D. Colo. 2025)[11] was persuaded that "the injury of which Plaintiff complain[ed] ha[d] already occurred"—weighing against pseudonymity. *Id.* The staleness of the disclosure also mattered. *See id.* Per the complaint there, "the photographs were allegedly taken between 2006 and 2012 and posted 'as far back as 2016' before spreading to various websites, along with Plaintiff's personally identifying information." *Id.* (citation omitted). The Court stated that "even though Plaintiff seeks prospective relief,[12] her damages are predominantly retrospective in nature, and the injury she is litigating against is not likely to be incurred because of the disclosure of her identity in this case." *Id.*

Importantly, Plaintiffs in this matter have not named any websites, domain name owners, hackers, or internet users as Defendants in this matter and they do not allege any further dissemination of the subject content; rather, they are suing Bryant for his alleged prior act of posting[13] their identifiable[14] images online and the resulting damage caused. While they ask the Court for injunctive relief,[15] Plaintiffs do not allege that Bryant has continued to disseminate images of Plaintiffs.[16] In fact, Plaintiffs acknowledge that Bryant has removed the alleged images,[17] and he has, by filing a DMCA Complaint.[18] And despite Plaintiffs' claims that the harm they suffered here began in 2021,[19] nowhere in their Complaint do Plaintiffs allege that they have

---

[11] Notably, the court in *Maloit* also addressed 15 U.S.C. § 6851—the court's analysis resulted in a ruling in favor of the Defendant.
[12] Doc. 38 at pp. 18.
[13] 15 U.S.C.A. § 6851(a)(4).
[14] 15 U.S.C.A. § 6851(a)(3).
[15] Doc. 38 at ¶ 3.
[16] Doc. 38 at ¶ 84.
[17] Doc. 38 at ¶¶ 25, 27, 31, 80.
[18] Doc. 61 at ¶¶ 57, 58.
[19] Doc. 38 at ¶ 2.

been subjected to discipline at work, lost any employment opportunities, or suffered any "public condemnation or other retaliation,"[20] during the *three-year period* that followed.[21]

Taking Plaintiffs' allegations as true, the injury of which Plaintiffs complain has already occurred; therefore, the "need for the cloak of anonymity" is not apparent. *See, e.g., Lindsey v. Dayton-Hudson Corp.* (10th Cir. 1979) (affirming denial of leave to proceed pseudonymously where the Plaintiff "had already suffered the worst of the publicity and embarrassment"); *Luo v. Wang*, 71 F.4th 1289 (10th Cir. 2023) (concluding that "the injury [the Plaintiff] litigated against[,] … [the Defendant's previous] alleged defamation and disclosure of her private information—would not be incurred as a result of the disclosure of her identity in this case") (internal quotation marks and modification omitted); *see also, Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996). Thus, even though Plaintiffs seek prospective relief and monetary compensation[22] for disclosure that has already occurred, their damages are predominantly retrospective in nature, and the injury they are litigating against is not likely to be incurred because of the disclosure of their identity in this case. *Maloit,* 2025 WL 358134; *Luo,* 71 F.4th 1289.

### d. Plaintiffs' Allegations Do Not Fall Within Any "Exceptional Circumstances" Which Warrant Anonymity.

It is the exceptional case in which Plaintiffs may proceed under a fictitious name. *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992). In examining the totality of the circumstances, in addition to considerations of physical harm, Courts have also considered whether the Plaintiffs are minors, and whether the party's requested anonymity poses a unique threat of fundamental unfairness to the Defendant. *In re: Chiquita Brands Int'l, Inc.,* 965 F.3d 1238 (11th Cir. 2020); *Sheely*, 781 F. App'x 972 (11th Cir. 2019) (citations omitted); *Doe v. Frank*, 951 F.2d 320, (11th Cir. 1992).

---

[20] Doc. 2 at p. 3-4; Doc. 39 at p. 3-4.
[21] *see generally* Doc. 38.
[22] Doc. 38 at pp. 18.

Plaintiffs are adults,[23] and Courts "'have generally required adult Plaintiffs to proceed in their own name' even when their allegations relate to sexual assault or sexual harassment." *Doe v. Maloit*, 1:24-cv-02383-PAB-KAS, 2025 WL 358134 (D. Colo. Jan. 31, 2025)[24] (quoting *Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1289 (D. Kan. 2017)).[25] Plaintiffs have not alleged any *real* danger or *physical* harm or that the injury litigated against would be incurred; nor have Plaintiffs challenged any governmental activity or claimed any risk of criminal prosecution as a result of the disclosure of their identities.

1. ***This Case Does Not Fall Within Matters of a Highly Sensitive/Personal Nature or Utmost Intimacy.***

In their Motions to proceed under a pseudonym, Plaintiffs contend that this case falls within the "highly sensitive" category solely because of the sexual nature of the subject matter.[26] Plaintiffs are mistaken. see, *Doe v. Regents of Univ. of New Mexico,* No. CV 98-1618, slip op. (D.N.M. 1999)("… none of the cases Doe cites have stretched rule 10's exception to include any and all "allegations of a sexual nature.") Rather, Courts in the Eleventh Circuit have held that "information of the utmost intimacy" applies to cases involving issues such as **abortion, prayer** and **personal religious beliefs**, *see Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001), *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981), as well as "**mental illness,**

---

[23] Doc. 38 ¶¶ 16, 38, 60, 71.

[24] Notably, the court in *Maloit* also addressed 15 U.S.C. § 6851—the court's analysis resulted in a ruling in favor of the Defendant.

[25] *see also, e.g., Doe v. McLellan,* No. CV-205997-GRB-AYS, 2020 WL 7321377 (E.D.N.Y. Dec. 10, 2020); *Doe v. Bd. of Regents of Univ. of New Mexico,* No. CIV 20-1207 JB/JHR, 2021 WL 4034136 (D.N.M. Sept. 4, 2021); *Doe v. Shakur,* 164 F.R.D. 359, 361–62 (S.D.N.Y. 1996); *Doe v. Bell Atl. Bus. Sys. Servs., Inc.,* 162 F.R.D. 418, 422 (D. Mass. 1995); *Doe v. Univ. of Rhode Island*, No. 93-0560B, 1993 WL 667341, at *3 (D.R.I. Dec. 28, 1993); *Doe v. Hallock,* 119 F.R.D. 640, 644 (S.D. Miss. 1987).

[26] Doc. 2 at p. 4; Doc. 39 at p. 4. "Requiring Plaintiffs to proceed under their true names would require Plaintiffs 'to disclose information of the utmost intimacy'—the details of their relationships with Defendant and Defendant's misconduct" as well as information indicating that Plaintiffs "consented to being recorded during sex."; Doc. 2 at p. 3; Doc. 39 at p. 3. "Plaintiffs' case requires Plaintiffs to disclose intimate information about their previous sexual relationships beyond the level a typical case might require."; Doc. 2 at p. 2; Doc. 39 at p. 2. Additionally, Plaintiffs claim the allegations necessitate the "description of the conduct and parts of the body that are depicted in the images Defendant disclosed," as well as the identification of "the websites on which each image was posted, the date of posting, and the profile name under which Defendant made the posts."

**homosexuality,** and **transsexuality**" because "the social stigma attached to the Plaintiff's disclosure was found to be enough to overcome the presumption of openness in court proceedings." *Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020) (quoting *Frank*, 951 F. 2d at 324); and anonymity is typically limited to cases involving matters of "highly sensitive and personal nature," such as **birth control, welfare rights of illegitimate children,** and **AIDS**. *Doe I v. City of Alabaster*, No. 2:12-CV-02466-RDP, 2012 WL 13088882, at *4 (N.D. Ala. Nov. 19, 2012) (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)). The instant case does not involve any of the above matters.

Furthermore, Courts have denied the protection of anonymity in cases where Plaintiffs allege sexual assault, even when revealing the Plaintiff's identity may cause her to "suffer some personal embarrassment." *Doe v. Frank,* 951 F.2d 320, 324 (11th Cir.1992); *see, e.g., Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 371 n. 2 (3d Cir. 2008); ("That a Plaintiff may suffer embarrassment or economic harm is not enough.") The Court in *Doe v. Alabama Dep't of Corr.*, 2025 WL 942750 (M.D. Ala. 2025) held that "the totality of the circumstances weigh[ed] against anonymity … [where] Plaintiff failed to show that his sexual assault … qualified as information of the utmost intimacy... [and that] Courts routinely deny anonymity in sexual assault cases and interpret information of the utmost intimacy narrowly."[27]

---

[27] *See also, Doe v. Del Rio,* 241 F.R.D. 154, 159–62 (S.D.N.Y.2006) (holding that Plaintiffs alleging sexual abuse by police officer could not proceed anonymously); *Doe v. Shakur,* 164 F.R.D. 359, 360–62 (S.D.N.Y.1996) (denying motion by Plaintiff suing hip-hop artist for brutal sexual assault requesting to remain anonymous); *Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011); s*ee also*, *Doe v. Spring Hill Coll.* No. CV 23-00340-JB-N, 2023 WL 8553481, at *1 (S.D. Ala. Dec. 11, 2023), *appeal dismissed*, No. 23-14031-DD, 2024 WL 2884036 (11th Cir. May 3, 2024); *Doe v. Sheely*, 781 F. App'x 972, 974 (11th Cir. Sept. 3, 2019); *Doe v. Megless* (3d Cir. 2011) 654 8 F.3d 404, 408; *Doe v. Trustees of Indiana University* 101 F.4th 485, 491(7th Cir. 2024) ("[W]e have refused to allow Plaintiffs to proceed anonymously merely to avoid embarrassment," including when Plaintiff's "asserted interest lies in protecting his reputation.").

Again, in *Doe v. Maloit*, 1:24-cv-02383-PAB-KAS, 2025 WL 358134 (D. Colo. Jan. 31, 2025), [28] a case not unlike the instant case, noting Plaintiff's decision to identify Defendant by name in her publicly filed Complaint, the Court explained,

> To the extent that Plaintiff's and Defendant's sexual history and engagement with erotic photography are highly sensitive and personal topics, they are sensitive and personal *to both parties involved*. However, Plaintiff has not conducted this litigation as though it involves matters of a highly sensitive and personal nature—instead, she would cloak herself in pseudonymity, and the protections it affords, while publicly lobbing allegations at Defendant by name. The Court does not find that the sensitive or personal nature of the allegations warrants pseudonymity.

*Id.* (emphasis in original); *see also, Shakur*, 164 F.R.D. at 361; *Doe v. Indiana Black Expo, Inc*., 923 F. Supp. 137, 142 (S.D. Ind. 1996).

One Court refused to allow pseudonymity in a case involving BDSM—as is involved in the instant case[29]—reasoning that, though "a voluntary BDSM relationship may reasonably be characterized as 'highly personal,' it is distinguishable from other highly personal matters, e.g., **hereditary health issues**, in that, a voluntary BDSM sexual relationship is a choice. Simply put, ***neither the existence nor the nature of a voluntary sexual relationship, standing alone, is sufficient to warrant sealing a judicial proceeding in whole or in part***. That some potential for embarrassment or criticism may result from Plaintiff's choice to engage in a BDSM relationship does not justify removing litigation materials from public access." *Doe v. Rector & Visitors of George Mason Univ*., 179 F. Supp. 3d 583, 593 (E.D. Va. 2016)(emphasis added).[30] And Courts generally do not allow pseudonymity to prevent disclosure of other, more conventional, sexual or romantic relationships. *Doe v. Berg*, 2016 WL 11597923, at *3 (S.D.N.Y. Feb. 10, 2016); *Doe v.*

---

[28] Notably, the court in *Maloit* also addressed 15 U.S.C. § 6851—the court's analysis resulted in a ruling in favor of the Defendant.

[29] "Defendant/Counter-Plaintiff and Z.P. began having sex in approximately June of 2021 after meeting on FetLife." Doc. 61 at ¶¶ 1; "According to www.fetlife.com, 'FetLife is the world's largest and most popular social network for the BDSM community, Kink community, and Fetish community.'" Doc. 61 at ¶1, fn. 1; Doc. 61 at ¶11 at p.4; Doc. 67 at ¶¶ 3, 43, 44; *see also,* Doc. 61 at ¶ 43.

[30] Another Court refused pseudonymity as to exhibitionism. *A.B.C. v. XYZ Corp*., 282 N.J. Super. 494, 505–06 (App. Div. 1995).

*Bd. Of Regents of Univ. of N.M.,* No. 2021 WL 4034136, at *2 (D.N.M. Sept. 4, 2021) (finding pseudonymity was not justified by the lawsuit's exposing information about a graduate student's "romantic and sexual relationship" with her doctoral advisor).

In its careful review of all the current circumstances of this case in deciding whether the customary practice of disclosing Plaintiffs' identity should yield to the Plaintiff's privacy concerns, this Court should not be persuaded that the subject matter of this lawsuit necessarily justifies Plaintiffs proceeding pseudonymously. *Maloit,* 2025 WL 358134, at *3.

## 2. *Plaintiffs Have Not Alleged Any Fear of Physical Harm.*

In their Motions to proceed under a pseudonym, Plaintiffs do not contend that they are at risk of or fear any physical harm; their asserted interests lie in protecting their reputation. Plaintiffs have alleged no threats of harassment, violence, or any *tangible*, *real* harm. Their concerns— possible negative reactions from employers or colleagues and "public condemnation or other retaliation,"[31]—are speculative, legally insufficient, and not supported with any evidence.

## e. Plaintiffs Have Not Provided Any Evidence Which Would Outweigh Judicial Openness.

A Plaintiff may proceed anonymously only in exceptional circumstances *after* demonstrating a *reasonable* fear of *severe* harm. *Doe I v. City of Alabaster*, No. 2:12-CV-02466-RDP, 2012 WL 13088882, at *4 (N.D. Ala. Nov. 19, 2012) (emphasis added) (quoting *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010)). Without producing evidence of any reasonable fear of severe harm, Plaintiffs fail to substantiate any claims justifying anonymity.

To determine if a litigant's reasonable fear of severe harm outweighs the public's interest in open judicial proceedings, as required to allow litigants to proceed anonymously in a lawsuit, a

---

[31] Doc. 2 at p. 3-4; Doc. 39 at p. 3-4.

Court considers non-exclusive factors including: (1) extent to which the identity of litigant has been kept confidential;[32] (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) magnitude of public interest in maintaining confidentiality of litigant's identity; (4) whether, because of purely legal nature of issues presented or otherwise, there is an atypically weak public interest in knowing litigant's identity; (5) undesirability of an outcome adverse to pseudonymous party and attributable to his refusal to pursue case at price of being publicly identified; (6) whether party seeking to sue pseudonymously has illegitimate ulterior motives; (7) universal level of public interest in access to the identities of litigants; (8) whether, because of subject matter of litigation, the status of litigant as a public figure, or otherwise, there is a particularly strong interest in knowing litigant's identities, beyond public's interest which is normally obtained; and (9) whether opposition to pseudonym by counsel, the public, or the press is illegitimately motivated. Fed. Rules Civ. Proc. Rule 10(a), *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011).

### 1.  *Plaintiffs Do Not Claim Fear of Severe Harm In Their Motions.*

Ordinary reputational or professional concerns, such as "public condemnation or other retaliation,"[33] potential "discipline at work," and job loss,[34] do not constitute "severe harm." Such claims do not support pseudonymous litigation. *Cf. Doe v. Fedcap Rehab. Servs., Inc.,* No. 17-CV8220 (JPO), 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018) ("At bottom, Plaintiff wants what most employment-discrimination Plaintiffs would like: to sue their former employer without future employers knowing about it. But while that desire is understandable, our system of dispute resolution does not allow it."). Thus, "courts mostly refuse to allow pseudonymity aimed at avoiding 'the annoyance and criticism that may attend any litigation,' including 'inability to secure

---

[32] See Section I.b., *supra.*
[33] Doc. 2 at p. 3-4; Doc. 39 at p. 3-4.
[34] Doc. 2 at p. 3-4; Doc. 39 at p. 3-4.

future employment,' 'scrutiny from current or prospective employers,' 'economic harm,' 'economic or professional concerns,' 'reputational harm,' 'blacklisting,' or 'embarrassment and humiliation.'" Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 HASTINGS L.J. 1353, 1420 (July 2022) (collecting cases); *see also, United States ex rel. Little v. Triumph Gear Sys.*, 6 *Inc.,* 870 F.3d 1242(10th Cir. 2017) ("But anonymity 'has not been permitted when only the Plaintiff's economic or professional concerns are involved.'"); *Doe v. Doe,* 85 F.4th 206 (4th Cir. 2023) (rejecting pseudonymity despite allegations that identifying the Plaintiff would cause, among other things, damage to "reputation" and "career opportunities"); *M.M. v. Zavaras*, 139 F.3d 798 (10th Cir. 1998) (explaining that use of anonymity in court proceedings is limited to instances where privacy interests are extremely high … and that *potential economic or professional* harm, alone, do not fall under those categories).

The First Circuit expressly held that reputational harm does not generally suffice to justify pseudonymity:

> [C]ourts—in balancing the relevant interests—must not lose sight of the big picture. Litigation by pseudonym should occur only in "exceptional cases." Lawsuits in federal courts frequently invade customary notions of privacy and—in the bargain—threaten parties' reputations. The allegations are often serious (at least to the parties) and motivated adversaries do not lack for procedural weapons. Facing the court of public opinion under these conditions is sometimes stressful—but that is the nature of adversarial litigation. If commonplace lawsuit-induced distress were enough to justify the use of a pseudonym, anonymity would be the order of the day: Does and Roes would predominate.

*Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022)(citations omitted.) Indeed, "those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).

Although Plaintiffs have asserted similar privacy interests, Plaintiffs' claimed concerns simply do not constitute *severe* harm. Plaintiffs' failure to identify any specific threat of harm belies their claims. Plaintiffs insist that they must be protected from public condemnation,

retaliation, discipline at work, or job loss, but refuse to articulate how the unfounded allegations at issue translate to any one of the foregoing. This is not enough.

### 2. *Plaintiffs' Claims of Reputational and Professional Harm Are Speculative and Unreasonable.*

Even if Plaintiffs' fears are genuine, Courts consistently reject anonymity for concerns that are hypothetical or societal rather than concrete. In their Motions, Plaintiffs assert that disclosure "could"[35] jeopardize their professional status as a professor, therapist, nurse, or church/childcare/school worker.[36] However, speculative fears of reputational or professional harm cannot outweigh the strong presumption of openness. *Frank*, 951 F.2d at 324; *see also, Strike 3 Holdings, LLC v. Doe*, No. CV 25-3733 (JKS) (MAH), 2025 WL 2080948, at *3 (D.N.J. July 24, 2025) ("Because Defendant's concern is entirely speculative, the Court declines to find that this fear supports a finding that anonymity is warranted."). Where Defendant's claims for defamation, abuse of process, intentional infliction of emotional distress, and civil conspiracy arose from Plaintiff's alleged false claims of sexual assault—which Plaintiff claimed *could have* invited harassment and ridicule, the Court in *Doe v. Doe*, 649 F. Supp. 3d 136 (E.D. N.C. 2023) denied pseudonymity and held that Plaintiff did not produce evidence to support more than *general* fear of retaliation or mere embarrassment, that there did not appear to be any aggravating factors beyond *the subject matter of sexual allegations*, and that the *potential* concerns of mental and physical harm did not affect consideration of whether Plaintiff could proceed pseudonymously. *Id.* (emphasis added).

In its discussion regarding the reasonableness of Plaintiff's fear of an *actual* versus "prospective" threat, the Court in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) stated, "What is relevant is that Plaintiffs *were* threatened, and that a reasonable person

---

[35] Doc. 2 at p. 3; Doc. 39 at p. 3.
[36] Doc. 2 at p. 3; Doc. 39 at p. 3.

would believe that the threat might actually be carried out." (emphasis added); see also, *Jane Doe v. Pentz*, Case No.: 05455-MRA-MAR (C.D. Cal. December 31, 2024)("…the Court is not persuaded that Plaintiff's allegations amount to an "actual threat of any harm against her specifically.")

    **f.   Even If Plaintiffs Have A Need For Anonymity, It Is Outweighed By Fundamental Unfairness/Substantial Prejudice to Bryant And The Public's Interest In Knowing Plaintiffs' Identities.**

As discussed hereinabove, Plaintiffs have not met their burden to prove anonymity in this case is justified, especially in light of the current circumstances. On this basis alone, Plaintiffs' Motions are due to be reconsidered. Even if Plaintiffs have demonstrated *some* need for anonymity, given the recent developments, the balance of interests demands denial of these Motions. Bryant is entitled to confront and test the credibility of the individuals who bring the accusations, and the public is entitled to observe the administration of justice in an open forum.

"Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts," *Doe I v. City of Alabaster,* No. 2:12-CV-02466-RDP, 2012 WL 13088882, at *4 (N.D. Ala. Nov. 19, 2012); FED. R. CIV. P. 10(a), and, Defendants have a right to confront their accusers. *See S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). Bryant has a strong interest in defending himself publicly against Plaintiffs' scurrilous claims. *See, Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996) ("The Defendants … have a powerful interest in being able to respond publicly to defend their reputations, not only in court, but also in other situations where the claims in the lawsuit may be of interest to those with whom the Defendants have business or other dealings. Part of that defense will ordinarily include direct challenges to the Plaintiff's credibility, which may well be affected by the facts Plaintiff prefers to keep secret here[.]"). Thus, impropriety-concealing secrecy is especially unwarranted here. This consideration

favors transparency, too. *Cf. Brown & Williamson Tobacco Corp.* v. F.T.C., 710 F.2d 1165, 1179 (6th Cir. 1983) ("secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption.").

In looking to the factors which would justify anonymity, and reviewing the totality of the circumstances, the Court in *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) held, "we must acknowledge the thumb on the scale that is the universal interest in favor of open judicial proceedings." *see also Doe v. Alabama Dep't of Corr.,* 2025 WL 942750 (M.D. Ala. 2025) (Whether a party's substantial privacy right "outweighs the presumption of openness is a 'totality-of-the-circumstances question.'"); *see also, Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020). In *Doe v. Alabama Dep't of Corr*., 2025 WL 942750 (M.D. Ala. 2025), the Court stated, "Plaintiff … sues several Defendants in their individual capacities, which cautions against anonymity. The individually named Defendants are at risk of reputational harm and basic fairness dictates that the parties proceed openly." *Id. see also Wynne & Jaffe*, 599 F.2d at 713.

In *Doe v. Shakur*, 164 F.R.D. at 361, the District Court held that an alleged victim of a brutal sexual assault was not entitled to anonymity, explaining that the Plaintiff chose to bring the lawsuit, made serious charges, and put her credibility in issue, and, as a result, fairness required that she be prepared to stand behind her charges publicly. *Id.* In addition, as in the case at hand, the *Shakur* case was a civil suit for damages,[37] where the Plaintiff was seeking to vindicate her *own* interests,[38] and was not a criminal case[39] where rape shield laws might provide anonymity. *Id.* The Court found, "[i]f Plaintiff were permitted to prosecute this case anonymously, [Defendant]

---

[37] Doc. 38 at pp. 18.

[38] Doc. 38 at pp. 18.; *see also, Doe v. Shakur,* 164 F.R.D. 359, 360–62 (S.D.N.Y.1996) (in civil cases like this one, Plaintiff seeks to vindicate his or her own interests, not the public's interests).

[39] See also, Doc. 61 at ¶ 56, "After TPD consulted the District Attorney's office, TPD determined that no charges could be brought because, '**They were *not clearly identifiable* in the video[s], nor were their names used on the websites that hosted the con[t]ent …. Since the women in the videos are *not clearly identifiable*, charges cannot be brought against Bryant for distribution of a private image.**' (emphasis added). In fact, Plaintiffs/Counter-Defendants even misidentified themselves."

would be placed at a serious disadvantage, for he would be required to defend himself publicly while Plaintiff could make her accusations from behind a cloak of anonymity." *Shakur*, 164 F.R.D. at 361.

Similarly, proof of the allegations of the instant Complaint will be based largely on the credibility of Plaintiffs. Bryant will need to have access to personal information in the hands of third parties to attempt to impeach Plaintiffs' credibility. Bryant will therefore be prejudiced if he is denied the ability to disclose Plaintiffs' names to potential witnesses who could contribute to his defense. *see, Doe v. Delta Airlines, Inc.,* 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd,* 672 F. App'x 48 (2d Cir. 2016) (recognizing that a named witness, including a party acting as a witness, "may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account." Also, "It is conceivable that witnesses, upon the disclosure of Doe's name, will 'step forward [at trial] with valuable information about the events or the credibility of witnesses.'") (cleaned up). With these considerations in mind, transparency is essential to the integrity of these proceedings; it is essential to enable witnesses to understand who is involved in them; and it is essential to further longstanding public policy that "no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *Adams Offshore, Ltd. v. Con-Dive, LLC*, No. CIV.A. 09-0378-WS-B, 2010 WL 4628026, at *5 (S.D. Ala. Nov. 3, 2010) (citing *R.H. Stearns v. United States,* 291 U.S. 54, 62 (1934) *accord Daugette v. Patterson,* 250 F.2d 753, 757 (5th Cir.1958)).

Likewise, in *Doe v. Byrd*, No. 1:18-cv-00084, at 12 (M.D. Tenn. Dec. 17, 2019), the Court reasoned,

> Having Plaintiff remain anonymous will prejudice Defendants' ability to test the credibility of and rebut Plaintiff's claims of humiliation, shame, embarrassment, fear, and emotional distress. For example, if Plaintiff remains anonymous, Defendants are unable to question Plaintiff's friends, classmates, family, and others concerning his claims of emotional distress, humiliation, shame, and fear. Without identifying Plaintiff, Defendant could not possibly test his credibility or his claims through other people.

*Id.*

Open proceedings discourage dishonesty and promote evidence-gathering. See *San Bernardino Cnty. Dep't of Pub. Soc. Servs. v. Superior Ct*., 232 Cal. App. 3d 188, 202 (Cal. Ct. App. 1991) ("open proceedings discourage perjury and might encourage other witnesses to come forward which in turn leads to more accurate fact-finding").[40] Bryant also notes that "[t]he development of the concept of public access" arose with concerns in mind about avoiding exactly the sort of secret proceedings Plaintiffs want here. *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1177 n.6 (6th Cir. 1983) ("The development of the concept of public access to judicial proceedings in the seventeenth and eighteenth centuries arose in part as a reaction to secret proceedings in the Star Chamber and other prerogative courts."). Those concerns are not trivial, especially where—as here—the actual facts differ markedly from Plaintiffs' allegations.[41]

The U.S. Supreme Court in *Doe v. The Trustees of Indiana University,* 145 S. Ct. 546 (2024) provided the following analysis,

> Consider what happens if someone is charged with crime, as Doe could have been charged with assault and battery. Proceedings before a grand jury are secret, see Fed. R. Crim. P. 6(e)(2)(B), but every indicted Defendant's name is open to the public, despite the reputational harm to a person who is presumed innocent. Someone charged with a felony may be shunned or encounter trouble finding a job, but a court would not call that "retaliation" that justifies anonymity. …
>
> Or suppose Roe had sued Doe for the tort of battery. Again, his name would have been on the public record. Doe's own suit illustrates how litigation can harm reputations. …
>
> Doe wants to protect his own reputation but did not hesitate to expose [Defendant] to the reputational injury that would follow from a judicial conclusion that he violated [laws]. Why should a Plaintiff be able to shield himself from public knowledge of his acts when throwing a harsh light on identified Defendants? If there should be a difference, it ought to run the other way—as Plaintiffs enjoy an absolute privilege against claims of defamation for what they say in their complaints and briefs. *Restatement (Second) of Torts* §587. Why should Plaintiffs be free to inflict reputational harm while sheltering themselves from loss if it turns out that their charges are unfounded?

---

[40] (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (Brennan, J., concurring) ("Both Hale in the 17th century and Blackstone in the 18th saw the importance of openness to the proper functioning of a trial; it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality.")).
[41] *Compare,* Doc. 38 and 61.

*Id. see also, Roe v. Does 1-11*, No. 20-cv-3788-MKB-SJB, 2020 WL 6152174, *5 (E.D.N.Y. Oct.

14, 2020) ("to the extent that Plaintiff's claims are without merit, . . . there is certainly a

countervailing public interest in knowing Plaintiff's identity."); *see O.L. v. Jara*, No. 21-55740,

2022 WL 1499656, *3 n.1 (9th Cir. May 12, 2022) (warning that "[f]lagrant abuse of the judicial

process" through such tactics "cannot be tolerated") (citation omitted).[42] Holding that the District

Court abused its discretion in permitting Plaintiff to conceal his name without any finding that he

was a minor, at risk of physical harm, or faced improper retaliation, the Supreme Court vacated

the judgment and remanded it back to the District Court for Plaintiff to have the opportunity to

dismiss the case or proceed under his true name, stating, "If Doe elects not to reveal his name, the

complaint must be dismissed." *Id.*

Concurring in part in *Roe v. Aware Woman Ctr. for Choice, Inc*., 253 F.3d 678, (11th Cir.

2001), Judge Hill, stated,

> …several courts have questioned whether Plaintiffs whose interest in their lawsuit is
> primarily economic should be allowed to proceed anonymously. In *Luckett* [*v. Beaudet,* 21
> F.Supp.2d 1029, (D.Minn.1998)], the Court denied anonymity to a Plaintiff alleging sexual
> coercion and discrimination, even though discussing such allegations would "undoubtedly
> [be] uncomfortable" noting that "[P]laintiff seeks a dollar recovery for a statutory tort." In
> *Free Market Compensation* [*v. Commodity Exchange, Inc.,* 98 F.R.D. 311 (S.D.N.Y.1983)]*,*
> the District Court denied anonymity to a Plaintiff alleging securities fraud who feared
> retaliation, holding that "John Doe's *desire to avoid professional embarrassment and
> economic loss" is not a "recognized" privacy interest*. 98 F.R.D. at 313. Roe's interest in
> this lawsuit is economic,[43] and, although recovery will involve testimony regarding private
> medical matters, it seems to me that her case does not fall within one of the recognized
> exceptions to the rule requiring public proceedings.

*Id.* (citations omitted)(emphasis added). Fraudulent cases like this are a significant part of the

concern.[44] The Court in *Francis* stated,

---

[42] *Smith v. Corizon Healthcare*, No. 116CV00461DADEPGPC, 2016 WL 3538350, at *3 (E.D. Cal. June 28, 2016), *report and recommendation adopted sub nom. Smith v. Healthcare,* No. 116CV00461DADEPG, 2016 WL 4679712 (E.D. Cal. Sept. 7, 2016) ("Plaintiff's identity is relevant also for tracking vexatious litigants.").
[43] Doc. 38 at pp. 18.
[44] *see, e.g., Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005) ("if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability.").

Defendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not. [The Plaintiff] has denied [the Defendant] the shelter of anonymity—yet it is [the Defendant], and not the Plaintiff, who faces disgrace if the complaint's allegations can be substantiated. And if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability.

631 F.3d 1310. The *Francis* Court ruled in favor of Plaintiffs because Plaintiffs were minors, they did not participate in the footage voluntarily, the footage was still available for purchase, Defendants previously pled guilty to criminal charges relative to the footage, Plaintiffs presented actual evidence of physical harm if they were forced to proceed in their own names, and Defendant was unable to identify a single specific harm as a result of Plaintiffs being allowed to proceed anonymously. *Id.* Thus, the Court found that none of the "normal harms threatened to Defendants when Plaintiffs proceed anonymously" were present. *Id.*

Conversely, most, if not all of the circumstances of *this* case include the following: Plaintiffs voluntarily appeared in the footage[45] as adults,[46] they previously and repeatedly publicized the information regarding the footage as well as the details of the lawsuit to countless third parties and on various social media platforms,[47] and the hacked footage is no longer available.[48] Plaintiffs cannot reasonably claim any new harms would befall them if they were forced to litigate this matter under their true names or that Bryant is no longer "threatened" by the "normal harms" associated with said anonymity, except to say that such harms are actively and continuously threaten*ing* him.

Bryant has been publicly linked to Plaintiffs' false allegations, and has suffered emotional and mental damage, economic loss, reputational damage, and professional stigma while Plaintiffs have inequitably been given safe harbor, remaining shielded from scrutiny and continuing to

---

[45] Doc. 38 ¶¶ 17, 72.
[46] Doc. 38 ¶¶ 16, 38, 60, 71.
[47] Doc. 61 at ¶¶8,11, 61, 63, 66, 67, 68, 70, 109.
[48] Doc. 38 at ¶¶ 25, 27, 31, 80; Doc. 61 at ¶¶ 57, 58.

litigate behind a veil of secrecy. This inequity is precisely the kind of unfair prejudice that Courts recognize as a reason to deny anonymity. *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011); *Doe v. Kamehameha Schs.*, 596 F.3d 1036, 1043 (9th Cir. 2010).

In *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979), a case which involved four female lawyers who wanted to proceed anonymously against two Dallas law firms in a sex discrimination suit, the Court explained, "…the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm. [Defendants] stand publicly accused of serious violations of federal law. Basic fairness dictates that those among the Defendants' accusers who wish to participate in this suit as individual party Plaintiffs must do so under their real names." *Id.* at 713. The case at bar is no different.

Moreover, Bryant will likely be prejudiced before the jury if Plaintiffs assert claims for pain and suffering based on their embarrassment and shame, and the Court, for all that appears, then reinforces those claims by allowing Plaintiffs to proceed under a pseudonym. *Doe v. N. Carolina Cent. Univ.,* No. 1:98CV01095, 1999 WL 1939248, (M.D.N.C. Apr. 15, 1999); see also, *Doe v. Rose*, No. CV-15-07503-MWF-JC, 2016 WL 9137645, at *3 (C.D. Cal. June 17, 2016) ("Plaintiff's anonymity could significantly prejudice Defendant [] if this action were to progress to trial. Indeed, the jury may interpret the Court's permission for Plaintiff to conceal her identity as a comment on the harm Defendants allegedly caused.") *Doe v. Ayers,* 789 F.3d 944 (9th Cir. 2015) (noting a "risk that the … use of pseudonyms might prejudice the jury" in the anonymous party's favor).

"This case does not present such an unusual situation in which the need for party anonymity outweighs the presumption of openness." *Frank*, 951 F.2d 320. However, allowing Plaintiffs to proceed anonymously would deny Bryant a fair opportunity to defend himself and

pursue his own counterclaims, erode public confidence in the judicial process, and indicate that speculative reputational concerns can outweigh the transparency and accountability normally required under our judicial system. Plaintiffs' circumstances simply do not justify a departure from the Federal Rules of Civil Procedure, long-standing legal precedent, or the U.S. Constitution.[49]

"Lawsuits are public events" *Frank*, 951 F.2d 320; when "'a matter is brought before a Court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356 (11th Cir. 2021); *see also, Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975). The Court "must acknowledge the thumb on the scale that is the universal interest in favor of open judicial proceedings." *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011). Here, the scales on which this matter rests are not balanced—they unjustly bear the heavy press of four invisible thumbs, while Bryant stands publicly on the roadside of equity, unable even to thumb a fair ride.

## II.    CONCLUSION

Plaintiffs' claims do not involve abortion, religion, homosexuality, the government, retaliation, the risk of criminal prosecution, birth control, transsexuality, hereditary health issues, mental illness, welfare rights of illegitimate children, AIDS, or any *reasonable* fears of *severe* and/or *physical* harm. Plaintiffs claim they would merely suffer embarrassment or reputational harm if their true identities were revealed alongside "information of the utmost intimacy" *after* they themselves have already publicly revealed such information under their true names *and* caused *actual* harm to Bryant. Having provided no evidence to substantiate anonymity, Plaintiffs' justification cannot outweigh all the circumstances of this case.

**WHEREFORE, PREMISES CONSIDERED,** Bryant, by and through the undersigned counsel of record, respectfully requests that this Honorable Court vacate its Orders granting

---

[49] U.S. Const. art. III, § 1; U.S. Const. amend. I.

Plaintiffs' pseudonymity and require Plaintiffs to file amended pleadings identifying themselves by name.

Respectfully submitted,

*/s/J. Thomas Burgess*
J. Thomas Burgess, ASB#: 0554-S78J
Scott A. Holmes, ASB#: 8908-S78H
Erin M. Agricola, ASB#: 4496-I30A
*Attorneys for Defendant/Counter-Plaintiff,*
*Errol Gregory Bryant*

**OF COUNSEL:**
**BURGESS HOLMES, LLC**
3618 Clairmont Avenue
Birmingham, Alabama 35222
Telephone: (205) 870-8611
Fax: (205) 870-8688
tburgess@burgessholmes.com
sholmes@burgessholmes.com
eagricola@burgessholmes.com

*/s/Jason L. Wollitz*
Jason L. Wollitz, ASB# 6349-W74J
One Independence Plaza, Suite 305
Homewood, Alabama 35209
Telephone: (205) 541-6033
*Attorney for Defendant/Counter-Plaintiff,*
*Errol Gregory Bryant*

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing on all attorneys of record, via the CM/ECF electronic filing system on December 22, 2025:

Yuri R. Linetsky, ASB#: 3088-B20W
Ricky T. Chambless, ASB#: 5879-S77R
Jack Steinmetz, *Law Student Intern*
Haley Noele Follmer-Burnett, *Law Student Intern*
Hannah Palmer, *Law Student Intern*
Sara Philp, *Law Student Intern*
**THE UNIVERSITY OF ALABAMA SCHOOL OF LAW**
**CIVIL LAW CLINIC**
Box 870392
Tuscaloosa, Alabama 35487-0392
Telephone: 205.348.4960
Facsimile:  205.348.6851
ylinetsky@law.ua.edu
rchambless@law.ua.edu
jack.steinmetz@law.ua.edu
haleynoele.follmerburnett@law.ua.edu
hannah.palmer@law.ua.edu
sara.philp@law.ua.edu
*Attorneys and Law Student Interns for*
*Plaintiffs/Counter-Defendants*

/s/J. Thomas Burgess, Jr.
OF COUNSEL