# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

Z.P., et al.,

                Plaintiffs,

     vs.

ERROL GREGORY BRYANT,

                Defendant.

Case No. 7:24-cv-00151-ACA

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE ORDER GRANTING PSEUDONYMITY

---

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**Introduction** ................................................................................ 1

**I.    Any allegedly newly discovered facts or alleged changed circumstances do not alter the reasoning behind the previously granted order.** ............ 2

    **A.**  <u>Plaintiffs' posts and comments made after this Court granted pseudonymity were not widely disseminated and do not connect their identity to the graphic, involuntarily distributed materials.</u> .................... 2

        i.    *Defendant's characterization of Plaintiffs' online activity is misrepresented...* .................................................................. 3

        ii.   *Plaintiffs' posts and comments do not reach the level of mass dissemination that has previously warranted denying pseudonymity.* ...................................................................... 4

        iii.  *Plaintiffs' comments and posts do not draw connections to the highly graphic and personal disclosures they wish to remain anonymous.* ....................................................................... 9

    **B.**  <u>Plaintiffs' comments and posts were made to gather information of other victims for this lawsuit.</u> ................................................. 10

    **C.**  <u>The Plaintiffs' injuries are unchanged from the Amended Complaint and recoverable under Section 6851.</u> ...................................... 10

**II.   Section 6851 warrants pseudonymous protection** .................................... 13

    **A.**  <u>The harms at issue in Section 6851 cases consistently prevail over the judicial presumption of openness.</u> ......................................... 14

    **B.**  <u>Even under the traditionally applied balancing test, Plaintiffs still prevail in maintaining pseudonymity.</u> ..................................... 17

        i.    *This case requires disclosure of information of the utmost intimacy.* ....................................................................... 18

ii.  *Severe harm, if required, is concrete and reasonable.* .................21

iii.  *Pseudonymity is not fundamentally unfair to Defendant.* .............23

iv.  *The text of Section 6851 is part of the totality of the circumstances.* 27

**III.  In the alternative, even if this Court finds that Z.P. no longer warrants pseudonymity, all other Plaintiffs should retain this protective shield.** .29

**Conclusion** ..........................................................................................31

## <u>INTRODUCTION</u>

This Court should deny Defendant/Counter-Plaintiff's Motion to Vacate the Court's Orders Granting Plaintiffs/Counter-Defendants' Motions to Proceed Pseudononymously [sic] and Memorandum Brief in Support Thereof (collectively "Motion to Vacate" or "Motion"). Defendant's Motion presents no material facts that have changed since this Court permitted Plaintiffs to proceed pseudonymously. Further, Defendant's Motion misses the harms at issue in a 15 U.S.C. § 6851 claim. Vacating this Court's Order would irreversibly link Plaintiffs' real names with their graphic photos and videos that the Defendant disclosed without consent.

In February 2024, three Plaintiffs filed their Complaint and contemporaneously moved to proceed pseudonymously.[1] This Court granted the Plaintiffs' motion, applying Eleventh Circuit precedent and recognizing this case involves both a disclosure of "information of the utmost privacy" and a federal statute that contemplates Plaintiffs' ability to proceed under a pseudonym.[2] In early 2025, an additional Plaintiff was joined via an Amended Complaint, and this Court likewise granted her motion to proceed pseudonymously.[3]

Defendant's Motion to Vacate this Court's prior order consists of a litany of out-of-circuit precedent, misrepresentation of the Plaintiffs' allegations, and a

---

[1] *See* Doc. 1.
[2] *See* Doc. 9 at p. 2.
[3] *See* Docs. 38, 39, and 40.

disregard for the harms underlying this case. Defendants decided to file this motion nearly a year after this Court's most recent grant of pseudonymity and approximately seven months after Defendant's filing of their Amended Counterclaim, even though any material changes in facts Defendant alleged were well known to him at the time of his filing of the Counterclaim. This tactic demonstrates Defendant's procedural gamesmanship, and the Court should decline to reward this timing which adds burden without advancing the merits or judicial economy.

Below, Plaintiffs explain the lack of changed circumstances and why Section 6851 continues to support Plaintiffs' protection of pseudonymity.

## I.    Any alleged newly discovered facts or alleged changed circumstances do not alter the reasoning behind the previously granted order.

A. <u>Plaintiffs' posts and comments made after this Court granted pseudonymity were not widely disseminated and do not connect their identity to the graphic, involuntarily distributed materials.</u>

Defendant asserts that, after anonymity was initially granted, Plaintiffs have "repeatedly publicized the facts of this case, flooding the internet and the community with the details of their as-yet-unchallenged allegations . . .."[4] In outlining the scope of what constitutes widely distributed, Defendant cites to cases with underlying facts far more extreme than those at issue here, concluding that inferences drawn from these cases defeat any argument for a shield of protection because the Plaintiffs have

---

[4] Doc. 92 at p. 3.

already "rung the bell."[5] Defendant misrepresents the facts, and many of the Defendant's inferences are false, cherry-picked interpretations of the law.

  i. *Defendant's characterization of Plaintiffs' online activity is misrepresented.*

Defendant describes Plaintiffs' online activity using phrases such as, "Plaintiff's public accusations naming Defendant" and "Plaintiff's prior statements to the media," which falsely exaggerate Plaintiffs' conduct.[6] Contrary to Defendant's assertions, Plaintiff Z.P.'s only non-anonymously-posted comments about her relation to this lawsuit are all contained under one post about the Defendant within a private, female-only Facebook group.[7] This Facebook group was created to protect and support women in the Tuscaloosa and Birmingham areas where women may openly, but privately, discuss men in the area.[8] In only one of the comments with her true name, Z.P. stated that Defendant posted her on OnlyFans without her consent and that they previously dated; she responded under a post about him initiated by another user and without herself stating his name.[9] The only other "prior statements to the media" made non-anonymously that the Defendant cites in the Motion to Vacate consist of text messages to other victims or notes a Plaintiff made in her

---

[5] *See, e.g.*, Doc 92-1 at p. 3.
[6] Doc 92-1 at p. 5.
[7] Doc. 61 at para. 60.
[8] Doc. 61 at para. 60.
[9] Doc. 61 at para. 8.

personal cell phone.[10] All other posts and comments published online were made anonymously.[11]

> ii. *Plaintiffs' posts and comments do not reach the level of mass dissemination that has previously warranted denying pseudonymity.*

These "public accusations" were not widely disseminated enough to warrant lifting the protective shield of the victims. Defendant's contention that the Plaintiffs' have *sounded the bell*[12] is fundamentally flawed because the limited and private nature of any statements made by Plaintiffs does not undermine the protective shield of anonymity, and Defendant's cited case law does not otherwise support a per se rule against pseudonymity.

The alleged "public accusations" in this case are minimal and private. The only purported public disclosures consist of a handful of comments, which were made under a post in a private Facebook group and never explicitly linked to the graphic content central to this case. Unlike cases cited by the Defendant where courts denied anonymity due to widespread public dissemination, in the instant case, there has been no media coverage, no mass distribution of files to and from third parties,

---

[10] Doc. 61 at para. 11 (she sent these messages to a singular co-victim, not a random "third party"). *See* Doc 92-1 at p. 23, n. 47 (where the Defendant focus on Plaintiffs repeatedly publicizing information to third parties, however, these posts never revealed the Plaintiff's identities nor linked their identities to this lawsuit or the otherwise graphic depictions underlying this case.).

[11] Doc. 61, para. 63, 68 (Plaintiffs and Plaintiffs' counsel deny knowledge of this account and therefore this statement in our previously served discovery responses. *See also* Doc. 61 at para. 63).

[12] Doc. 92-1 at p. 3.

and no public linkage between Plaintiffs' identities and the allegedly graphic content. *See, e.g.*, *Doe v. F.B.I.*, 218 F.R.D. 256 (D. Colo. 2003) (cited by Defendant, this case involves a federal drug investigation in which the Court found that the "cat was out of the bag" due to a flood of public dissemination including: release of the FBI file to third parties, worldwide publication of the file by a third party, furnishing of the file to individuals locally and statewide, the inclusion of such anonymous information in court proceedings, and newspaper media coverage). For example, Defendant cites to an anonymous posting of the first page of a Complaint, which contained *no identifying information* because the following was redacted: case number, plaintiffs' names, defendant's name, and any other potentially identifying information.[13] Overall, Defendant's citations to the postings at bar are far removed from situations in which anonymity was denied because a plaintiff's identity had been irreversibly exposed to the public.

Next, Defendant's reliance on *Doe v. N. Carolina Cent. Univ.* misrepresents and cherry-picks the takeaway that the "Plaintiff's media publication of the names of and allegations against Defendants exacerbated the unfairness wrought by anonymity."[14] *See* No. 1:98CV01095, 1999 WL 1939248 (M.D.N.C. Apr. 15, 1999). In fact, the court explicitly states that they considered that the "Plaintiff's ***attorney***

---

[13] Doc. 61 at para. 63.
[14] Doc. 92-1 at p. 4.

has made several statements to the media regarding this case, specifically identifying Moore and leveling charges at NCCU." *Id.* at *4 (emphasis added). This disregard for the anonymity protection by the Plaintiff's own attorney is unlike any act or statement by the attorneys of the Plaintiffs in this case. Furthermore, *Doe v. N. Carolina Cent. Univ.* involved a Title VII sex discrimination claim against her employer, rather than revenge porn under Section 6851 which encompasses cases with more intimate and descriptive details in comparison.

A plaintiff's comment online that uses their real name is not dispositive as to whether pseudonymity should be discontinued. Defendant improperly interprets cases like *Shakur* and *Mateer* to conclude that "prior disclosure to the public of a Plaintiff's identity effectively nullifies the shield of privacy provided by proceeding anonymously."[15] *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996); *Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, 1997 WL 171011 (S.D.N.Y. Apr. 10, 1997). In *Shakur*, the court considered prior disclosure of the Plaintiff's identity in its analysis but rejected a per se rule, instead emphasizing that anonymity requires a case-by-case analysis. *Shakur*, 164 F.R.D. 359. The *Shakur* court found that anonymity would not meaningfully reduce harm in that case because the Plaintiff conceded that the press had known her name for some time, likely due to the Defendant being a well-known rapper. *Id.* There is no concern in the current case

---

[15] Doc. 92-1 at p. 4.

of the parties affiliating with or being themselves a famously known figure or otherwise already recognizable by the press, such as Tupac Shakur. *See also Doe v. Maloit*, No. 24-CV-02383-PAB-KAS, 2025 WL 358134 (D. Colo. 2025) (cited by the Defendants, the court denied anonymity because the parties had been married for over eleven years and the defendant was a public figure, the plaintiff's public identification of him as her ex-husband in the complaint made her readily identifiable to nearly anyone who knew either party, leading to third-party dissemination of the lawsuit on a local Facebook page and eliminating employment-related privacy concerns because the plaintiff had already informed her employer of the explicit photographs).

*Mateer* also applies a case-by-case analysis and explicitly declines to establish a universal rule when a plaintiff's name is publicly disclosed. 1997 WL 171011. *Mateer* involved the extreme case where the plaintiff's name, Gary C., was published in previous state court documents and any individual could search and find his name in these public files. *Id.* Similarly, the dispositive factor in *Roe v. Bernabei & Wachtel* was that the "Plaintiff's name is already publicly associated with the video and the underlying incident, through pleadings and motion practice" in a related federal case, and therefore anonymity would not meaningfully protect privacy. 85 F. Supp. 3d 89 (D.D.C. 2015). Taken together, limited media disclosure does not automatically outweigh the strong privacy interests at stake in some matters. Instead, the cases

above illustrate the extreme level of public dissemination where courts tend to overrule pseudonymity. Here, Plaintiffs' names have never appeared in public filings connected to the case nor been linked to descriptions or the actual graphic content.

Furthermore, case law does not support the proposition that a Plaintiff's vague references to the subject matter of a case in a Facebook group amount to public dissemination sufficient to warrant the removal of previously granted pseudonymity. Defendant's argument heavily relies on *Doe v. Weston & Sampson Engineers, Inc.* regarding the use of a Facebook group to spread information. 743 F. Supp. 3d 751, 755 (D.S.C. 2024). While both the current matter and *Weston & Sampson* involved a fairly-large Facebook group with privacy rules and admission requirements, *Weston & Sampson* involves the Plaintiff posting outright about the sexual assault claim and who committed the act, the central claim of the lawsuit itself; the Plaintiff there left no privacy left to protect. *Id. Weston & Sampson* also did not involve or mention any allegation of graphic videos, graphic descriptions, or Section 6851. *Id.* The Plaintiffs in the current matter are not posting with links to the graphic images or videos that they wish to keep separate from their identities by remaining anonymous. Instead, the Plaintiffs in the current matter posted comments with the vague context of what the Defendant had done to them—this does not, nor even attempt to, draw a connection between their identities and the graphic depictions they did not consent to being publicly disseminated.

*iii. Plaintiffs' comments and posts do not draw connections to the highly graphic and personal disclosures they wish to remain anonymous.*

In the alternative, even if this Court finds that Z.P.'s non-anonymous postings are as widely disseminated as the cases described above, the Facebook posts about the Defendant do not reach the level of graphic detail Plaintiffs seek to keep private, and therefore the Plaintiffs still need the protective shield of pseudonymity. In *Doe v. Parsons*, the Court allowed the Plaintiff to proceed pseudonymously under Section 6851 where photographs with "intimate visual depictions" were involved. 2024 WL 5705632, at *1 (M.D. Tenn. Dec. 16, 2024). These images depicted Plaintiff's uncovered pubic area, post-pubescent female nipple, and uncovered anus. *Id.* The photographed depictions in *Doe v. Parsons* are the exact types of intimate depictions that Defendant in the instant matter seeks to be associated with the Plaintiffs if anonymity is lifted. In totality, despite the posts made by Z.P., none of the posts would allow readers the ability or steps to access the actual pornography itself. Instead, she is merely describing her negative experience with the Defendant as well as the Defendant's decision to post their intimate activities online generally, which is not "placing . . . the underlying intimate depictions . . . into public domain," as the Defendant characterizes.[16]

---

[16] *See, e.g.*, Doc. 61 at para. 60; Doc. 92-1 at p. 4.

9

B. <u>Plaintiffs' comments and posts were made to gather information of other victims for this lawsuit.</u>

Defendant further falsely concludes that these "repeated publications serve to taint the potential jury pool against Bryant . . .."[17] Plaintiffs' limited comments and posts were not made to publicly accuse or disparage Defendant, but rather to identify and communicate with other potential victims. These statements were made in a confined, private forum and did not include graphic content or links to any videos that would potentially taint a jury pool's perception of the Defendant any more than what is currently available to search in the publicly available documents. Speculative assertions that such restrained communications could prejudice a future jury are unsupported by the record and far removed from the type of widespread, public dissemination courts have found sufficient to undermine pseudonymity. Allowing Plaintiffs to proceed anonymously therefore remains necessary to preserve their privacy interests without causing any cognizable prejudice to Defendant.

C. <u>The Plaintiffs' injuries are unchanged from the Amended Complaint and recoverable under Section 6851.</u>

Defendant's assertion that all of Plaintiffs' pleaded injuries are "speculative" or "retrospective"[18] is a false recitation of Plaintiffs' requested relief. Further,

---

[17] Doc. 92 at p. 3.
[18] *See generally* Docs. 92 and 92-1.

contrary to Defendant's claim, the instant matter directly pertains to disclosure and squarely falls within the ambit of Section 6851 among other applicable relief.[19]

Defendant makes false or misleading recitations of fact, ignoring aspects of the Amended Complaint that are unfavorable to the Defendant. For example, Defendant cites to paragraph 84 of the Amended Complaint and states, "Plaintiffs do not allege that Bryant has continued to disseminate images of Plaintiff."[20] In fact, paragraph 84 states the exact opposite of Defendant's assertion, stating, "As of the date of this Complaint's filing, Bryant is still sharing intimate visual depictions of various women via the Internet."[21] Perhaps Defendant is assuming that "various women" does not include Plaintiff, although this has never been said nor should it be inferred from the language used in this sentence.

Another example of Defendant falsely framing the injuries asserted is found in the next sentence of their Motion to Vacate memorandum, which states, "Plaintiffs acknowledge that Bryant has removed the alleged images," citing to paragraph 80 of the Amended Complaint.[22] Defendant's intentional ignorance of the entirety of the Amended Complaint is clear for two reasons. First, looking back to the Amended Complaint, Defendant is correct in stating that in paragraph 80, after the criminal

---

[19] *See* Section II.B (explaining balancing test).
[20] Doc. 92-1 at p. 9 (citing to Doc. 38 at para. 84).
[21] Doc. 38.
[22] Doc. 91-2 at p. 9 (citing to Doc. 38 at para. 80).

investigation, "many of the posts and profiles of Bryant used in his scheme were deleted."[23] However, this statement intentionally uses the word "many" to emphasize Defendant's explicit failure to delete *all* posts and profiles. Second, the *following paragraph* (81) of the Amended Complaint reads as follows: "However, after Inv. Lovejoy's investigation, Bryant created a new Reddit profile to resume sharing intimate visual depictions. Around this time, Bryant also advertised via a FetLife post that he had "[c]ontent available for sale."[24] Therefore, regardless of any case law cited pertaining to the injuries incurred, the Defendant has mischaracterized the status and severity of the Plaintiffs' injuries that Defendant caused. As alleged in Plaintiffs' Amended Complaint, the injuries are neither speculative nor retroactive, as Plaintiffs intend to provide proof of both its real nature and ongoing threat.

Despite one of Defendant's main assertions being that "preventing disclosure of Plaintiffs' identities is not the basis of this lawsuit,"[25] "'[s]ection 6851's very purpose is to protect against one's intimate matters being publicized.' 'Disclosing Plaintiff's identity could link her to factual details about her intimate image and its unauthorized distribution, further threatening the rights § 6851 seeks to protect.'" *Doe v. Parsons*, 2024 WL 5705632 (M.D. Tenn. Dec. 16, 2024) (citations omitted). Although Defendant characterizes "disclosure" as limited to publication in "public

---

[23] Doc. 38 at para. 80.
[24] Doc. 38 at para. 81.
[25] Doc. 92-1 at p. 8 (capitalizations removed).

databases or registries,"[26] Defendant here seeks to compel this Court to reveal Plaintiffs' identities alongside intimate sexual details, bodily identifiers, employment information, and other personal identification by eliminating anonymity. Given that Defendant initially disclosed Plaintiffs' intimate, graphic pictures and videos without consent, this action squarely implicates Section 6851's core concern with preventing further disclosure.

## II.    Section 6851 warrants pseudonymous protection.

Section 6851 provides that "[i]n ordering relief under subparagraph (A), the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(B). Congress enacted Section 6851 to recognize the harms associated with nonconsensual disclosure of an individual's intimate photos and videos. *See e.g.*, *Doe v. Ghiorso*, No. 2:24-CV-57, 2024 WL 3511641, (S.D. Ga. July 23, 2024). The statute explicitly empowers courts to protect victims by proscribing "Preservation of Anonymity" as a category of "Relief." *See* 15 U.S.C. § 6851(b)(3). Despite Defendant's contentions otherwise, the harms at issue in this case create a privacy interest sufficient to overcome the judicial presumption of openness even under the traditional balancing test.

---

[26] Doc. 92-1 at p. 8.

A. <u>The harms at issue in Section 6851 cases consistently prevail over the judicial presumption of openness.</u>

In urging this Court to vacate its prior ruling, Defendant fails to appreciate the nature of the harm at issue or the statutory scheme. For claims under Section 6851, courts routinely recognize the unique harms at issue if a plaintiff's name were connected to a nonconsensual disclosure of their intimate imagery. *Doe v. Campbell*, No. 3:25-CV-836, 2025 WL 2824905 at *1 (M.D. Tenn. Oct. 3, 2025) ("The majority of courts faced with motions to proceed anonymously in § 6851 cases have granted those motions.").[27]

Specifically, in the Eleventh Circuit, courts have regularly permitted plaintiffs to pursue Section 6851 claims pseudonymously. *See Doe v. McCoy*, No. 1:23-CV-3169-MLB, 2024 WL 843908 (N.D. Ga. Feb. 28, 2024); *Doe v. Ghiorso*, No. 2:24-CV-57, 2024 WL 3511641 (S.D. Ga. July 23, 2024). Other courts follow suit,[28] and the few cases denying pseudonymity under Section 6851 are readily

---

[27] *See* Docs. 9, 40.

[28] *See Doe v. Towers,* No. CV 25-2077, 2025 WL 2928957 (E.D. La. Oct. 15, 2025); *Doe v. Campbell*, No. 3:25-CV-836, 2025 WL 2824905 (M.D. Tenn. Oct. 3, 2025); *Doe v. Willis*, No. 23-CV-02171-REB-SBP, 2023 WL 6903016, at *2 (D. Colo. Sept. 22, 2023); *Doe v. Sutton*, No. 4:23-CV-01312-SEP, 2025 WL 871656 (E.D. Mo. Mar. 20, 2025); *C.V. v. Carminucci*, No. 2:24-CV-2096 (JXN) (SDA), 2024 WL 3983007 (D.N.J. Aug. 28, 2024); *Doe v. Parsons*, No. 2:24-CV-00075, 2024 WL 5705632 (M.D. Tenn. Dec. 16, 2024); *Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 WL 492231, at *4–5 (D. Ariz. Feb. 7, 2024); *Doe Williams v. Williams*, No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642, at *5 (S.D. Miss. May 31, 2024); *Roe v. Penns Grove-Carney's Point Reg'l Sch. Dist.*, No. CV 24-10827 (CPO)(EAP), 2025 WL 723606 (D.N.J. Mar. 5, 2025); *Doe v. Stevenson*, No. 1:24-CV-02778, 2025 WL 1165660, at *1 n.1 (N.D. Ill. Apr. 3, 2025).

distinguishable.[29] Courts recognize the intimate nature of the claims and regularly recognize that the harm outweighs judicial interest in proceeding openly. One court dismissed the need to perform a balancing test and instead presumptively granted pseudonymity under Section 6851. *Doe v. Parsons*, No. 2:24-CV-00075, 2024 WL 5705632 (M.D. Tenn. Dec. 16, 2024). Defendant presents no reasonable argument for this Court to break step.

While Defendant contends that the Plaintiffs argued Section 6851(b)(3)(b) "compels" anonymity, that assertion is false.[30] Instead, Plaintiffs correctly observed that Section 6851 "contemplates the necessity of plaintiff anonymity."[31] In granting the motions to proceed pseudonymously, this Court exercised its discretion and agreed with the Plaintiffs' that the statute "contemplates that plaintiff *may* proceed using a pseudonym."[32] The word "may" implies the court's discretion. *See Usmani v. U.S. Atty. Gen.*, 483 F.3d 1147, 1150 (11th Cir. 2007). Therefore, the grant is within this Court's discretion, and the circumstances in this case have not changed as to warrant reversal of that decision.[33]

Defendant's contention that "the case for pseudonymity diminishes" once the disclosure of intimate images has occurred is a disturbing interpretation of the

---

[29] *See supra* Section I.
[30] *See* Doc. 92-1 at p.3.
[31] *See* Doc. 2 at p.4; Doc. 39 at p.4.
[32] *See* Doc. 9 at p.2 (emphasis added).
[33] *See supra* Section I (discussing the lack of changed circumstances).

protections Section 6851 grants.[34] The initial disclosure of an identifiable intimate visual depiction is not the only injury. Plaintiffs also face the fear of being reconnected with private images and videos in the future if their names are associated with the underlying lawsuit. If the initial disclosure alone, without consideration of subsequent harm, is sufficient to outweigh the plaintiff's interest in pseudonymity, defendants in Section 6851 cases would be disincentivized to stop further reproductions. Instead, defendants would have an incentive to spread the content and prevent victims from ever proceeding pseudonymously.

Contrary to Defendant's claim, this case is exactly one where "the injury litigated against would be incurred as a result of the Plaintiff's identity."[35] In the Eleventh Circuit, the exceptional circumstances warranting anonymity include "matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity."[36] *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).

Section 6851 cases differ significantly from those in sexual assault cases. *See, e.g.*, *Doe v. Alabama Dep't of Corr.*, 2025 WL 942750 (M.D. Ala. 2025) (cited by Defendant explaining that sexual assault harms do not rise to the utmost intimacy). In the Eleventh Circuit, "courts have often denied the protection of anonymity in

---

[34] *See* Doc. 92-1 at p 8.
[35] *See* Doc. 92-1 at p. 8.
[36] *See supra* Section I.C.

cases where plaintiffs allege sexual assault, even when revealing the plaintiff's identity may cause her to 'suffer some personal embarrassment.'" *Plaintiff B. v. Francis,* 631 F.3d 1310, 1316 (11th Cir. 2011) (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir.1992)). In Section 6851 cases, however, the harm of removing pseudonymity goes beyond mere embarrassment or reputation concerns because litigating under the plaintiff's true name forever associates the plaintiff's name with the intimate depictions disclosed without consent. *See Doe v. Middlesex Cnty.*, No. cv 20-8625 (MAS) (ZNQ), 2021 WL 130480, at *5 (D.N.J. Jan. 14, 2021) ("[C]ourts have a strong interest in incentivizing plaintiffs to litigate their claims without threat of revictimization.").

B.  <u>Even under the traditionally applied balancing test, Plaintiffs still prevail in maintaining pseudonymity.</u>

A totality of the circumstances analysis dictates pseudonymity. *Doe v. Neverson*, 820 F. App'x 984 (11th Cir. 2020). In the Eleventh Circuit, a party may proceed pseudonymously if they establish "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).

While this balancing test is fundamental, the totality-of-the-circumstances analysis considers primarily three factors: whether the plaintiffs will 1) be required to disclose "information of the utmost intimacy," 2) challenge governmental activity,

17

or 3) be compelled to admit involvement in illegal conduct. *Plaintiff B. v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011) (citing *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)).[37] These factors alone are not dispositive. Courts must also "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020).

In this case, Plaintiff's required disclosure of "information of the utmost intimacy" satisfies the Eleventh Circuit's balancing test, as discussed below. Defendant's analysis is flawed because Defendant insists on using the Third Circuit's nine-factor balancing test, among other out-of-circuit's merely persuasive precedent.[38] Additionally, Defendant imposes a "severe harm" requirement but does not support this assertion with binding precedent.[39]

    *i.  This case requires disclosure of information of the utmost intimacy.*

Pornographic videos depicting nudity are of the "utmost intimacy." *See Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011) (finding pornographic depictions of the minor female plaintiffs performing sexual acts "could not be of a more sensitive and highly personal nature"). Although the court considers the

---

[37] *See also* Doc. 9.
[38] *See* Doc. 92-1 at p. 15.
[39] *See* Doc. 92-1 at p. 14-15.

plaintiffs' ages and other factors, nudity and sexual conduct distinguish cases involving pornography from other cases. *Id.* The sensitive and personal nature of nonconsensual disclosure of intimate and sexually graphic photos and videos "squarely implicate the Fifth Circuit's 'utmost intimacy' factor and tip the balance in favor of proceeding pseudonymously." *Doe v. Towers*, No. CV 25-2077, 2025 WL 2928957 at *2 (E.D. La. Oct. 15, 2025) (citing *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. Unit A 1979)).

This case inherently requires disclosure of intimate, explicit imagery and videos of each Plaintiff that were distributed by a former sexual partner without consent. Each Plaintiff has produced private information about their genitalia, body shape, and other identifying bodily features depicted in these images and videos. As courts, including those in the Eleventh Circuit, have largely agreed, the type of information that underlies a Section 6851 case is "of the utmost intimacy." *See Doe v. Ghiorso*, No. 2:24-CV-57, 2024 WL 3511641 (S.D. Ga. July 23, 2024); *Doe v. McCoy*, No. 1:23-CV-3169-MLB, 2024 WL 843908 (N.D. Ga. Feb. 28, 2024). Accordingly, Plaintiffs have met the "utmost intimacy" factor.

The "social stigma" associated with Plaintiffs' claims is *of the type*[40] this Circuit recognizes as "information of the utmost intimacy." *Doe v. Neverson*, 820 F. App'x 984, 988 (11th Cir. 2020) (explaining the Eleventh Circuit has "held that

---

[40] *See* Doc. 92-1 pp. 11-12 (listing specific categories).

'social stigma' is sufficient to warrant proceeding anonymously). In the instant case,[41] "Plaintiff[s] ha[ve] alleged more than an interest in avoiding 'personal embarrassment' or 'disapproval.'" *See Doe v. Sutton*, No. 4:23-CV-01312-SEP, 2025 WL 871656 (E.D. Mo. Mar. 20, 2025) (explaining the Section 6851 plaintiff in *Sutton* suffered anxiety, depression, PTSD, and severe emotional distress and that proceeding under his own name would "exacerbate" these symptoms). In addition to re-inflicting the mental harms incurred at the time of discovering the Defendant's disclosures, Plaintiffs are reasonably fearful that proceeding under their true names would lead to discipline at work or even termination of their employment due to the nature of their careers.[42] By granting pseudonymity, this Court properly recognized that the harm at issue is far greater than mere embarrassment, as the Plaintiffs would face severe social stigma if they were required to proceed under their true names.[43]

Contrary to Defendant's claim, Plaintiffs do not assert that the sexual nature alone warrants pseudonymity.[44] Consistent with Plaintiffs' prior motions, Plaintiffs contend the nature of the intimate visual depictions, the required intimate bodily

---

[41] *See* Doc. 38 at ¶ 5; Doc. 38 at ¶ 37 (Z.P. suffered "extreme emotional distress" and sees a therapist for such trauma); Doc. 38 at ¶ 52 (A.W. has suffered "immense emotional distress," sees a psychiatrist for the trauma, and has increased dosages of medication); Doc. 38 at ¶ 70 (G.C. has suffered "immense emotional distress," missed work obligations, and increased therapy visits); Doc. 38 at ¶ 79 (M.L. has suffered "immense emotional distress" and significantly increased her use of anxiety medication); Doc. 38 at ¶¶ 91-95.
[42] Doc. 2 at p. 3-4; Doc. 39 at p. 3-4.
[43] *See* Doc. 9 at p. 2; Doc. 40.
[44] *See* Doc. 92-1 at p. 11.

descriptions, and the possibility that such information would be publicly linked to Plaintiffs cause this case to go beyond the highly sensitive and personal nature of those involving a general sexual nature.[45] Defendant's claim that cases involving BDSM *per se* do not allow pseudonymity is misplaced.[46] In *Doe v. Sutton*, the court granted pseudonymity for a Section 6851 plaintiff where the underlying conduct squarely involved BDSM. *See* No. 4:23-CV-01312-SEP, 2025 WL 871656 at *1 (E.D. Mo. Mar. 20, 2025). In granting the motion to proceed pseudonymously, the court did not consider the sexual nature but instead focused on the statute and harms rising to a social stigma. *See id.* at *3-5.[47] The voluntary nature of the underlying sexual act is of no significance in determining pseudonymity under Section 6851 statute. *See id.* at *5 n.6 (explaining any distinction between voluntary and involuntary acts is "absent" from 15 U.S.C. § 6851). This Court should similarly maintain pseudonymity.

    *ii.  Severe harm, if required, is concrete and reasonable.*

    Plaintiffs dispute that Eleventh Circuit precedent requires a showing of severe harm to proceed pseudonymously, as *Doe v. Frank* does not require such a

---

[45] *See* Doc. 2 at p. 2; Doc. 39 at p. 2.
[46] *See* Doc. 92-1 at p. 13 (citing *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016).
[47] *See also Doe v. Sutton*, No. 4:23-CV-01312-SEP, 2025 WL 871656 at *4 n.4 (E.D. Mo. Mar. 20, 2025) ("Allegations that the photographs depict Plaintiff engaging in BDSM sexual activities are sufficient for the Court to conclude that they concern a 'sensitive and highly personal' subject matter.") (citation omitted).

showing.[48] Nonetheless, if this Court were to require a showing of severe harm, Plaintiffs can show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *See Doe I v. City of Alabaster*, No. 2:11-CV-3448-VEH, 2012 WL 13088882 at *4 (N.D. Ala. Apr. 26, 2012). As discussed, if required to litigate under their true names, Plaintiffs face further harm to their emotional and mental well-being. Defendant erroneously concludes that Plaintiffs' claimed mental and emotional harms are speculative, yet at the time of this motion, Defendant is actively procuring Plaintiffs' medical records through discovery. Defendant cites *Strike 3 Holdings, LLC v. Doe*, which explains that claims of psychological injury are not speculative if corroborated by evidence from medical professionals. No. CV 25-3733 (JKS) (MAH), 2025 WL 2080948 at * 4 (D.N.J. July 24, 2025). Accordingly, Defendant's assertion that Plaintiffs "fail to substantiate any claims justifying anonymity" is merely conclusory at this stage of litigation.[49]

Defendant cites *Doe v. Doe*, for the proposition that "reputational" harm or "career opportunities" are not sufficient to warrant pseudonymity.[50] However, the plaintiff in that case failed to present any support for pseudonymity at the District

---

[48] Plaintiffs' prior motions for pseudonymity stated a severe harm requirement, under *Doe I v. City of Alabaster*, as an over inclusive measure. *Doe I v. City of Alabaster*, which is persuasive on this Court, inaccurately added a severe harm requirement the *Doe v. Frank* balancing test, which asks whether "the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" 951 F.2d 320, 323 (11th Cir. 1992). The Eleventh Circuit does not require "severe harm" to seek pseudonymity.
[49] *See* Doc. 92-1 at p. 14.
[50] *See* Doc. 92-1 at p. 16.

Court, so the Fourth Circuit could not afford the plaintiff any relief on the merits. 85 F.4th 206 (4th Cir. 2023).

### iii. Pseudonymity is not fundamentally unfair to Defendant.

Defendant contends that permitting Plaintiffs to proceed pseudonymously is fundamentally unfair.[51] That argument fails and fatally ignores the congressionally recognized privacy interests that Defendant himself put at stake.

This Court must consider whether Plaintiffs' anonymity creates a "unique threat" of "fundamental unfairness" to the Defendant. *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011). This "unique" legal standard does *not* include a Defendant experiencing generalized discomfort or grievances. *Id.* Defendant's motion solely relies on abstract, vague appeals to openness, reputational harm, and fairness.[52] Defendant makes such appeals to "basic fairness," claiming a "strong interest in defending himself publicly" and that the "people have a right to know who is using their courts."[53] However, general pleas for openness are insufficient to outweigh strong evidence supporting anonymity. *See In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020). Standing alone, none of Defendant's cited arguments to fundamental unfairness satisfy the standard.

---

[51] *See* Doc. 92-1 at p. 18.
[52] *See generally* Doc 92-1.
[53] Doc. 92-1 at 18.

Defendant's alleged reputational and professional harms still do not constitute "fundamental unfairness."[54] Defendant's alleged harm does not outweigh the real-world, irreversible harm that Plaintiffs would face if their identities were publicly linked to the pornographic material they did not choose to be disseminated online. Intimate images involve a heightened privacy interest. *See Doe v. Towers*, No. CV 25-2077, 2025 WL 2928957 at *2 (E.D. La. Oct. 15, 2025). This privacy concern far outweighs any of Defendant's generalized reputational concerns.

Conversely, Plaintiffs' pseudonymity is not intended as a shield from reputational harm but instead is designed to protect their bodily privacy. Defendant incorrectly characterizes pseudonymity as a tool to avoid primarily reputational consequences.[55] However, Section 6851 reflects Congress's determination that victims of intimate image abuse possess a compelling privacy interest in keeping their identities separate from sexually explicit material. Requesting that this Court continue to provide the Plaintiffs' pseudonymity is not hiding behind a "cloak of anonymity"—as the Defendant believes is unfair because he is required to defend himself publicly—but instead is a necessary and statutorily recognized protective barrier between the public eye and the Plaintiffs' bodies.[56] The Congressionally

---

[54] Doc. 92-1 at p. 23.
[55] *See, e.g.*, Doc 92-1 at p. 21.
[56] Doc. 92-1 at p.18 (citing *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996)).

recognized privacy interest is strong evidence that weighs in favor of the Plaintiffs, and, on balance, the factors favoring pseudonymity, including the "compelling need for privacy in intimate matters, . . . outweigh those favoring public access to judicial proceedings." *Doe v. Towers*, No. CV 25-2077, 2025 WL 2928957, at *3 (E.D. La. Oct. 15, 2025).

Despite Section 6851's primary purpose of protection, Defendant attempts to paint a picture of reputational harm as the driving force behind their continued fight for pseudonymity. Defendant attempts to paint this picture using cases involving economic harm or ordinary employment disputes, which are fundamentally different than the case at hand.[57] Furthermore, Defendant attempts to portray *Doe v. Trs. of Indiana University* as binding "Supreme Court" precedent, but it is merely persuasive Seventh Circuit authority.[58] Despite the Supreme Court denying certiorari and not speaking on the issue, Defendant cited to the Supreme Court reporter and explained that the "U.S. Supreme Court" "provided analysis" and "remanded" the case back to the District Court.[59] *Doe v. Trs. of Indiana Univ.*, 101 F.4th 485, 493 (7th Cir. 2024), *cert denied,* 145 S. Ct. 546 (2024).

Plaintiffs' pseudonymity also will not prejudice Defendant's ability to litigate or defend himself. The Eleventh Circuit explained that the Plaintiffs' anonymity does

---

[57] Doc. 92-1 at p. 21.
[58] Doc. 92-1 at p. 21.
[59] Doc. 92-1 at p. 22.

not prejudice the Defendant when the Defendant knows the true identities of the Plaintiffs, weighing against any claim of "fundamental unfairness." *See In re: Chiquita Brands Int'l, Inc.*, 965 F.3d at 1249 n.8. Here, Defendant knows Plaintiffs' true names, which weighs heavily against any claim of unfairness. As in this case, "the Defendants are aware of the Plaintiffs' identities and thus are not barred from conducting a full range of discovery in building a defense for trial." *Plaintiff B.*, 631 F.3d at 1319. Because discovery will be unaffected, Plaintiffs' pseudonymity does not restrict Defendant's access to evidence or his ability to litigate.

Pseudonymity does not "shroud" the proceedings in secrecy or encourage impropriety, despite Defendant's concern. Defendant references *Brown & Williamson Tobacco Corp. v. F.T.C.* in claiming that "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption."[60] 710 F.2d 1165, 1179 (6th Cir. 1983). However, pseudonymity does not cloak proceedings in secrecy because the public retains access to the facts, filings, and Court rulings. *Doe v. Towers*, No. CV 25-2077, 2025 WL 2928957, at *3 (E.D. La. Oct. 15, 2025). Courts have rejected the argument that anonymity inherently fosters corruption or incompetence, especially where judicial oversight and public filings remain intact. *See, e.g.*, *id.*

---

[60] Doc. 92-1 at p. 19.

Last, the existence of counterclaims doesn't defeat Plaintiffs' right to proceed anonymously. Courts addressing Section 6851 claims have rejected the argument that anonymity becomes unfair merely because Plaintiffs are also counterclaim defendants. *Doe v. Sutton*, No. 4:23-CV-01312-SEP, 2025 WL 871656 at *5 n.5 (E.D. Mo. Mar. 20, 2025) (finding the defendant's contention unconvincing that it "defies the notion of basic fairness" for a plaintiff to remain anonymous while also remaining a counterclaim-defendant). Furthermore, counterclaims do not outright negate Congress's recognition of a victim's privacy interest, as was discussed above.

Overall, Plaintiffs' compelling, congressionally recognized privacy interests, particularly in preventing lifelong association with pornographic material disclosed without consent, outweigh Defendant's generalized policy argument about unfairness, openness, and similar grievances.

*iv. The text of Section 6851 is part of the totality of the circumstances.*

Plaintiffs' claims proceed under Section 6851, which expressly allows them to proceed under a pseudonym, so the statute must be considered as part of the "totality of the circumstances" in this case. The statutory grant of relief in Section 6851 must have some impact on the traditional pseudonymity doctrine, and Defendant fails to cite a compelling reason that the express text of the statute should not be a factor in this Court's discretion. At a minimum, the statute co-exists

alongside Fed. R. Civ. P. 10(a); at a maximum, the statute entirely displaces any need for a balancing test.[61]

Section 6851's purpose of protecting victims contradicts the Defendant's contention that the Section 6851 statute does not "circumvent" the prior precedent defining when pseudonymity is permissible.[62] But this statement does not align with how courts have utilized the discretion to grant pseudonymity in Section 6851 cases, as expressly provided by Congress.[63] Defendant also fails to cite the "Congressional record" they discuss and instead merely states that the statute does not work to "shield litigants."[64] This is patently false. The statute was initially introduced to Congress as the "Intimate Imagery and Privacy Protection Act of 2020." S. 4994, 116th Cong. (2020). This legislative history evinces the Congressional intent to protect the *privacy* of victims of nonconsensual distributions of their intimate imagery, allowing them to proceed pseudonymously to vindicate their claim. The 2020 bill and the 2022 enacted statute both show that claims involving intimate imagery deserve special protections for the victims. *See id.*; 15 U.S.C. § 6851. Such

---

[61] The Rules Enabling Act provides that Fed. R. Civ. P. "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Federal Rules that regulate substance are violative of the act. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (plurality opinion). Reading § 6851 to displace Rule 10(a) avoids a conflict with the Rules Enabling Act. Although this Court need not decide this issue to rule favorably for Plaintiffs, this is another reason Plaintiffs prevail. *See Doe v. Towers*, No. CV 25-2077, 2025 WL 2928957, at *3 (E.D. La. Oct. 15, 2025) (declining to decide whether § 6851 displaces balancing interests).

[62] *See* Doc. 92-1 at p. 3.

[63] *See infra* note 28 (collecting cases).

[64] *See* Doc. 92-1 at p. 3.

special protections remove Section 6851 cases from matters involving sexual assault, employment, public databases and registries, commercial disputes, and other cases cited by Defendant in support of his position.

The Defendant's position also fails because, as discussed in the sections above, the enacted statute provides "Preservation of Anonymity" as a form of relief for victims proceeding under Section 6851. *See* 15 U.S.C. § 6851(b)(3)(B). While reasonable minds can disagree as to whether the pseudonymity is *per se*, no reasonable mind can ignore this grant of protection as part of the totality of the circumstances the Eleventh Circuit considers. After all, courts must "carefully review *all* the circumstances of a given case . . .." *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020). Congress recognized the unique harms at issue in these types of cases. This Court should similarly recognize those concerns as it did by granting Plaintiffs' motions to proceed initially.[65]

### III.    In the alternative, even if this Court finds that Z.P. no longer warrants pseudonymity, all other Plaintiffs should retain this protective shield.

Although Plaintiffs do not concede that Z.P.'s conduct warrants removal of her pseudonymity, if this Court makes this finding, the other Plaintiffs have made no social media posts or otherwise public comments that warrant removing pseudonymity. First, the Defendant fails to cite to a single comment or post made by

---

[65] *See* Docs. 9, 40.

the remaining Plaintiffs that includes both their true name and a specific mention of any facts of this case, nor do any exist. Instead, Defendant's citations center on Z.P.'s activities and therefore, the other Plaintiffs should retain the protective shield of pseudonymity despite any finding involving Z.P. Second, the other Plaintiffs left unmentioned by Defendant—A.W., M.L., and G.C.—continue to have emotional, reputational, and safety concerns that will become heightened if their identities are revealed and the graphic, intimate details are therefore associated with them. Below, the limited media involvement of A.W., M.L., and G.C. are described in detail.

Precedent suggests that the anonymity of plaintiffs requires review on an individual basis, with courts carefully considering the circumstances of each plaintiff to determine whether anonymity is warranted. See *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) (this individualized analysis is necessary because the factors justifying anonymity can vary significantly between plaintiffs, even within the same case). Therefore, each Plaintiff will be analyzed in turn. A.W. posted a single comment with her true name on the private Facebook group.[66] In the comment, she briefly talked about her experience dating the Defendant.[67] Her comment mentioned no facts of this case or the underlying lawsuit, only limited information pertaining to her personal relationship with the Defendant.[68] This comment could lead no

---

[66] Doc. 61 at para. 25.
[67] Doc. 61 at para. 25.
[68] Doc. 61 at para. 25.

reasonable person to connect her with this lawsuit, and especially not with the underlying graphic depictions that Defendant continues to repost on the Internet, because her comment mirrors the barrage of other victims within the same comment section sharing the exact same experience.

M.L.'s online activity is even less than A.W.'s. While M.L. has commented three times with her true name, she never mentions any facts or even her previous relationship with the Defendant.[69] Instead, her comments consist of vague responses to anonymous users such as "please message me. Please."[70] This, again, could lead no person to be able to connect her comment on this Facebook group or her true name to the case at bar and especially not to the underlying graphic depictions that Defendant shared without consent. The remaining Plaintiff, G.C., never posted anything online. Therefore, there is no argument to be made that she has so widely publicized her true name to alter this Court's previously granted pseudonymity.

## CONCLUSION

If this Court were to require Plaintiffs to proceed under their true names, the relief under Section 6851 would be essentially moot. Once a party's "true name is revealed on the public docket, the toothpaste is out of the tube," and the action cannot be undone, even with the help of an appellate court. *See Doe v. Massachusetts Inst.*

---

[69] Doc. 61 at para. 38.
[70] Doc. 61 at para. 38.

*of Tech.*, 46 F.4th 61, 66 (1st Cir. 2022). Of course, the statutory damages under the statute would remain available, but any injunctive relief aimed at preventing the disclosure of the plaintiff's identity would become ineffective.

This Court must also consider the potential chilling effect on future victims if the Plaintiffs in this matter were required to litigate under their true names, thereby incurring the exact harm the statute is designed to prevent. *See Massachusetts Inst. of Tech.*, 46 F.4th at 66 (recognizing "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated" as a category of cases where "anonymity ordinarily will be warranted"). Accordingly, this Court should maintain its Orders permitting Plaintiffs to proceed pseudonymously,[71] and this Court should reject Defendant's attempts to disregard the text of the statute. The Court is using its discretion to effectuate the Congressional purpose of protecting victims. If, as Defendant wishes, this Court sets the precedent of forcing Section 6851 victims to litigate under their true names, the chilling effect would swallow the statute and its remedies.

Because neither the circumstances nor the law has changed since this Court granted pseudonymity, this Court should deny Defendant's Motion to Vacate.

---

[71] *See* Docs. 9, 40.

Respectfully submitted,

/s/ Anna Jay
Law Student Intern

/s/ Sara Philp
Law Student Intern

/s/ Hannah N. Palmer
Law Student Intern

/s/ Jacob P. Steinmetz
Law Student Intern

/s/ Haley Noele Follmer-Burnett
Law Student Intern

/s/ Yuri R. Linetsky
ASB-3088-B20W

/s/ Ricky T. Chambless
ASB-5879-S77R

CIVIL LAW CLINIC
THE UNIVERSITY OF ALABAMA SCHOOL OF
LAW
Box 870392
Tuscaloosa, Alabama  35487-0392
Telephone:  205.348.4960
Facsimile:  205.348.6851
Email:  anna.jay@law.ua.edu

haleynoele.follmerburnett@law.ua.edu
        hannah.palmer@law.ua.edu
        jack.steinmetz@law.ua.edu
        sara.philp@law.ua.edu
        ylinetsky@law.ua.edu
        rchambless@law.ua.edu

Law Student Interns and Attorneys for
Plaintiffs Z.P., A.W., G.C, & M.L

## **CERTIFICATE OF SERVICE**

A copy of this document has been served on the date of filing, by operation of the CM/ECF system, to all attorneys for Defendant Errol Gregory Bryant.


/s/ Yuri R. Linetsky
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾