## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **Z.P., A.W., G.C., M.L.,** | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 7:24-CV-00151-ACA** |
| | ) | |
| **ERROL GREGORY BRYANT,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |
| | ) | |

---

## DEFENDANT/COUNTER-PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION TO VACATE THE COURT'S ORDERS
## GRANTING PLAINTIFFS/COUNTER-DEFENDANTS'
## MOTIONS TO PROCEED PSEUDONYMOUSLY

---

**COMES NOW,** Defendant/Counter-Plaintiff, Errol Gregory Bryant, (hereinafter, "Bryant"), by and through the undersigned counsel of record, and hereby replies in support of his motion to vacate moves this Honorable Court's Orders granting Plaintiffs/Counter-Defendants' (hereinafter, "Plaintiffs") Motions to proceed pseudonymously, and as grounds therefor, states as follows:

## I.    INTRODUCTION

The presumption of open judicial proceedings is a cornerstone of our judicial system and a constitutional tradition older than the Republic itself. It reflects a fundamental truth about the legitimacy of the judicial process.

> Philosopher and jurist Jeremy Bentham said that "publicity is the very soul of justice." Fortunately, court proceedings have been presumptively open to the public for all of our nation's history. The public trial is a foundational safeguard of liberty

and democratic self-governance. Through it, "We the People" can both hold wrongdoers accountable and guard against government overstepping.[1]

Plaintiffs' opposition brief confirms exactly why this Court should vacate its prior orders granting pseudonymity. Plaintiffs voluntarily chose to identify Bryant by name, discuss the alleged conduct publicly, and associate their real identities with the accusations they now claim are too sensitive to appear on the public docket. Such conduct is fatal to their request for continued anonymity. This is not a close case. Plaintiffs' brief is heavy on rhetoric and selective citations, but conspicuously light on binding authority supporting anonymity, especially after public disclosures of such intimate information have already been publicized. The Eleventh Circuit does not permit that result.

Pseudonymity is not a one-way ratchet. It is not a tactical option that Plaintiffs may invoke in court while abandoning it in public forums when publicity serves their interests. Pseudonymity is an exceptional remedy grounded in necessity, not convenience. *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir. 1992). Plaintiffs' conduct represents precisely the type of strategic inconsistency and gamesmanship that courts reject. Plaintiffs cannot weaponize anonymity to gain asymmetric advantage—publicly accusing Bryant under their own names while demanding that the Court conceal those same identities once litigation consequences attach. Having rung the bell themselves, Plaintiffs now ask this Court to pretend it never sounded.

Because Plaintiffs are already publicly linked to this litigation—voluntarily or otherwise— any remaining privacy interest is severed and anonymity ceased to be legally available. *Plaintiff B v. Francis*, 631 F.3d 1310, 1316–17 (11th Cir. 2011). The Court's orders granting pseudonymity are due to be vacated.

---

[1] Hon. Jennifer Walker Elrod, Hon. Don Willett & Brian M. Miller, *Walking in the Light: On the Overuse of Sealing in Court Records*, 100 The Advoc. (Texas) 27, 27 (2022).

## II.     PLAINTIFFS ARE ALREADY LINKED TO THIS LITIGATION.

### a.  Plaintiffs' Voluntary Public Disclosures Are Dispositive.

Plaintiffs did not merely risk incidental exposure; they affirmatively placed their identities into the public sphere in connection with the allegations at issue. Bryant's production[2] details multiple instances in which Plaintiffs—or posts discussing Plaintiffs by name and image— identified Bryant and described the alleged conduct in online forums designed for dissemination. These disclosures render continued anonymity legally indefensible.

### b.  Plaintiffs' "Private Facebook Group" Argument Is Factually and Legally Unsound.

Plaintiffs' efforts to characterize these disclosures as "limited"[3] or "private"[4] only underscore the point. The posts are visible to the over 50,000 group members[5] and intended to share information about Bryant. It does not matter who the recipient is,[6] how many times they publicized such information,[7] whether via personal cell phone,[8] or megaphone. After all, M.L. seeks redress for allegations of "only one" disclosure but has not diminished the publicity for that purported disclosure with the same caveat. And to be sure, "only one" disclosure is more than "enough"[9] to effectuate a proverbial game of "telephone" or achieve viral status.  In fact, there needs only to be one.

---

[2] Over 900 pages plus audio recordings. To date, Plaintiffs have produced 39 pages.
[3] Doc. 97 at p. 6.
[4] Doc. 97 at p. 7.
[5] One of two groups: <u>Are We Dating The Same Guy? | Birmingham / Montgomery / Alabama</u>.
[6] Doc. 97 at p. 7, fn. 10.
[7] Doc. 97 at p. 6.
[8] Doc. 97 at p. 7.
[9] Doc. 97 at p. 7.

Plaintiffs' insistence that their disclosures occurred in a "private" or "female-only" Facebook group is both factually disingenuous and legally irrelevant.[10] Factually, Plaintiffs acknowledge the group existed to circulate information about men in the community and included a large audience.[11] Such groups are designed for dissemination, not confidentiality.[12] Courts routinely reject the fiction that posting accusations to large online forums preserves privacy.[13]

Legally, audience size does not control. What matters is that Plaintiffs identities are already connected with the allegations. A Plaintiff cannot manufacture privacy by choosing a "semi-closed" forum and then claiming the disclosures somehow "do not count." Federal Courts have never endorsed such a loophole.

Courts uniformly hold that once a Plaintiff is associated with the subject matter of the litigation, anonymity no longer protects any legitimate privacy interest. At that point, anonymity serves only to distort the adversarial process and shield Plaintiffs from accountability. See *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996); *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89 (D.D.C. 2015). Once Plaintiffs' identities were publicly linked to the allegations, anonymity ceased to serve any legitimate privacy interest and instead functions solely as a litigation advantage.

---

[10] See also, *Davis v. HDR Inc.*, 652 F. Supp. 3d 1087, 1097 (D. Ariz. 2023) ("Plaintiff has failed to plausibly allege that her electronic communications posted into the private Facebook groups were not readily accessible by the general public."), appeal dismissed, No. 23-15233, 2023 WL 5367499 (9th Cir. May 10, 2023).

[11] Doc. 97 at p. 11.

[12] See, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) (discussing the factors affecting the weight of the privacy interest involved which includes the question of whether the Plaintiffs identity has, thus far, been kept confidential.)

[13] See, e.g., *Margolies v. Rudolph*, No. 21-cv-2447-SJB, 2022 WL 2062460, at *7 (E.D.N.Y. June 6, 2022) (concluding that a private Facebook group with over 14,000 members "has the character of 'a place open to the public,' because it has no meaningful barriers to entry—to join one need only agree to the rules of the group—and its members appear to be free to speak online about any subject openly"); *Doe v. Weston & Sampson Eng'rs, Inc.,* 743 F. Supp. 3d 751, 763 (D.S.C. 2024), ("Indeed, social media sites are now regarded as spaces for public discourse, and information posted publicly to social media sites cannot reasonably be expected to be considered private."); *Packingham v. North Carolina*, 582 U.S. 98, 118, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017) (Alito, J., concurring) (footnote omitted). (…the Supreme Court has suggested that " 'social media' sites are the 21st century equivalent of public streets and parks."); see, e.g., *Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019), as amended (Jan. 9, 2019) (explaining governmental social media sites "bear the hallmarks of a public forum" by constituting a space for unfettered "public discourse").

### c. Plaintiffs' Authorities Are Fact-Specific and Inapposite.

Plaintiffs rely heavily on district court cases granting anonymity under Section 6851.[14] None involved Plaintiffs who were already publicly linked to the Defendant and the allegations in the case. That factual distinction is dispositive. Where courts deny anonymity, they do so precisely because the Plaintiff's identity is already publicly linked to the allegations. Plaintiffs' brief ignores this line of authority because it cannot be reconciled with their self-serving narrative.

Where courts have denied anonymity, they have done so for precisely this reason: once the Plaintiff's identity is already publicly linked to the allegations, anonymity no longer serves a legitimate purpose.

The screenshots included herein reflect real-name identification, photographs, and commentary connecting Plaintiffs to the allegations in this case. These are not third-party reconstructions or speculative interpretations; they are Plaintiffs' own posts. The screenshots confirm that Plaintiffs' identities are already publicly linked to the allegations, and that continued pseudonymity serves no legitimate purpose.

The screenshots further demonstrate Plaintiffs' willingness—and proclivity—to publicize the allegations outside of judicial proceedings. By posting identifying information in online forums designed for discussion and dissemination, Plaintiffs have shown that they do not treat this information as confidential[15] or closely guarded. This conduct strongly suggests that the allegations have been, and will continue to be, shared through additional channels, including other online forums, text messaging, and word-of-mouth communications. Courts assessing pseudonymity properly consider whether a Plaintiff has herself treated the information as private;

---

[14] See also, Section III. b. *infra.*

[15] See, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) (discussing the factors affecting the weight of the privacy interest involved which includes the question of whether the Plaintiffs identity has, thus far, been kept confidential.)

Plaintiffs' own conduct answers that question decisively here. See *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (denying anonymity where Plaintiff failed to show information was treated as confidential); *Plaintiff B v. Francis*, 631 F.3d 1310, 1316–17 (11th Cir. 2011) (noting that voluntary disclosures weigh heavily against anonymity); *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (Plaintiff's prior public discussion of allegations defeats claim of privacy).

Bryant appreciates Plaintiffs' distinction as to his reliance on *Doe v. N. Carolina Cent. Univ.,* No. 1:98CV01095, 1999 WL 1939248 (M.D.N.C. Apr. 15, 1999) that it was Plaintiffs' ***attorney's*** statements to the media at issue.[16] Bryant clarifies that those statements too have been made public in this case:











---

**d.   Public Availability—Not Authorship—Controls the Anonymity Analysis.**

Plaintiffs improperly focus on who made the information public. That distinction is legally irrelevant. What matters is that the information is already public. See *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (denying anonymity where identity was already publicly associated with allegations); *Doe v. Coll. of New Jersey*, 997 F.3d 489, 494 (3d Cir. 2021)(court "cannot anonymize a litigant's already publicized identity" as "[t]hat bell cannot be unrung"); *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 66 (1st Cir. 2022) ("Once the litigant's true name is revealed on the public docket, … the media or other interested onlookers may take notice in a way that cannot be undone . . . down the road.").

As a multi-Plaintiff action, Plaintiffs attempt to cabin responsibility for public disclosure to individual actors, but that distinction is immaterial in a case involving multiple Plaintiffs. Even assuming *arguendo* that a particular Plaintiff did not personally disclose her own identity, nothing prevents another Plaintiff from linking her to this litigation.



In such circumstances, anonymity is inherently unstable and cannot be preserved through judicial order as a matter of law or practicality. Courts do not maintain pseudonymity where Plaintiffs' own conduct—whether individual or collective—renders identification readily apparent. The Court is not required to parse responsibility for disclosure when the practical effect is the same—Plaintiffs' identities are already linked to the allegations, rendering continued pseudonymity illusory.

With such obvious proclivity to share the details of this litigation, one can only imagine what else has been shared via all other forms of communication. Here, in just one of the misrepresentations promoted by Plaintiffs, the "redacted"[17] first *two* pages of the Complaint posted by Plaintiff does indeed contains identifying information.



---

[17] Doc. 97 at p. 8. "For example, Defendant cites to an anonymous posting of the first page of a Complaint, which contained *no identifying information* because the following was redacted: case number, plaintiffs' names, defendant's name, and any other potentially identifying information." (emphasis in original).

And the posts and comments thereto provide even further detail.



\*     \*     \*     \*



\*     \*     \*     \*

In their misreading of Bryant's analysis of *Doe v. Indiana Black Expo, Inc*., 923 F. Supp. 137, 142 (S.D. Ind. 1996),[18] Plaintiffs contend Bryant "falsely exaggerate Plaintiffs' conduct"[19] in the "only non-anonymously-posted comments" in "relation to this lawsuit" which "are all contained under one post about the Defendant within a private, female-only Facebook group."[20]

---

[18] Doc. 92-1 at 5.
[19] Doc. 97 at p. 6.
[20] Doc. 97 at p. 6.

This is blatantly misleading as the "one post" included multiple comments with Plaintiffs' full photograph and name, and enough information to render "the cat out of the bag."[21]

Plaintiffs' attempts to post anonymously fail too. The first post below, which includes a Plaintiffs full name and photograph, is the same, verbatim, as the second post, which was posted by another "anonymous" commenter in another group. One need not be a gumshoe to determine authorship.




Not to mention, the same recycled photograph of Bryant is used on each of the four Facebook posts:



Notably, none of the **hundreds** of comments on any of the **four** Facebook posts with a combined audience of approximately 60,000 people, and growing daily, for *each* post are authored by anyone sharing Plaintiffs' initials, except two that, without question, indicate the commenters were not connected to Bryant or the allegations of the instant complaint.




However, the comments below, with Plaintiffs' identifying information, can readily link these individuals.



*     *     *     *

With this information alone, the redactions and any limitations are pointless.



And although the subject information referenced in the comments below has not been produced or has been conveniently lost,[22] if the above clues are not enough to put this puzzle together, any information will be made available, according to Z.P.:



---

[22] *Z.P., et al. v. Errol Gregory Bryant*, No. 7:24-cv-151-ACA, Transcript of Motion to Compel Hearing at p. 24:8-13 (N.D. Ala. Dec. 5, 2025) "THE COURT: I'm sorry. Did you instruct the Plaintiffs that they were to preserve any and all correspondence; anything that could be used as evidence in this case?
MR. LINETSKY: I don't believe we gave them those specific instructions."

With this information, any basic search will readily identify the parties. Plaintiffs' purported anonymity is therefore illusory.

### III.    SECTION 6851 DOES NOT CREATE A SAFE HARBOR FOR ABSOLUTE ANONYMITY.

#### a.    The Statute Is Discretionary and Does Not Override Rule 10(a).

Plaintiffs repeatedly attempt to elevate Section 6851 into a near-mandatory anonymity provision. The statutory text forecloses that argument. Congress used the word "may," not "shall." Section 6851 preserves judicial discretion and does not displace Rule 10(a)'s requirement that parties be named. See Fed. R. Civ. P. 10(a); *Plaintiff B v. Francis*, 631 F.3d at 1315. Nothing in the statute grants Plaintiffs the right to proceed anonymously when their identities are publicly connected with the allegations. Plaintiffs' interpretation would convert discretionary relief into a categorical entitlement, contrary to basic principles of statutory construction.

No interpretation of congressional intent in the construction of the statute could reasonably lead to the conclusion that pseudonymity should be awarded to Plaintiffs who have publicly fabricated very serious allegations, as Plaintiffs have here. If so, the American people should brace *for years* of prejudicial, unfair, and imbalanced hardship should they happen to find themselves in Bryant's shoes.   Plaintiffs' suggestion that Section 6851 effectively nullifies longstanding pseudonymity doctrine is fortunately unsupported by the text, legislative history, or binding precedent. District court cases granting anonymity under Section 6851 are fact-specific and discretionary—not categorical endorsements of awarding anonymity.

The burden rests on Plaintiffs to demonstrate a substantial privacy interest sufficient to overcome the strong presumption of open judicial proceedings, and conclusory assertions are insufficient as a matter of law. See *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir. 1992); *Plaintiff*

*B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011). Plaintiffs here have provided no evidence justifying anonymity outside their bare and conclusory assertions. This is not enough.

### b. Plaintiffs' Cited Anonymity Cases Are Procedurally Defective and Non-Binding.

The cases Plaintiffs cite as having "followed suit"[23] in granting anonymity are unpersuasive. Most were unopposed, *ex parte*, or decided without adversarial briefing.[24] Others are non-controlling district court opinions that did not involve voluntary public disclosures, discovery obstruction, or changed circumstances. While most of the cases Plaintiffs cited involved

---

[23] Each case cited by Plaintiffs includes the following, "The Court has examined the few § 6851 cases addressing this issue, and none denied the request to proceed under a pseudonym" or not breaking from the "trend."

[24] *Doe v. Parsons*, No. 2:24- CV-00075, 2024 WL 5705632 (M.D. Tenn. Dec. 16, 2024) (Defendant pled guilty and was criminally prosecuted relative to image disclosure at issue; Plaintiff's motion was unopposed and dismissed the need for a balancing test. See Doc. 97 at p. 18. Therefore, no analysis as to a determination of whether the information was of "the utmost intimacy" was done. Thus, any contention that the photographed depictions in Parsons satisfy the utmost intimacy factor is misplaced. See Doc. 97 at p. 12. The Court found Plaintiff's arguments persuasive—as Plaintiff's arguments were the only arguments.); *Williams v. Williams,* No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642, at *5 (S.D. Miss. May 31, 2024), (the images dealt with homosexuality and rape of the Plaintiff, (see Doc. 92- at 12 and 19.), showed Plaintiff's face, and were made without Plaintiff's consent while Plaintiff was intoxicated. Defendants offered no evidence suggesting that Doe's identity had been publicly linked to this dispute. While Defendant responded to Plaintiff's initial *ex parte* motion and not the second motion, he cited no legal authority. Thus, Plaintiff's motions were unopposed. See *U.S. Steel v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007)(where appellants provided no legal authority to support their argument nor any elaboration upon their argument, the court held that it need not address the "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc. v. Fulton County, Ga.,* 242 F.3d 976, 987 n.16 (11th Cir. 2001 )(holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987)(stating that an argument made without citation to authority is insufficient to raise an issue before the court)); *Doe v. Towers*, No. CV 25-2077, 2025 WL 2928957 (E.D. La. Oct. 15, 2025) (*ex parte* motion; The Court ultimately ordered anonymity for both parties.); *Doe v. Stevenson*, No. 1:24-CV-02778, 2025 WL 1165660, at *1 n.1 (N.D. Ill. Apr. 3, 2025) (*ex parte* motion, unopposed, and no analysis was made by the Court as to pseudonymity); *Roe v. Penns Grove-Carney's Point Reg'l Sch. Dist.,* No. CV 24-10827 (CPO)(EAP), 2025 WL 723606 (D.N.J. Mar. 5, 2025) (unopposed, Plaintiff was a minor, and the case did not involve 15 U.S.C. § 6851); *Doe v. Campbell*, No. 3:25-CV-836, 2025 WL 2824905 at *1 (M.D. Tenn. Oct. 3, 2025) (unopposed, Defendant was criminally charged, involved religion, and *actual, "expected"* retaliation and threats of violence shown by "evidence on the record."); *Doe v. Ghiorso*, No. 2:24-CV-57, 2024 WL 3511641, (S.D. Ga. July 23, 2024). (unopposed); *Doe v. McCoy*, No. 1:23-CV3169-MLB, 2024 WL 843908 (N.D. Ga. Feb. 28, 2024) (unopposed); *Doe v. Willis*, No. 23-CV-02171-REB-SBP, 2023 WL 6903016, at *2 (D. Colo. Sept. 22, 2023) (unopposed); *C.V. v. Carminucci*, No. 2:24- CV-2096 (JXN) (SDA), 2024 WL 3983007 (D.N.J. Aug. 28, 2024) (unopposed); *Doe v. Unknown Party,* No. CV-24- 00252-PHX-DLR, 2024 WL 492231, at *4–5 (D. Ariz. Feb. 7, 2024) (unopposed).

Additionally, Plaintiffs improperly attempt to use *Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011) to bolster their position, claiming the case was distinguished by the involvement of pornography, (See Doc. 97 at p. 21 and 22); however, the ruling was due to the involvement non-consensual sexual activity, minors, criminal activity, and homosexuality. Moreover, Defendants did not claim any prejudice from Plaintiffs' use of fictitious names.

sexual depictions, **all** the cases involved one or more specific factors which served to heighten Plaintiff's privacy interests—**none** of which is present in the instant case. And to be sure, "following suit" and "not break[ing] step"[25] falls categorically short of a proper analysis of the law. Such cases do not establish a rule of law and cannot overcome the Eleventh Circuit's presumption of openness. See *Frank*, 951 F.2d at 323. None bind this Court or justify continued anonymity here. Plaintiffs' reliance on these authorities is misplaced.

Defendant most certainly has presented multiple reasonable arguments "for this Court to break step."[26] The most persuasive of which is that the allegations are patently false. Section 6851 cannot reasonably stand for a preservation of anonymity of a Plaintiff whose allegations are fabricated or the idea that the mere filing of a lawsuit under this section means all Defendants are not only presumed guilty of the allegations, but also such Defendants are not entitled to privacy or protection against unjust prejudice. This assertion would supersede the need for a judge, jury, evidence, and a trial; a mere filing of a lawsuit would serve to substantiate the allegations as fact. Such a contention is not only ludicrous—it is terrifying.

And while the so-called "trend" noted in Plaintiffs cited authority had not been broken in the mere two years of the young statute's enactment, it has now. *Doe v. Maloit*, No. 24-CV-02383-PAB-KAS, 2025 WL 358134 (D. Colo. 2025).

### c. Plaintiffs' Citations Misstate and Misapply Governing Law.

Finally, Plaintiffs' brief selectively cites authority while omitting controlling limitations imposed by the Eleventh Circuit. Plaintiffs portray anonymity as routine rather than exceptional, ignore the requirement of a specific evidentiary showing, and fail to acknowledge that courts regularly deny anonymity in cases involving sexual allegations. See *Frank*, 951 F.2d at 324; *Doe*

---

[25] Doc. 97 at p. 18.
[26] Doc. 97 at p. 18.

*v. Neverson*, 820 F. App'x at 987–88. This selective presentation materially misrepresents the law and underscores Plaintiffs' inability to meet their burden under the applicable standard.

### d. Plaintiffs' Position Conflicts With the Statute's Plain Language.

Plaintiffs' §6851 argument is internally inconsistent. The statute contemplates liability only where images are publicly[27] linked to an identifiable individual.[28] If the images are not publicly linked to Plaintiffs—as they now suggest to justify anonymity—then Plaintiffs' claims fall outside the core conduct of the statute. The statutory elements and legislative scheme presume an identifiable victim, and the public recognition of the conduct that the statute condemns. Plaintiffs cannot invoke both the statutory protection—which presuppose their identifiability and public disclosure—*while also* insisting upon concealment of their identities in the litigation that arises from it. Plaintiffs cannot rely on statutory protections premised on public identifiability while simultaneously claiming anonymity is required because such identifiability does not exist. Courts reject such attempts to use anonymity as both sword and shield. See *Francis*, 631 F.3d at 1316.

### IV. PLAINTIFFS FAIL THE ELEVENTH CIRCUIT BALANCING TEST AS A MATTER OF LAW.

### a. This Case Does Not Require Disclosure of Information Justifying Anonymity.

The Eleventh Circuit construes the "utmost intimacy" factor narrowly. See *Doe v. Frank,* 951 F.2d at 324. Sexual subject matter alone does not suffice. See *Doe v. Sutton*,[29] No. 4:23-CV-01312-SEP, 2025 WL 871656, at *4 (E.D. Mo. Mar. 20, 2025) (And "the 'sexual' nature of the alleged wrongdoing here' is 'not necessarily sufficient' to warrant pseudonymity." (citation omitted)).

---

[27] 15 U.S.C.A. § 6851(a)(4).
[28] 15 U.S.C.A. § 6851(a)(3).
[29] Cited by Plaintiffs.

Courts in this Circuit routinely deny anonymity in sexual assault and sexual misconduct cases, even where Plaintiffs allege emotional distress and embarrassment. See *Doe v. Frank*, 951 F.2d at 324; *Doe v. Neverson*, 820 F. App'x 984, 987–88 (11th Cir. 2020). Plaintiffs' attempt to elevate their claims above binding precedent rests on rhetoric and their preferred characterization of the allegations—rather than law.

### b. Plaintiffs' Claims of "Utmost Intimacy" Are Conclusory and Unsupported.

Plaintiffs' assertion that this case involves matters of "utmost intimacy" is purely conclusory. They offer no evidence, declarations, or specific facts demonstrating an actual risk of harm, nor do they allege any concrete threat, harassment, or retaliation arising from disclosure of their identities. The Eleventh Circuit has made clear that "[a] Plaintiff must show a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315–16 (11th Cir. 2011). Generalized fears of embarrassment or emotional distress are insufficient, and courts routinely deny anonymity where Plaintiffs fail to allege a real, particularized threat. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). Plaintiffs' failure even to allege an actual physical threat is dispositive.[30]

Here, Plaintiffs' allegations merely mirror the statutory language of 15 U.S.C. §6851 and are not actual descriptions of what the photographs depict. Plaintiffs claim that "Disclosing Plaintiff's identity *could* link her to factual details about her intimate image[31]…" yet Plaintiffs provide nothing to substantiate these claims over what has already been linked.

---

[30] See *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("…a Plaintiff should be allowed to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger or physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the Plaintiff's identity.")
[31] Doc. 97 at p. 15.

### c. Plaintiffs' Attempt to Distinguish Between "Allegations" and "Graphic Content" Is Meritless.

Plaintiffs argue that anonymity remains justified because they did not post the alleged images themselves or provide explicit detail. That argument is a red herring.

The alleged harm Plaintiffs claim to fear is association[32]—association of their identities with the alleged conduct and images. Plaintiffs themselves created that association. Courts do not require Plaintiffs to post evidentiary exhibits on social media before anonymity is forfeited. It is enough that Plaintiffs voluntarily tied their real names to the allegations. See *Doe v. Weston & Sampson Engineers, Inc.*, 743 F. Supp. 3d 751 (D.S.C. 2024).

Plaintiffs claimed harms consist of generalized emotional distress, reputational concerns, and speculative employment consequences. See *Doe v. Neverson*, 820 F. App'x 984, 987–88 (11th Cir. 2020). Those interests are insufficient as a matter of law.

### d. Plaintiffs' "Compounding Injury" Theory Regarding Images Is Speculative and False.

Plaintiffs argue that being connected to the alleged images would compound their injuries, but that argument rests on speculation and a misunderstanding of the litigation process. Plaintiffs have produced none of the purported images or links to the "actual pornography itself"[33] in discovery. Even if such images were produced, they would not become public or appear on the public docket absent a court order.[34]

To the extent Plaintiffs now allege Bryant continues to disseminate such information or has advertised via a FetLife post that he had "[c]ontent available for sale,"[35] this information is

---

[32] Doc. 97 at p. 12.
[33] Doc. 97 at p. 12.
[34] But see Doc. 60, filed May 22, 2025.
[35] Doc. 97 at p. 15.

discoverable and gravely overdue.[36] Regardless, these claims are still not supported by any evidence of depictions specific to *any* Plaintiff. See *Jane Doe v. Pentz*, Case No.: 05455-MRA-MAR (C.D. Cal. December 31, 2024) ("…the Court is not persuaded that Plaintiff's allegations amount to an "actual threat of any harm against her specifically.")

Discovery materials are not publicly filed as a matter of course and are routinely protected. See *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001). Plaintiffs' claim of inevitable public exposure is therefore unfounded.

## V.    THE CURRENT TOTALITY OF CIRCUMSTANCES WARRANTS VACATUR OF PSEUDONYMITY.

### a.   Pseudonymity Has Affirmatively Obstructed Discovery.

Although Plaintiffs argue that pseudonymity causes no prejudice because Defendant knows their identities, the record proves otherwise. Plaintiffs have repeatedly invoked pseudonymity in discovery objections to withhold information on the ground that it would reveal their identities. Plaintiffs' contention that "conducting a full range of discovery" which "will be unaffected" because Defendant is aware of Plaintiffs identities is laughable, especially given Plaintiffs' claims of fear of severe retaliation from Bryant himself[37] in support of their baseless objections citing this Court's pseudonymity orders as justification for providing no response to requests for identifying information. Even with Defendant's knowledge of Plaintiffs identities, Plaintiffs have repeatedly used their pseudonymity to obstruct any semblance of a "full range of discovery."[38]

---

[36] *Z.P., et al. v. Errol Gregory Bryant*, No. 7:24-cv-151-ACA, Transcript of Motion to Compel Hearing at p. 20:14-16 (N.D. Ala. Dec. 5, 2025) "The Plaintiff does not have the luxury of deciding when they're going to disclose information. The rules of civil procedure set that out."

[37] *Z.P., et al. v. Errol Gregory Bryant*, No. 7:24-cv-151-ACA, Transcript of Motion to Compel Hearing at p. 10:20-25 (N.D. Ala. Dec. 5, 2025) "…They were also extremely, extremely hesitant to give further information that they thought would put their personal—their persons in jeopardy of being hurt further…They were scared of Mr. Bryant…"
*Z.P., et al. v. Errol Gregory Bryant*, No. 7:24-cv-151-ACA, Transcript of Motion to Compel Hearing at p. 16:6-8 (N.D. Ala. Dec. 5, 2025) "Our clients here believe that if that information was given they would be harassed continually by Mr. Bryant."

[38] Doc. 97 at p. 29.

This tactic has materially hindered discovery in precisely the manner courts identify as prejudicial, even where a Defendant is aware of the Plaintiffs' names. See *Doe v. Neverson*, 820 F. App'x 984, 988 (11th Cir. 2020) (recognizing unfairness where anonymity skews the litigation process). "It is also relevant to consider whether the Defendants are being forced to proceed with insufficient information to present their arguments against the Plaintiff's case." *Doe v. Campbell*, No. 3:25-CV-836, 2025 WL 2824905 at *1 (M.D. Tenn. Oct. 3, 2025).

 In practice, this has hindered discovery in precisely the same manner as if Bryant did not know who Plaintiffs were at all. Had Plaintiffs not hidden behind pseudonymity, this litigation would not have remained stagnant and at a standstill for over six months and the Courts ordered circumstances would have been met. Pseudonymity here has therefore operated as a substantive litigation shield, not a nominal protection, and has materially impaired Bryant's ability to obtain discovery and prepare his defense.

### b. Changed Circumstances Are Apparent From the Docket and Discovery Record.

Apart from Bryant's Counterclaim, changed circumstances warranting reconsideration are also evident on the face of the record. The Court's Scheduling Order required discovery to be completed by November 21, 2025. Yet, discovery remains far from complete—not because of Bryant's conduct, but due to Plaintiffs' obstruction, evasive responses, and heavy reliance on pseudonymity to resist disclosure. Courts routinely recognize that procedural developments— particularly those affecting discovery fairness—constitute changed circumstances justifying vacatur of anonymity orders. See *Doe v. Weiss*, 2015 WL 136479, at *3 (N.D. Ala. Jan. 9, 2015). Plaintiffs cannot credibly maintain that anonymity remains harmless when it has directly contributed to missed deadlines and discovery breakdowns. These developments demonstrate that continued anonymity is no longer harmless and weighs strongly in favor of vacatur.

### c. Continued Anonymity Is Fundamentally Unfair to Bryant.

This case involves grave accusations carrying obvious reputational consequences. Allowing Plaintiffs to proceed anonymously while Bryant must defend himself publicly creates precisely the imbalance courts describe as fundamentally unfair. See *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996). Plaintiffs attempt to minimize this unfairness by arguing Bryant knows their identities. That argument misses the point. The harm is not only discovery-related—it is public, reputational, and procedural. Bryant has a strong interest in defending himself publicly against Plaintiffs' scurrilous claims. See, Doe v. Indiana Black Expo, Inc., 923 F. Supp. 137, 142 (S.D. Ind. 1996) ("The Defendants … have a powerful interest in being able to respond publicly to defend their reputations, not only in court, but also in other situations where the claims in the lawsuit may be of interest to those with whom the Defendants have business or other dealings. Part of that defense will ordinarily include direct challenges to the Plaintiff's credibility, which may well be affected by the facts Plaintiff prefers to keep secret here[.]"). Likewise, the public has a legitimate interest in knowing who is invoking federal judicial power to accuse a named individual of serious misconduct. See *Doe v. Frank*, 951 F.2d at 323.

Nevertheless, Plaintiffs have not carried their burden showing harm. *Doe v. Sutton*, No. 4:23-CV-01312-SEP, 2025 WL 871656, at *3 (E.D. Mo. Mar. 20, 2025) citing *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) ("Plaintiff has not...explained how or why the use of her real name in court papers would lead to harm, since those who presumably would have any animosity toward her already know her true identity.").

Emotional trauma—even in cases involving sexual allegations—does not constitute a substantial privacy right under Eleventh Circuit law. *Doe v. Neverson*, 820 F. App'x 984, 987–88 (11th Cir. 2020). Emotional trauma cannot justify anonymity where the Defendant suffers parallel

or greater harm. *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996). And although Plaintiffs claim "psychological injury [is] not speculative if corroborated by evidence from medical professionals,"[39] the record is void of any such corroborating evidence. If Plaintiffs, "*can* show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable,'"[40] they simply have not.

To be sure, Plaintiffs have once again "wr[itten] words, but [have] not respond[ed]."[41]

## VI.     PLAINTIFFS' FALLBACK REQUEST FOR PARTIAL ANONYMITY SHOULD BE REJECTED.

Plaintiffs' alternative request to preserve anonymity for some Plaintiffs but not others is unsupported by law and administratively unworkable. *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) ("[T]he court declines to fashion a compromise that would permit Plaintiff to proceed under a pseudonym in some respects but not others. Either the Plaintiff is entitled to anonymity, or she is not."); *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 93–94 (D.D.C. 2015) (Rejecting Plaintiff's request for limited anonymity because "partial measures do not cure the fundamental problem that anonymity is no longer justified.") The Eleventh Circuit rejected attempts to "balance" or "limit" anonymity where the Plaintiff failed to meet the standard in the first place, emphasizing that anonymity is warranted only in exceptional circumstances and must be denied where, as here, those circumstances are absent. *Doe v. Neverson*, 820 F. App'x 984, 987–88 (11th Cir. 2020). The same legal principles govern all Plaintiffs. Thus, there is no discretion to preserve anonymity in some lesser form once the standard is not met. Once the justification for

---

[39] Doc. 97 at p. 25.
[40] Doc 97 at p. 25.
[41] *Z.P., et al. v. Errol Gregory Bryant,* No. 7:24-cv-151-ACA, Transcript of Motion to Compel Hearing at p. 15 (N.D. Ala. Dec. 5, 2025).

anonymity collapses, it collapses entirely. Allowing partial anonymity would only exacerbate unfairness and confusion while rewarding strategic behavior the Court should discourage.

## VII.    CONCLUSION

The relief Plaintiffs seek would require this Court to subordinate the public's right of access to unsupported private interests. When parties seek secrecy without meeting the governing legal standard, the responsibility to safeguard the public interest in transparent judicial proceedings rests solely with the Court.

> .. judicial records are public records. They belong to the American People.… "[w]hen it comes to protecting the right of access, the judge is the public interest's principal champion. And when the parties are mutually interested in secrecy, the judge is its *only* champion." When judges diligently guard that interest by ensuring appropriate public access, confidence in the justice system is enhanced and we inch closer towards the ideal articulated by Thomas Jefferson: "that government [is] the strongest of which every man feels himself a part."[42]

Bryant's face is plastered all over the state and his community. And Plaintiffs are already publicly linked to the allegations in this case. They cannot now demand extraordinary protection from the ordinary consequences of litigation. Accordingly, Bryant respectfully requests that the Court vacate its prior orders granting Plaintiffs permission to proceed pseudonymously and require Plaintiffs to proceed under their own names.

Dated:   January 27, 2026

Respectfully submitted,

 /s/J. Thomas Burgess
J. Thomas Burgess, ASB#: 0554-S78J
Scott A. Holmes, ASB#: 8908-S78H
Erin M. Agricola, ASB#: 4496-I30A
*Attorneys for Defendant/Counter-Plaintiff,*
*Errol Gregory Bryant*

---

[42] Hon. Jennifer Walker Elrod, Hon. Don Willett & Brian M. Miller, *Walking in the Light: On the Overuse of Sealing in Court Records*, 100 The Advoc. (Texas) 27, 29 (2022)(internal citations omitted).

**OF COUNSEL:**
**BURGESS HOLMES, LLC**
3618 Clairmont Avenue
Birmingham, Alabama 35222
Telephone: (205) 870-8611
Fax: (205) 870-8688
tburgess@burgessholmes.com
sholmes@burgessholmes.com
eagricola@burgessholmes.com

*/s/Jason L. Wollitz*
Jason L. Wollitz, ASB# 6349-W74J
One Independence Plaza, Suite 305
Homewood, Alabama 35209
Telephone: (205) 541-6033
*Attorney for Defendant/Counter-Plaintiff,*
*Errol Gregory Bryant*

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing on all attorneys of record, via the CM/ECF electronic filing system on January 27, 2026:

Yuri R. Linetsky, ASB#: 3088-B20W
Ricky T. Chambless, ASB#: 5879-S77R
Jack Steinmetz, *Law Student Intern*
Haley Noele Follmer-Burnett, *Law Student Intern*
Hannah Palmer, *Law Student Intern*
Sara Philp, *Law Student Intern*
Anna Jay, *Law Student Intern*
**THE UNIVERSITY OF ALABAMA SCHOOL OF LAW**
**CIVIL LAW CLINIC**
Box 870392
Tuscaloosa, Alabama 35487-0392
Telephone: 205.348.4960
Facsimile: 205.348.6851
ylinetsky@law.ua.edu
rchambless@law.ua.edu
jack.steinmetz@law.ua.edu
haleynoele.follmerburnett@law.ua.edu
hannah.palmer@law.ua.edu
sara.philp@law.ua.edu
anna.jay@law.ua.edu
*Attorneys and Law Student Interns for*
*Plaintiffs/Counter-Defendants*

*/s/J. Thomas Burgess, Jr.*
OF COUNSEL